# EXHIBIT 1

1
2  Sean A. Woods (Arizona Bar #028930)
   Robert T. Mills (Arizona Bar #018853)
3  **MILLS + WOODS LAW, PLLC**
   5055 North 12th Street, Suite 101
4  Phoenix, Arizona 85014
   Telephone 480.999.4556
5  docket@millsandwoods.com
   swoods@millsandwoods.com
6  *Attorneys for Plaintiffs*

7              **UNITED STATES DISTRICT COURT**

8                   **DISTRICT OF ARIZONA**

9
   Debra Morales Ruiz, an individual, for          No: CV-23-02482-PHX-SRB (DMF)
10 herself and on behalf of and as pending
   Personal Representative of The Estate of        **PLAINTIFFS' FIRST AMENDED**
11 Alexander Chavez; Alex George Chavez,           **COMPLAINT**
   an individual,
12                                                  (Assigned to the Honorable Susan R.
13              Plaintiffs,                         Bolton and referred to the Honorable
                                                    Deborah M. Fine)
14         vs.
                                                    (JURY TRIAL DEMANDED)
15 County of Maricopa, a governmental
   entity; Brandon Smith and Jane Doe Smith;
16 Paul Penzone and Jane Doe Penzone;
   David Crutchfield, an individual; Lisa
17 Struble, an individual; Kyle Moody and
   Jane Doe Moody; Arturo Dimas and Jane
18 Doe Dimas; Tyler Park and Jane Doe Park;
   Gerardo Magat and Jane Doe Magat;
19 Daniel Hawkins Jr. and Jane Doe Hawkins;
   Javier Montano and Jane Doe Montano;
20 James Dailey and Jane Doe Dailey; Trevor
   Martin and Jane Doe Martin; Greggory
21 Hertig and Jane Doe Hertig; John Chester
   and Jane Doe Chester; Jorge. Espinos. Jr.
22 and Jane Doe Espinosa; Morgan Rainey
   and John Doe Rainey; Stefanie Marsland
23 and John Doe Marsland; and, John and Jane
   Does 1-40,
24
25
26              Defendants.
27

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiffs Debra Morales Ruiz ("Debra"), the Estate of Alexander Robert Chavez ("Alexander"), and Alex George Chavez ("George"), by and through their attorneys, Mills + Woods Law PLLC, for their Complaint against Defendants Maricopa County ("Maricopa"), ~~Maricopa County Sheriff's Office ("MCSO"), Maricopa County Correctional Health Services ("CHS"),~~ Brandon Smith ("Smith"), Paul Penzone ("Penzone"), ~~Thomas Tegeler ("Tegeler"),~~ <u>David Crutchfield ("David"), Lisa Struble ("Lisa"),</u> Kyle Moody ("Moody"), Arturo Dimas ("Dimas"), Tyler Park ("Park"), Gerardo Magat ("Magat"), Daniel Hawkins Jr. ("Hawkins"), Javier Montano ("Montano"), James Dailey ("Dailey"), Trevor Martin ("Martin"), Gregory Hertig ("Hertig"), John Chester ("Chester"), Jorge Espinosa Jr. ("Espinosa"), Morgan Rainey ("Rainey"), and Stefanie Marsland ("Marsland") (collectively "Defendants") allege and state as follows:

## **INTRODUCTION**

1.      Alexander Chavez was a young and vibrant 32-year-old.

2.      He made mistakes, was arrested, and was booked into the Lower Buckeye Jail.

3.      He was a loving son, brother, and uncle and doted on his family, providing emotional and financial support to them.

4.      He had his whole life ahead of him and was trying his best to get back on his feet.

5.      Mr. Chavez's booking number was T796431 and his date of birth was 08/31/1989.

6.      Mr. Chavez arrived at the Lower Buckeye Jail (the "Jail") on August 5, 2022 and was transported to the hospital on or about August 8, 2022 due to injuries he suffered under Defendants' lack of care in MCSO's facilities.

7.      He died from these injuries on August 12, 2022.

2

## THE PARTIES

8.      Plaintiff Debra is an adult individual who resides in Maricopa County, Arizona.

9.      Debra is next of kin, mother to Alexander Chavez ("Chavez"), and the pending Personal Representative for Plaintiff the Estate of Alexander Robert Chavez ("Estate").

10.     Plaintiff George is an adult individual who resides in Maricopa County, Arizona and is the father of Chavez.

11.     Defendant Maricopa is a governmental entity that acts by and through its officials, employees and agents, including without limitation ~~the MCSO~~ CHS, and each of the Defendants ~~Smith, Penzone,~~ Crutchfield, Struble,~~Tegeler, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig,~~ Chester, Espinosa, Rainey, and Marsland.

~~Defendant MCSO is a governmental entity that acts by and through its officials, employees and agents, including without limitation each of the Defendants Smith, Penzone, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa.~~

12.     Defendant CHS is a governmental entity that acts by and through its officials, employees and agents, including without <u>limitation</u> each of the Defendants ~~Tegeler, Chester, Rainey, and Marsland~~ <u>Crutchfield and Struble</u>.

13.     Defendant Captain Brandon Smith was at all times relevant to this complaint, a Captain of the MCSO's Detention division and is sued in his official and individual capacity. He is tasked with oversight of the MCSO Detention centers and employees under his command and is responsible for all policies and procedures promulgated by the MCSO. He is an agent of Maricopa and the MCSO, operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

14.     Defendant Sheriff Paul Penzone is sued in ~~her~~ his official and individual capacity. He was tasked with oversight of the MCSO and was responsible for all policies and procedures promulgated by the MCSO.  Penzone is responsible for MCSO officials, employees and agents, including without limitation each of the Defendants Smith,  Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa.

15.     He is an agent of Maricopa and the MCSO, operating in his official and individual capacity in Maricopa County, Arizona.

16.     Defendant Officer Kyle Moody is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

17.     Defendant Officer Arturo Dimas is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

18.     Defendant Officer Tyler Park is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona

19.     Defendant Officer Gerardo Magat is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

20.     Defendant Officer Daniel Hawkins, Jr. is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

21.     Defendant Officer James Dailey is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

4

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

22.     Defendant Officer Trevor Martin is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

23.     Defendant Officer Gregory Hertig is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

24.     Defendant John Chester is upon information and belief employed by, and serving as an agent of, Maricopa, and MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

25.     Defendant Morgan Rainey is upon information and belief employed by, and serving as an agent of, Maricopa, and MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

26.     Defendant Stefanie Marsland is upon information and belief employed by, and serving as an agent of, Maricopa, and MCSO. At all relevant times she was operating in his official and individual capacity in Maricopa County, Arizona.

27.     Defendant ~~Thomas Tegeler~~ David Crutchfield was at all relevant times in this complaint upon information and belief the Medical Director of CHS, employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

28.     Defendant Lisa Struble was at all relevant times in this complaint upon information and belief the Director of CHS, employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

~~Defendant John Chester is employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.~~

~~Defendant Morgan Rainey is employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.~~

~~Defendant Stefanie Marsland is employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.~~

29.     Defendants Smith, Penzone, Moody, Dimas, Park, Magat, Hawkins, Dailey, Martin, Tegeler, Chester, Rainey, Marsland, and Hertig were acting for the benefit of their respective marital communities, if any, and therefore their respective marital communities are liable for their actions as set forth herein. Accordingly, Defendants Jane Doe Smith, Jane Doe Penzone, Jane Doe Moody, Jane Doe Dimas, Jane Doe Park, Jane Doe Magat, Jane Doe Hawkins, Jane Doe Dailey, Jane Doe Martin, Jane Doe Tegeler, Jane Doe Chester, John Doe Rainey, John Doe Marsland, and Jane Doe Hertig are named as Defendants herein.

30.     Defendant Maricopa is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of ~~the MCSO,~~ CHS, and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiffs as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with ~~MCSO,~~ CHS, or entities privately contracted with ~~MCSO or~~ CHS.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

~~Defendant MCSO is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the MCSO and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiffs as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with MCSO or entities privately contracted with MCSO.~~

~~Defendant CHS is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the CHS and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiffs as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with CHS or entities privately contracted with CHS.~~

31.     For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

## JURISDICTION AND VENUE

32.     Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, Eighth, and Fourteenth Amendments and Arizona common and statutory laws.

33.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

7

34.     To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

35.     Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

36.     Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

37.     On August 5, 2022, in Chavez' intake documents, the Jail classified him properly as a sub-classification of "Psychiatric."

38.     <u>Stefanie Marsland and Morgan Rainey were responsible for the intake and are listed on the documents as having completed the same.</u>

39.     Despite this initial sub-classification, Chavez was sent to General Population on August 6, 2022.

40.     Chavez attempted suicide shortly after being booked.

## FIRST SUICIDE ATTEMPT

41.     On August 6, 2022, upon information and belief, Chavez attempted to take his life by overdosing on seven pills of fentanyl. He was found with a baggy of over 250 Fentanyl pills.

42.     Chavez was transferred to the hospital and told the attending physicians that he had snorted seven (7) fentanyl pills.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

8

43.     How fentanyl made it into Chavez' hands at a secured Jail facility is beyond comprehension.

44.     MCSO, CHS, and their employees, agents, medical professionals, and officers are there to prevent unauthorized drugs, weapons, and other restricted materials from being introduced into the Jail. Chavez was only there for one day before he was able to get his hands on enough fentanyl to attempt suicide.

45.     Chavez got his hands on the pills and attempted suicide.

46.     A note was added to Chavez' file on August 6, 2022 by stating "SUICIDE PREVENTION/AWARENESS FLYER PROVIDED TO INMATE."

47.     This was added to the file by both Morgan Rainey and John Chester.

48.     At that very moment Chavez should have and was required to have been kept in the psychiatric unit and placed on suicide watch according to Maricopa, MCSO and CHS policies and procedures.

49.     Maricopa, ~~MCSO, CHS,~~ Penzone, their employees, agents, and officers failed in the most basic of tasks.

50.     To be clear, had Chavez been put on suicide watch, he would still be alive today.

51.     By failing to meet even the least stringent requirements, and by placing Chavez back into general population – rather than on suicide watch – Maricopa, ~~MCSO, CHS,~~ Penzone, their employees, agents, and officers implicitly signed Chavez' proverbial death warrant.

"PA-C Med; 1632H" wrote in Chavez' medical records that

Pt was found to have fentanyl on his person today and then sent to VW.

He was found once again to have drugs on him this evening.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

52.     It is unknown at this point who "PA-C Med; 1632H" is.[1]

53.     To attempt to cover their actions, Rainey had Chavez sign a waiver form refusing Administrative Restrictive Housing.

54.     They ~~just let~~ put an opiate addict who had just attempted to end his life ~~enter in~~ general population.

55.     Adding further insult to injury, Maricopa, ~~MCSO, CHS,~~ Penzone, their employees, agents, and officers disciplined Chavez for Promoting Prison Contraband and Possession of an Unauthorized Substance – added to Chavez' file by John Chester.

56.     There were ample opportunities and reasons to assign Chavez to the proper classifications and put him on suicide watch.

57.     None of the Defendants did so.

58.     It is clear that Maricopa, ~~MCSO, CHS,~~ Penzone, their employees, agents, and officers only concern was to punish Chavez – not to properly classify him and put him on suicide watch to prevent his death.

59.     Maricopa, ~~MCSO,  CHS,~~ Penzone, their employees, agents, health professionals, and officers knew that Chavez was going to be facing severe opiate withdrawals.

60.     In fact, medical records show that Chavez was seen by staff because he was opiate dependent, was in severe withdrawal, was classified as "Red Dot" due to an acute illness, was supposed to be put on opiate protocol with medications, and was required to be put in a lower bunk.

---

[1] Additionally, the CHS Medical Records refer to practitioners via code and names were never provided prior to institution of this litigation. These include: "RN; 3002H", "NP; 1489H", "NP; 2712H", "RN; CS995", "RN; 3038H", "RN, Nurse Mgr; 2231H", "RN; 2942H", "RN; 1518H", "CHT: 2806H", "RN; 2967H", and "Um Coord; CH050". Because this information is in the sole custody and control of Defendants, Plaintiff reserves the right to add parties once the information is discovered.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

61.    Chavez – nearly immediately after being placed in general population began experiencing extreme symptoms of opiate withdrawal.

62.    On August 7, 2022, he was found in the fetal position in the day room holding his breath.

63.    When staff threatened him with being placed in a monitored room, he reacted by breathing.

64.    They placed him and his "mat" back into his jail cell and left him there.

65.    On August 8, 2022, an unknown RN Nurse Manager updated Chavez' file to indicate he had a history of severe opiate withdrawal.

66.    The records show that he was supposed to be placed under opiate protocol and administered multiple prescriptions including Hydroxyzine, Loperamide, and Ondansetron.

67.    These were ordered by "CHS Medical Director MD",

68.    Upon information and belief, the CHS Medical Director MD was Lisa Struble.

69.    Despite this, Rrecords show that only one dose of Hydroxyzine was administered.

70.    Defendants left him alone in his cell without administering further medications to help Chavez survive his withdrawal symptoms.

71.    Chavez was in extreme pain and distress having to deal with his withdrawal symptoms without assistance.

**SECOND SUICIDE ATTEMPT AND SUBSEQUENT DEATH**

72.    Had Defendants actually followed the opiate protocol and performed any of their basic duties and procedures, Chavez would not have dealt with the awful side effects of opiate withdrawal.

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

11

73.     According to a study from the National Library of Medicine on Opiate Withdrawal: Opioid withdrawal syndrome is a life-threatening condition resulting from opioid dependence.

74.     Had Defendants actually cared about the life and safety of Chavez, his withdrawal symptoms would have been manageable.

75.     Had he been on suicide watch in the psychiatric unit, he would not have had the opportunity to attempt suicide again and certainly would have been found much sooner following his suicide attempt.

76.     This critical time – at least 25 minutes unattended – caused Chavez to suffer severe brain injuries that ultimately led to his death.

77.     According to records:

Alexander Chavez is a 31-year-old male seen by stroke neurology on 8/8/2022 for a right vertebral artery thrombus, V2 segment. He is seen following transfer from jail where he was found following hanging by the neck, having been unattended for an estimated 25 minutes.

When he was initially found by the officer in his charge no pulses were palpable. CPR was performed for 10 minutes.

Upon arrival of EMS he was intubated. He was subsequently transferred to BUMCP. Unclear when ROSC was achieved.

He received 5 mg midazolam and 250 mg phenobarbital in the trauma bay due to movements that were interpreted as potential seizure activity.

CT head without contrast was, per my independent review, uninterpretable due to motion artifact, although the radiology report does indicate that there is concern for anoxic brain injury.

 CT angiogram of the head and neck, per my review, does show a thrombus in the right vertebral artery, V2 segment, at the level of C3–4 vertebrae. #Intravascular thrombus, V2 segment of right vertebral artery at the level of C3-4 vertebrae
#Concern for anoxic brain injury

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

#Found following presumptive suicide attempt, hanging in jail, pulseless when found
#UDS positive for methamphetamine

78.     Furthermore, according to records, Chavez presented as a trauma red for evaluation after being found hanging. Records note that:

Patient was found hanging in his cell at a local jail. He was noted to still be touching the ground and presumed to have been unattended for approximately 25 minutes at the time he was found. When he was cut down, he was noted to be unresponsive without any spontaneously respiratory effort. He did have a pulse when found, which he maintained through transport. An oral airway was placed and he was brought to the trauma bay with active bagging taking place. He is unable to provide any history. Per EMS, he has no known medical history.

79.     Chavez eventually died from his injuries on August 12, 2022.

## FAILURE TO ASSESS, CLASSIFY, AND MONITOR

80.     Defendants failed to perform proper assessments as to Chavez' mental state, conditions, and illnesses.

81.     Chavez was pushed through the assessment process quickly so that Defendants could put him in a cell and ignore him.

82.     Penzone and Smith are charged with implementing and maintaining policies and procedures for the MCSO, its employees, and its jails – including the Lower Buckeye Jail. They are also charged with oversight of their jail facilities. As such, they are required to review employee actions regularly to ensure MCSO policies and procedures are being followed.

83.     ~~Tegeler~~ Crutchfield and Struble are ~~is~~ charged with implementing and maintaining policies and procedures for the CHS and its facilities – including the Lower Buckeye Jail medical facilities. ~~He is~~ They are also charged with oversight of CHS' facilities. As such, he is required to review employee actions regularly to ensure CHS policies and procedures are being followed.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

13

84.     Their lack of proper oversight at the Jail led directly to lax behavior by Maricopa, MCSO, and CHS staff.

85.     To wit, headcounts were clearly not regularly performed at the required intervals.

86.     Furthermore, it is apparent that no proper oversight has occurred with inmate evaluations - both security based and medical based.

87.     According to shift logs obtained via public records request, the last time officers or guards made rounds and "put eyes on" Chavez prior to his suicide attempt was at 1700 hours August 8, 2022.

88.     Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa upon information and belief were working at the Jail on the day of Chavez' death.

89.     Each had a responsibility to ensure the safety and well-being of Chavez. Each of them could have – at any time – classified Chavez as needing to be under suicide watch.

90.     They did not.

91.     Each of them could have – at any time – performed the proper headcounts at the proper intervals.

92.     They did not.

93.     Chavez was assigned bunk Cell-A 03 on the day of his death. The location of his bunk was Floor 3 HOUSE 34 POD A (LBJF:34:A:10:01) at the Jail in Phoenix, Arizona.

94.     This bunk is also known – based on records received from MCSO – as "T34A.03"

Mills + Woods Law, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

95.     The Correctional Officers (hereinafter "CO" or "COs") who actually conducted patrols and headcounts on the day of Chavez' death and up to his death were Officers Park, Magat, Hawkins, Espinosa, and Moody.

96.     According to Officer Moody's (B4996) Incident Report:

> On 08/08/2022 at the Lower Buckeye Jail located at 250 W Lower Buckeye Rd, Phoenix, AZ 85009, at approximately 1825 hours, I conducted a security walk in T34 A pod. During the security walk, as I approached cell T34A.03, I observed an inmate, later identified as Inmate Chavez, Alexander T796431 sitting on the ground, at the back of the cell, in between the table and the bunks inside the cell. Inmate Chavez had an MCSO issued sheet, in what appeared to be tied into the shape of a noose, around his neck, with the other end tied to the top bunk inside of the cell. Immediately upon observing this, I made a radio call requesting for additional officers to respond and bring a 911 tool.

97.     From 1700 – 1825 hours, Chavez was left on his own.

98.     There are entries on the shift logs for rounds every hour on the hour.

99.     The 1800 entry is blank.

100.    Nobody performed their security checks or rounds at 1800 hours.

101.    As discussed above, Chavez' estimated time of his suicide attempt was about 25 minutes prior to being found.

102.    Again, if any of Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa had properly performed their duties, Chavez would have been observed at 1800 hours and would have been stopped from attempting suicide.

103.    The MCSO shift logs have entries for a patrol and review of headcount for every hour of the day.

104.    Officers skipped their patrol and headcount for the 1800 hour – Instead waiting nearly half an hour past 1800 to conduct the 1800 headcount

105.    This 25-minute gap was critical and a direct cause of Chavez' subsequent death.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

106.     According to I ELIZARRARAS' (S2178) Incident Report, IR22020649,

- The jail surveillance video was reviewed briefly, and this is a general summary of the events that occurred. For full details of the event, reference the jail surveillance video submitted. The times frames provided are the ones observed on the video. The following is what I observed:
- 1824 hours: Detention Officer Moody (B4996) enters T34 A Pod and begins to make a radio call while in front of cell 3 (T34A.03).
- 1825 hours: Detention Officer Moody enters the cell. Medical staff also enters the cell. Inmate Chavez is removed from the cell.
- 1826 hours: Detention Officer Moody begins providing inmate Chavez chest compressions. Medical staff arrives with a gurney. AED was on site.
- 1833 hours: Inmate Chavez is placed on the gurney and moved out of T34 A Pod housing unit. Detention Officer Moody continues with chest compressions.
- 1832 hours: Phoenix Fire Engine & Engine #21 arrive at LBJ.
- 1834 hours: Phoenix Fire Engine arrive at LBJ main clinic.
- 1836 hours: Inmate Chavez arrives at the LBJ main clinic.
- 1841 hours: Inmate Chavez is moved out of LBJ main clinic by Phoenix Fire.
- 1843 hours: Phoenix Fire Ambulance #21 departs with inmate Chavez

107.     At approximately 1837 hours, after arriving to the LBJ main clinic, Phoenix Fire personnel took over for CPR and rescue attempts by tapping Officer Moody's arm and telling him, "You can stop." Phoenix Fire personnel also stated they could feel a carotid pulse at that time.

108.     It took another seven minutes to get Chavez on the road to the Emergency Room.

109.     It took another 12 minutes to arrive to Banner Good Samaritan Hospital.

110.     It took nearly a full hour following Chavez' suicide attempts to provide trauma care for his injuries.

111.     There lies a concept in medical care that a patient must be seen and provided definitive care within one hour of the injuries. This concept is called the "Golden Hour."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

16

While some patients can recover fully with proper immediate care, a lack of oxygen to the brain is deadly to a human being within minutes.

112.     According to the National Library of Medicine, "Attempted suicidal hanging: an uncomplicated recovery" written by Sarathchandra Kodikara, Dec 2012 found and retrieved January 25, 2023 at https://pubmed.ncbi.nlm.nih.gov/22333907/:

> Although hanging is common across the world, survival after attempted hanging is very rare with death usually ***occurring within minutes*** or over the first 24 hours. If the person survives the initial event, later he/she may die because of the severity of the initial hypoxic and ischemic brain damage. Survival from hanging is often associated with various complications including a large variety of neurological consequences. This case report highlights a rare case of survival in attempted hanging of a 35-year-old man, with previous suicide ideation. Within 15 minutes of the incident, he was brought to a tertiary care hospital. On admission, he was unconscious and the Glasgow Coma Scale was 4 with tachycardia, weak pulse, bradypnea, and shallow breathing. With vigorous and prompt resuscitation methods, he gradually recovered without any residual neurological outcome. Prognostically good results could be achieved, if such victims are vigorously and promptly resuscitated, irrespective of their initial presentation. (emphasis added).

113.     In that report, a man attempted to hang himself, but was found and brought to a hospital within 15 minutes of the injury. That man survived.

114.     In Chavez' case, he wasn't found for at least 25 minutes – probably longer – and was effectively brain dead. There is no coming back from brain death.

115.     Not only was Chavez not treated properly until at a bare minimum of 56 minutes, but he had also been left without oxygen to the brain for over 25 minutes prior to discovery of his attempted suicide.

116.     If not for the egregious and grossly negligent actions of Defendants and potentially unknown at this time employees, agents, and officers, Alexander Chavez would have benefited from life-saving prompt treatment of his traumatic injuries.

117.     Myriad clinical research studies illustrate significantly improved patient outcomes for patients discovered within minutes of a hanging.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

17

118.     The officers here ignored their duties and did not perform a headcount at 1800 hours as required.

119.     This – coupled with Alexander not being on suicide watch – created an inability to have discovered Chavez to prevent him from hanging for over 25 minutes.

120.     It is incumbent upon Paul Penzone and the wardens, captains, directors, supervisors, corrections officers, Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Espinosa and the MCSO to fulfill the duty assured to Alexander Chavez and all inmates under the United States Constitution, including without limitation:

- Maintain physical control over all inmates to prevent harm to both staff and other inmates; and
- Implement, evaluate and maintain security procedures and protocols in accordance with industry standards to protect both staff and other inmates; and
- Act affirmatively to protect inmates when a potential threat or risk of harm to either staff or another inmate becomes known to them; and
- Hire, train, and supervise corrections officers and staff in a manner that thoroughly ensures the mission of the Arizona Department of Corrections is carried out regarding the physical protection of all staff and inmates; and
- Maintain strong presence of supervision, control, and oversight over corrections officers and all prison personnel; and
- Provide medical care and treatment for all inmates according to the standard of care recognized by the industry.

121.     Based upon the objective unreasonableness and deliberate indifference to the security of Alexander Chavez' physical person relative to the events leading up to the suicide attempt, coupled with the egregiously negligent, objectively unreasonable, and deliberately indifferent actions of Defendants in failing to properly assess Alexander Chavez' mental state and condition, it is evident that Maricopa, MCSO, CHS, its wardens, associate wardens, directors, captains, commanders, supervisors, corrections officers, health professionals, and staff have breached each of these duties proscribed by law.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

122.     As a direct and proximate result of these myriad breaches, Alexander Chavez died.

123.     Each of the Defendants were negligent, and in fact grossly negligent, in that they had a nondelegable duty to care for and protect Chavez and failed to act despite realizing that their acts, omissions to act and other conduct created a high probability that substantial harm would be visited upon Alexander Chavez.

124.     Further, the acts and omissions detailed herein constitute additional actionable torts under statutes of the State of Arizona and common law.

125.     The actions of ~~the MCSO through Sheriff Paul Penzone, the Jail through Brandon Smith, and MCSO employees, agents, and corrections officers including Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa~~ the Defendants have violated the rights of Alexander Chavez under the United States and Arizona Constitutions, including without limit his ~~Eighth and~~ Fourteenth Amendment rights.

~~The actions of CHS through Tegeler, Chester, Rainey, Marsland, and CHS employees and agents have violated the rights of Alexander Chavez under the United States and Arizona Constitutions, including without limit his Eighth and Fourteenth Amendment rights.~~

126.     Following Chavez' second suicide attempt, Chavez was classified with the following flags:

- 841 Red Dot 8/5/2022 8/5/2022
- 96 COWS 8/7/2022 8/7/2022 8/21/2022
- 834 Opioid Use 8/7/2022 8/7/2022
- 167 Bottom Bunk (BB) 8/7/2022 8/7/2022
- 168 Bottom Tier (BT) 8/7/2022 8/7/2022

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

19

- 193 No Work No Tents (NWNT) 8/7/2022 8/7/2022
- 828 Proxy Medium 8/7/2022 8/7/2022
- 161 Suicide Attempt History While Incarcerated 8/9/2022 8/9/2022
- 52 Suicide Watch - Potential 8/9/2022 8/9/2022
- He was also classified with "Problems" by CHS:
- Red Dot 8/5/2022
- COWS 8/6/2022
- Opioid Use 8/6/2022
- Bottom Bunk (BB) 8/6/2022
- Bottom Tier (BT) 8/6/2022
- No WorkNo Tents (NWNT) 8/6/2022
- Suicide Attempt History While Incarcerated 8/8/2022
- Suicide Watch - Potential 8/8/2022

127.    On August 8, 2022 at 6:59PM, after he had already hung himself, Chavez was added to the Suicide Watch list <u>and a group note was posted by "RN; 2967H" to his records</u>.

128.    Had the Defendants done a proper assessment of Chavez' mental state, it would have been easily discerned that Chavez was in fact a suicide risk.

129.    In fact, ~~CHS~~ <u>Defendants</u> knew that Chavez was a suicide risk after his first suicide attempt.

130.    Rainey provided Chavez with a Suicide Prevention/Awareness pamphlet in the early hours of August 6, 2022 and then Chavez was re-classified from psychiatric to general population and thrown out to deal with his withdrawal symptoms with no help.

131.    Defendants could have properly assessed his condition and placed him on suicide watch at intake – instead of after the fact.  The actions and inactions of Defendants

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

20

1  – including those individuals known or unknown –violated the ~~Eighth~~ Fourteenth

2  Amendment to the United States Constitution, which is mirrored by Art. 2 § 15 of the

3  Arizona Constitution. Such violations of civil rights are actionable pursuant to 42 U.S.C. §

4  1983 et seq. ~~As the United States Supreme Court has determined:~~

5  ~~The [Eighth] Amendment embodies~~

6  
7  ~~'broad and idealistic concepts of dignity, civilized standards, humanity, and~~
   ~~decency' against which we must evaluate penal measures. Thus, we have held~~
8  ~~repugnant to the Eighth Amendment punishments which are incompatible~~
   ~~with 'the evolving standards of decency that mark the progress of a maturing~~
9  ~~society,' or which 'involve the unnecessary and wanton infliction of pain.'~~
   ~~These elementary principles establish the government's obligation to provide~~
10 ~~medical care for those whom it is punishing by incarceration. An inmate must~~
   ~~rely on prison authorities to treat his medical needs; if the authorities fail to~~
11 ~~do so, those needs will not be met. In the worst cases, such a failure may~~
   ~~actually provide physical 'torture or a lingering death,' the evils of most~~
12 ~~immediate concern to the drafters of the Amendment. In less serious cases,~~
13 ~~denial of medical care may result in pain and suffering which no one suggests~~
   ~~would serve any penological purpose. The infliction of such unnecessary~~
14 ~~suffering is inconsistent with contemporary standards of decency as~~
15 ~~manifested in modem legislation codifying the common law view that '(i) is~~
   ~~but just that the public be required to care for the prisoner, who cannot by~~
16 ~~reason of the deprivation of liberty, care for himself.' We therefore conclude~~
17 ~~that deliberate indifference to serious medical needs of prisoners constitutes~~
   ~~the 'unnecessary infliction of pain.'~~
18 

19 ~~*Estelle v. Gamble*, 429 U.S. 97, 102-05 (1976) (internal citations omitted).~~

20 ### **COUNT I**

21 ### **Violation of Civil Rights Under the ~~Eighth and~~ Fourteenth Amendments**

22 ### **and 42 U.S.C. § 1983.**

23 

24 132.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though

    fully set forth herein.

25 133.    The ~~Eighth~~ Fourteenth Amendment to the United States Constitution~~, which~~

26 ~~applies to the Defendants pursuant to the Due Process Clause of the Fourteenth~~

27 ~~Amendment,~~ forbids one who acts under color of state law from ~~being deliberately~~

28 

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

~~indifferent to the serious needs of individuals~~ failing to protect from harm a pre-trial detainee in their care, custody and control.

134.    At all relevant times, Defendants were acting under color of law.

135.    At all relevant times, Alexander Chavez was in the care, custody and control of Defendants.

136.    Among other things, Defendants, through their education and training, knew or should have known the procedures for an accurate and careful assessment of an inmate who had already attempted suicide, but deliberately ignored that fact and failed to keep Alexander Chavez under suicide watch that would have kept Alexander Chavez alive.

137.    Among other things, Defendant are aware or should be aware of their responsibilities and duties toward an inmate who had already attempted suicide – namely keeping him under suicide watch.

138.    Among other things, Defendants are aware or should be aware of security issues that can arise based on their experience and their various responsibilities and duties required to provide a safe and secure environment for inmates of the Jail.

139.    The conduct of Defendants in this regard was objectively unreasonable and was undertaken with a willful, reckless and malicious indifference to the constitutional rights and liberty interests of Alexander Chavez and the Plaintiffs, and with no regard to the likelihood that harm would and did result, and that Alexander Chavez would and did suffer needlessly while in their care.

140.    The deliberate indifference and objectively unreasonable care given to the serious needs of Alexander Chavez constitutes unnecessary and wanton infliction of pain proscribed by the ~~Eighth~~ Fourteenth Amendment and is in violation of 42 U.S.C. §1983, whether the objective unreasonableness and indifference is manifested by Defendants in response to Alexander Chavez' suicidal actions, or intentionally or delaying classifying Alexander Chavez as a suicide risk.

141.    As a direct and proximate result of the objective unreasonableness and deliberate indifference of Defendants, Alexander Chavez suffered extraordinary pain and premature death, and Plaintiffs have suffered damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

142.     As a direct and proximate result of the <u>objective unreasonableness and</u> deliberate indifference of Defendants, Plaintiffs have forever lost the liberty interest guaranteed to them by the Fourteenth Amendment to enjoy the companionship, society and support of Alexander Chavez.

143.     The acts and omissions of Defendants were of such a nature to entitle Plaintiffs each to an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

144.     <u>The County is responsible for the actions or inactions of Penzone.</u>

145.     Pursuant to 42 U.S.C. §1988 and other applicable law, Plaintiffs are also entitled to an award of incurred attorneys' fees and costs.

## **COUNT II**

## **Wrongful Death Pursuant to A.R.S. §12-611**

146.     ~~Plaintiffs~~ <u>Debra Ruiz</u> incorporate<u>s</u> the allegations in the foregoing paragraphs as though fully set forth herein.

147.     Defendants had a duty to assure the safety and well-being of Alexander Chavez while in their care, custody and control, a duty that included, without limitation, providing proper, appropriate and timely care to Alexander Chavez.

148.     Defendants breached their duties to Alexander Chavez, as identified in the allegations set forth in the paragraphs above.

149.     Despite being the sole caretakers of Alexander Chavez, Defendants were negligent and grossly negligent by failing to properly classify, place, and watch Alexander Chavez, that would have saved Alexander Chavez' life.

150.     Despite being assigned to monitor the security and welfare of the inmates housed in the Jail, Defendants were negligent and grossly negligent in their failure to perform their required duties in conducting inmate checks during the verified time of Alexander Chavez' second suicide attempt.

151.     Defendants undertook a duty to provide adequate supervision and classification to the inmates of the Jail. This includes (1) the duty to supervise all of its employees and agents, and (2) the duty to ensure that its employees and agents satisfy all

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

23

federal, state, and applicable industry standards.

152.     Defendants breached their duties, as identified by the allegations set forth in the paragraphs above, by among things and without limitation willfully participating in a practice or custom that denied Alexander Chavez adequate monitoring and placement, and by ratifying improper conditions, customs, policies, procedures and/or practices that jeopardized the safety of Alexander Chavez.

153.     Additionally, Defendant Maricopa is vicariously liable for the acts and omissions of their employees, including without limitation those employees listed herein as defendants,

154.     As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Alexander Chavez suffered an untimely and preventable death.

155.     As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Plaintiffs have been deprived of the continued companionship and society of their son and father, and have suffered and continue to suffer the loss of a loved one, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, mental suffering, and have suffered both economic and non-economic damages in an amount to be proven at trial.

156.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Alexander Chavez and a high probability that substantial harm would result.

157.     In causing the painful, barbaric and premature death of Alexander Chavez, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT III

## Survivorship Action Pursuant to A.R.S. §14-3110

158.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

159.     Defendants had a duty to assure the safety and well-being of Alexander

24

Chavez while in their care, custody and control, a duty that included, without limitation, providing proper, appropriate and timely care to Alexander Chavez.

160.    Defendants breached their duties to Alexander Chavez, as identified in the allegations set forth in the paragraphs above.

161.    Despite being the sole caretakers of Alexander Chavez, Defendants were negligent and grossly negligent by failing to properly classify, place, and watch Alexander Chavez, that would have saved Alexander Chavez' life.

162.    Despite being assigned to monitor the security and welfare of the inmates housed in the Jail, Defendants were negligent and grossly negligent in their failure to perform their required duties in conducting inmate checks during the verified time of Alexander Chavez' second suicide attempt.

163.    Defendants undertook a duty to provide adequate supervision and classification to the inmates of the Jail. This includes (1) the duty to supervise all of its employees and agents, and (2) the duty to ensure that its employees and agents satisfy all federal, state, and applicable industry standards.

164.    Defendants breached their duties, as identified by the allegations set forth in the paragraphs above, by among things and without limitation willfully participating in a practice or custom that denied Alexander Chavez adequate monitoring and placement, and by ratifying improper conditions, customs, policies, procedures and/or practices that jeopardized the safety of Alexander Chavez.

165.    Additionally, Defendant Maricopa is vicariously liable for the acts and omissions of their employees, including without limitation those employees listed herein as defendants,

166.    As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Alexander Chavez suffered an untimely and preventable death.

167.    As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Chavez endured extreme pain and suffering from August 6, 2022 until August 12, 2022, lost his ability to earn income following his death, and lost the ability to provide support to his family.

168.     As a result, Chavez suffered both economic and non-economic damages in an amount to be proven at trial.

169.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Alexander Chavez and a high probability that substantial harm would result.

170.     In causing the painful, barbaric and premature death of Alexander Chavez, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT IV
### Negligence and Gross Negligence

171.     ~~Plaintiffs~~ The Estate of Alexander Chavez incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

172.     At all relevant times, each and every Defendant had an individual and collective duty to exercise ordinary care for the safety of Alexander Chavez.

173.     This includes taking certain actions and refraining from other actions such that the Jail was operated in a manner that maintained effective custody and control over inmates in a safe, secure and humane environment.

174.     Defendants breached that duty systematically and repeatedly, including their acts and omissions set forth above, resulting in the Jail being operated in a manner such that presented a grave and imminent danger to Alexander Chavez.

175.     As a direct and proximate result of Defendants' breach, Alexander Chavez sustained severe and permanent injuries, endured extreme pain and suffering, lost the ability to have and maintain meaningful familial relationships, and eventually lost his life.

176.     Defendants' acts and omissions to act set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Neil and a high probability that substantial harm would result.

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT V

## Negligent Hiring, Training, Supervision and Retention

177.     Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

178.     Defendants Maricopa, MCSO, CHS, Penzone, ~~Tegeler,~~ Crutchfield, Struble, and Smith owed a duty to Alexander Chavez to ensure that their employees, officers and agents were qualified to serve in their respective roles before hiring and assigning employees to provide medical care for inmates.

179.     Defendants Maricopa, MCSO, CHS, Penzone, ~~Tegeler,~~ Crutchfield, Struble, and Smith also owed Alexander Chavez a duty to ensure that their employees, officers, and agents were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

180.     Despite being assigned to monitor the security and welfare of the inmates housed in the Jail, Defendants were negligent and grossly negligent in their failure to perform their required duties in conducting inmate checks during the verified time of Alexander Chavez' second suicide attempt.

181.     Defendants undertook a duty to provide adequate supervision and classification to the inmates of the Jail. This includes (1) the duty to supervise all of its employees and agents, and (2) the duty to ensure that its employees and agents satisfy all federal, state, and applicable industry standards.

182.     As set forth above, Defendants Maricopa, MCSO, CHS, Penzone, ~~Tegeler,~~ Crutchfield, Struble, and Smith breached these duties.

183.     As a direct and proximate result of Defendants' breaches of these duties, Alexander Chavez was damaged in that he, among other things, suffered extreme pain and suffering, lost the ability to have and maintain meaningful familial relationships, lost his life and sustained other damages that will be demonstrated at trial.

///

///

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

**JURY TRIAL DEMAND**

184.     Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a)   For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)   For all other non-pecuniary damages as to be proven at trial;

c)   For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)   For pre-and post judgment interest to the extent provided by law;

e)   For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)   For such other relief as this Court may deem proper.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556