RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: COURTNEY R. GLYNN (023155)
    MICHAEL E. GOTTFRIED (010623)
    Deputy County Attorneys
    glynnc@mcao.maricopa.gov
    gottfrim@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4316
MCAO Firm No. 00032000

*Attorneys for Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, et al., | NO. CV-23-02482-PHX-SRB (DMF) |
| Plaintiff, | **MOTION TO DISMISS** |
| vs. | |
| Maricopa County, et al., | |
| Defendants. | |

Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, and Marsland, Maricopa County Sheriff Russell Skinner,[1] and former Maricopa County Sheriff Paul Penzone move under

---

[1]: Former Sheriff Penzone is sued in his individual and official capacities. (Doc. 7, ¶ 14.) Pursuant to Federal Rule of Civil Procedure 25(d), Maricopa County Sheriff Russell Skinner gives notice that he has been appointed as the successor to Maricopa

-1-

Federal Rule of Civil Procedure 12(b)(6) and District of Arizona Local Civil Rule 12.1 to dismiss this lawsuit. Alexander Chavez committed suicide in the Maricopa County Jail. In essence, without any detailed factual support, this Amended Complaint asserts that every deputy sheriff working in Mr. Chavez's housing area violated his constitutional rights and acted negligently, and that all were improperly trained and supervised. These vague and unspecific allegations do not support these section 1983 and state-law claims. For this reason, and the other reasons discussed herein, this Amended Complaint should be dismissed.

## I.   Alleged Facts

Alexander Chavez was arrested and housed at Maricopa County's Lower Buckeye Jail on August 5, 2022. (Doc. 7, ¶¶ 2,6.) It appears that Mr. Chavez was placed into the jail's opiate withdrawal protocol. (*Id*. ¶¶ 60, 66.) On August 5, 2002, in what Plaintiffs characterize as a suicide attempt rather than an overdose, Mr. Chavez was found with over 250 fentanyl pills. (*Id*. ¶ 41.) He was taken to the hospital, where he told the attending physician that he had snorted 7 fentanyl pills. (*Id*. ¶ 42.) After release from the hospital he was placed back in the general population and not placed on suicide watch. (*Id*. ¶ 51.) On August 8, 2022 at approximately 1825 hours Mr. Chavez was found hanged in his cell by a deputy sheriff during a security walk. (*Id*. ¶ 78, 96.) Plaintiffs allege that the 1800-hour security walk was not done. (Id. ¶¶ 99,100.) Phoenix Fire personnel arrived at approximately 1837 and took over CPR and rescue attempts that had been undertaken by jail staff. (*Id*. ¶ 107.) He was brought to the hospital and died from his injuries on April 12, 2022. (*Id*. ¶¶ 79, 109.)

---

County Sheriff Paul Penzone, effective February 8, 2024, and as such, he is automatically substituted for former Sheriff Paul Penzone in this action for all official capacity claims.  To the extent there are any remaining individual claims against Penzone, Paul Penzone will remain as a properly named Defendant for those claims only.

## II. Argument

### A. Legal standard

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In analyzing whether a claim has facial plausibility, "we accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In reviewing a Rule 12(b)(6) motion, a trial court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal*, 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. The Count I section 1983 claims should be dismissed.

#### 1. Supervisors CHS Director Struble and CHS Medical Director Crutchfield should be dismissed.

Defendant Struble is the CHS Director. (Doc. 7, ¶ 28.) Defendant Crutchfield is The CHS Medical Director. (*Id.* ¶ 27.) The allegations against Director Struble is that she placed Mr. Chavez in the CHS opiate protocol and prescribed medicines, but not all medications were given (*Id.* ¶¶ 67-69.) There are no allegation that Director Struble is somehow responsible for these missed medications.

The First Amended Complaint ("FAC") also alleges that both Director Struble and Medical Director Crutchfield are "charged with implementing and maintaining policies and procedures at CHS and its facilities[.]" (*Id.* ¶ 83.) It further alleges that they are "required to review employee actions regularly to ensure CHS policies and procedures

are being followed." (*Id.*) And that their "lack of proper oversight at the Jail led directly to lax behavior by Maricopa [County], MSCO, and CHS staff." (Id. ¶ 84.) These allegations do not support a constitutional claim.

There is nothing improper about placing Mr. Chavez, an opioid user (*id*., ¶ 60), in the opiate protocol. That Director Struble and Medical Director Crutchfield are responsible for implementing and maintaining CHS policies and procedures does not impose liability for CHS employees' actions. *See Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)) (stating that vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983). To the extent that this can be construed as failure to train or failure to supervise claim, there are no allegations that Director Struble or Medical Director Crutchfield trained or supervised any of the CHS employees involved with Mr. Chavez.

Additionally, a "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that " 'in light of the duties assigned to specific officers or employees, the need for more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers...can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390). Plaintiff has alleged no facts to support any claim that the need for more or different training or supervision was obvious, and the inadequacy so likely to result in violations of constitutional right. The Count I individual capacity § 1983 claim should therefore be dismissed against CHS Director Struble and CHS Medical Director Crutchfield.

### 2. Supervisors Penzone and Smith should be dismissed.

Plaintiff makes the identical claims against former Maricopa County Sheriff Penzone and MSCO Captain Brandon Smith, alleging inadequate oversight, training, and supervision of the jail and sheriff's deputies. (Doc.7, ¶¶ 13,14, 82, 84.) there are no allegations that former Sheriff Penzone and Captain Smith had any interaction with Mr. Chavez, and they are not responsible for the actions of their employees. *Lemire*, 726 F.3d at 1074. And like the claims against Directors Struble and Crutchfield, there are no facts alleged to support a failure-to-train or failure-to-supervise claim. *Clement v. Gomez*, 298 F.3d at 905. The Count I individual capacity § 1983 claim should therefore be dismissed against former Maricopa County Sheriff Penzone and Maricopa County Sheriff Office ("MCSO") Captain Brandon Smith.[2]

### 3. There are no allegations that Defendants Marsland, Rainey and Chester did anything improper.

The allegations against Defendants Marsland and Rainey are that they completed Mr. Chavez's intake documents (doc. 7, ¶ 38), and that the intake documents properly classified him as "Psychiatric" (*id*. ¶ 37.) The FAC also alleges that Rainey and Chester noted that they gave Mr. Chavez a suicide prevention form (id. ¶¶ 46-47). There is nothing improper about these actions, there are no facts alleged that these non-medically trained deputies had the ability to place an inmate on suicide watch, and no allegation that supplying a flyer somehow led to a constitutional deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976) (holding that, to state a claim under section 1983, a plaintiff

---

[2] Plaintiffs' counsel has recently been advised that that the MCSO supervisor overseeing shifts, walks, headcounts and other related tasks is Captain Calvin King, not Captain Brandon Smith. A substitution has not yet occurred. Nonetheless, for purposes of this Motion, the arguments would be the same whether the Defendant was Captain King or Captain Smith.

must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff). Nor is it reasonable to infer from this allegation that Rainey and Chester knew anything about Mr. Chavez's fentanyl ingestion. The flyer could have been given to him before he took the pills and/or the flyer could be given to everyone booked into the jail.

The FAC further alleges that Rainey had Chavez sign a waiver form refusing Administrative Housing, asserting that that they put an opiate addict who had just attempted to end his life in general population. (Doc 7, ¶¶ 53-54.) Regardless of what the form said, there is no allegation that Rainey made the decision to transfer him and therefore no facts alleged that his conduct caused a constitutional deprivation. *See Rizzo*, 423 U.S. at 373-75. Defendants Marsland, Rainey and Chester should therefore be dismissed from the Count I federal claim.

### 4. There are no facts alleged to support a § 1983 against these Defendants.

In order to recover for injuries suffered by a pre-trial detainee while in custody, a plaintiff "must show that the prison official acted with 'deliberate indifference.' " *Castro*, 833 F.3d at 1067-68. The elements of a Fourteenth Amendment failure-to-protect claim are: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Id.*, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case.' " *Id.* (quoting *Kingsley v.*

*Hendrickson*, 576 U.S. 389, 396 (2015)). The third element is "more than negligence but less than subjective intent -- something akin to reckless disregard." *Id.*

Here, the FAC alleges that Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza "had a responsibility to ensure the safety and well-being of Chavez. Each of them could have-at any time-classified Chavez as needing to be under suicide watch." (Doc. 7, ¶¶ 88. 89.) Also alleged is that they could have done a "proper headcount at the proper intervals.:   (*Id*. ¶ 91.) And that "They did not."  (*Id*. ¶¶ 90, 92.) There are no factual allegations that these non-medically-trained deputies had the ability to place an inmate on suicide watch or to treat him for withdrawal symptoms. There are also no factual allegations that any of these deputies had any knowledge that Mr. Chavez was suicidal.

To state a § 1983 claim the Plaintiff has to allege facts that each of these Defendants made an intentional decision with respect to the conditions under which Mr. Chavez was confined; (2) that those conditions put Mr. Chavez at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) that by not taking such measures, the defendant caused Mr. Chavez's death. *Iqbal*, 556 U.S. at 674; *Rizzo,* 423 U.S. at 373-75; *Castro*, 833 F.3d at 1071. All that is alleged here is that all of these Defendants worked at the jail on the day of Mr. Chavez's death and could have classified him as needing to be under suicide watch. (Doc. 7, ¶¶ 88, 89.) That is insufficient to state a valid § 1983 claim and therefore Count I should be dismissed against Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza.

**5. Simply missing a cell inspection does not support a constitutional claim.**

The FAC similarly broadly alleges that Park, Magat, Hawkins, Espinoza, and Moody "conducted patrols and headcounts on the day of Chavez' death." (Doc. 7,¶ 95.) It further alleges that Mr. Chavez was found at 1825 hours and that there was no log entry showing an 1800-hour security check. (*Id.* ¶¶ 96-100.) The FAC then concludes that if any of Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza had properly performed their duties, Chavez would have been observed at 1800 hours and would have been stopped from attempting suicide." (*Id.* 102.) Initially, these allegations are inconsistent: it alleges that Park, Magat, Hawkins, Espinoza, and Moody conducted patrols and headcounts on the day of Chavez' death while also alleging that all of the deputies on duty that day failed to perform a headcount. (*Compare* doc. 7, ¶ 95 *with* doc. 7, ¶ 102). Because there is no allegation that deputies Smith, Dimas, Montano, Dailey, Martin, Hertig conducted patrols and headcounts on the day of Chavez' death, they cannot be constitutionally liable for failing to conduct a patrol or headcount. Like the group claim that all of the deputies working on the day of Mr. Chavez's death are liable, the generalized group claim that all of the deputies that conducted patrols and headcounts on the day of Chavez' death is insufficient to state a valid § 1983 claim. It does not allege specific facts that a specific Defendant's actions caused a constitutional deprivation. *See Iqbal*, 556 U.S. at 674; *Rizzo,* 423 U.S. at 373-75; *Castro*, 833 F.3d at 1071. Any Count I claim that Park, Magat, Hawkins, Espinoza, and Moody are liable because one if them missed the 1800-hour headcount should therefore be dismissed.

Additionally, "in a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). "To meet [§ 1983's] causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."., 533 F.3d at 1026. "Without [such] caus[ation], there is no section 1983

liability." *Chaudhry v. Aragon*, 68 F.4th 1161, 1169–70 (9th Cir. 2023) (quoting *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996)).

The FAC's allegation that had a deputy properly performed their duty, "Chavez would have been observed at 1800 hours and would have been stopped from attempting suicide" (*id.* ¶ 102) is an unreasonable inference, an improper conclusion, or an unwarranted deduction of fact Chavez could have just as easily committed suicide five minutes after an 1800-hour cell headcount. Plaintiff has not alleged the required causation-in-fact or proximate causation here.  Any Count I claim that Park, Magat, Hawkins, Espinoza, and Moody are liable because one of them missed the 1800-hour headcount should therefore be dismissed for lack of causation/proximate cause.

> **6. Maricopa County should be dismissed as no *Monell*-based claims are alleged and it is not responsible for the actions of former Sheriff Penzone.**

Municipalities, such as the County, are only liable under § 1983 based on deficient policies, or pervasive practices or customs, which were the moving force behind the constitutional violation. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 463 U.S. 658, 690 (1978). "To establish municipal liability under *Monell* [a plaintiff] must prove that (1) [she was] deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [her] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. Of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (internal citation omitted). There are no allegations that any County/MCSO policy was deficient, or that there was an improper custom or practice. Further, even if policies or practices were deficient, there is no  § 1983 liability unless it is established that there is some pattern of problems to put the County on notice of any constitutional deficiency. *See Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999)("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded *known or obvious* consequence of his action.") (emphasis

in original) (internal quotations omitted). Maricopa County therefore should be dismissed from the Count I § 1983 claim.

Plaintiff is also arguably making a failure to train or failure to supervise claim against the County[3], but they fail for similar reasons.

> A plaintiff pursuing liability based on a failure to train or supervise must allege that the municipality exhibited "'deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (citation omitted).
>
> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). It may be shown if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Additionally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. [Thompson*, 563 U.S. 51, 62 (2011)] (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409). This requires a plaintiff to show that "policymakers were on actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights," but chose not to remedy the omission. *Id.* at 61. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62.

---

[3] CHS Director Struble, CHS Medical Director Crutchfield, former Sheriff Penzone, and Captain Smith are sued in their official capacity (doc. 7, ¶¶ 13, 14, 27, 28) and failure- to-train and failure-to-supervise allegations are asserted against them (*id*. ¶¶ 82, 83, 150, 151). This could potentially be construed as failure-to-train and failure-to-supervise claim against the County. "A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

> Notably, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

Ames v. City of Tempe, 2021 WL 5578868, at *5 (D. Ariz. Nov. 29, 2021). There is no deliberate indifference here as Plaintiff has not alleged a pattern of similar constitutional violations to put the County on notice that training or supervision has been deficient. Maricopa County should therefore be dismissed from the Count I § 1983 claim.

Finally, the FAC alleges that Maricopa County is "responsible for the actions or inactions of Penzone" for § 1983 liability. (Doc. 7, ¶ 144.) It is not. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under § 1983.") Maricopa County should therefore be dismissed from the Count I § 1983 claim.

### 7. The individual Defendants have qualified immunity from damages.

Should the Court conclude that the FAC states a claim against these individual Defendants, it should still be dismissed because they have qualified immunity from damages.

When evaluating an assertion of qualified immunity, "a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. Cnty. of Orange* 6 F.4th 961, 967-68 (9th Cir. 2021). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Id.* at 968. "In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (quotation marks and citation omitted, alteration in the original). "There need not be a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022) (quotation marks and citation

omitted, alteration in original). "The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation." *Id.* at 934-35.

The Supreme Court has repeatedly "reiterate[d] the longstanding principal that 'clearly established law' should not be defined at a high level of generality." *See White v. Pauly*, 580 U.S. 73, 79 (2017) (internal citations and quotations omitted "Except in the rare case of an 'obvious' instance of constitutional misconduct ... [p]laintiffs must *identify a case* where an officer acting under similar circumstances as defendants was held to have violated" the constitution. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original) (internal brackets omitted).

Here, there are no allegations that any of these Defendants knew, or even should have known, that Mr. Chavez was a suicide risk. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they had no knowledge that the inmate was a suicide risk. There are also no factual allegations that these non-medically-trained deputies should have placed Mr. Chavez on suicide watch when he demonstrated no behavior to them warranting such an action. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they are not medically-trained and did not witness any behavior alerting them of a possible suicide risk. For example in *Regal v. Cnty. of Santa Clara*, 2023 WL 7194879, at *4 (N.D. Cal. Oct. 31, 2023), the court denied an assertion of qualified immunity ruling that:

> This Court agrees with Plaintiffs that *Conn, Castro*, and *Gordon I* in combination clearly established prior to 2020 that pretrial detainees have a Fourteenth Amendment right to be housed with reasonable measures in place to abate *a known risk of suicide*. In 2020, the Ninth Circuit expressly recognized that *Conn* and its other precedents clearly established an inmate's constitutional right to have jail officials respond to "a clear warning that [the inmate] presented an imminent suicide risk." *See NeSmith v. Olsen*, 808 F. App'x 442, 445

(9th Cir. 2020).

*Id.* (emphasis added). While Plaintiff characterizes Mr. Chavez's taking of fentanyl as a suicide attempt, rather than an accidental overdose (doc. 7, ¶¶ 41,42), there are no allegations that any of these Defendants knew of this incident or witnessed any behavior which would have alerted Mr. Chavez as a suicide risk. All of the individual Defendants therefore have qualified immunity from damages.

### C. The State-law claims in Counts II, II, IV and V should be dismissed.

#### 1. There are no facts alleged to support the Count II, III, and IV state-law claims.

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). The principles of *Erie* also apply where the court is exercising pendant jurisdiction. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Accordingly *Iqbal* and *Twombly*'s pleading standards are applicable to Plaintiff's supplemental—pendent—state-law claims in Counts II, III, IV, and V.

Like the federal claims, Plaintiff's state-law claims allege liability—negligence as the basis in Counts II, III, and IV—as a group. (*See* doc. 7, ¶¶ 146-52, 159-64, 172-76.) There are no facts alleged how *each* Defendant breached a duty of care to Mr. Chavez. Merely claiming that all of the Defendants breached a duty of care because they were present on the day he died. Not *every* Defendant had a duty to place Mr. Chavez in a suicide watch, but the FAC is pleaded that way. Not *every* Defendant breached their duty of care to Mr. Chavez by not placing him in a suicide watch, but the FAC is pleaded that way. The FAC fails to allege any facts to support the negligence claim against each Defendant. *See Iqbal*, 556 U.S. at 674 (requiring a plaintiff to plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged). The Count II, III, and IV state-law claims should therefore be dismissed.

### 2. The Count V training and supervision claims should be dismissed.

Count V alleges that Defendants Maricopa County, Penzone, Smith, Struble, and Crutchfield are liable for the negligent hiring, training, and supervision of presumably the other Defendants.[4] At the outset, there are no allegations of who is responsible for training and supervising whom. All of the individual Defendants seem to be Maricopa County deputy sheriffs or civilian employees. (Doc. 7, ¶¶ 16-26.) There are no allegations, and no reason to believe, that Maricopa County Correctional Health Services ("CHS") Director Struble and CHS Medical Director Crutchfield have any involvement in the training and supervision of deputy sheriffs or sheriff department employees. CHS Director Struble and CHS Medical Director Crutchfield should therefore be dismissed from the Count V negligent training and supervision claims.

"An employer is liable for the tortious conduct of its employee if the employer was negligent or reckless in the hiring, supervising, or otherwise training of the employee." *Leibel v. City of Buckeye,* 556 F.Supp.3d 1042, 1079 (D. Ariz. 2021) (citation omitted)(applying Arizona law). To state a claim for negligent supervision under Arizona law, a plaintiff must allege that the employer knew or should have known that the employee was not competent to undertake the task delegated, and the employer's failure to supervise the employee caused injury to the plaintiff. *See Humana Hosp. Desert Valley v. Superior Ct.*, 154 Ariz. 396, 400 (App. 1987). The employer's knowledge, "actual or constructive, is an essential factor in determining whether or not the [employer] exercised

---

[4] The FAC also makes claims against non-parties MSCO and CHS in Count V. (Doc. 7, ¶¶ 178, 182. It is assumed this is an inadvertent holdover from the original Complaint.

reasonable care or was guilty of negligence." *Tucson Med. Ctr. Inc. v. Misevch*, 113 Ariz 4, 6 (1976).

In order to prevail on any of these theories, "a court must first find that the employee committed a tort." *Kuehn v. Stanley,* 208 Ariz. 124, 130, ¶ 21 (App. 2004) (citation omitted). Once the underlying tort has been proven, the employer is liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *Quinonez for and on behalf of Quinonez v. Andersen,* 144 Ariz. 193, 197 (App. 1984) (quoting Restatement (Second) of Agency § 213, cmt. d (1952)). The claims of negligent hiring, training, supervision, and retention are theories of direct liability premised on the employer's independent negligence and are distinct from vicarious liability claims. *See Kopp. v. Physician Group of Ariz., Inc.,* 244 Ariz. 439, 442, ¶¶ 11-12 (2018).

Like the § 1983 failure to train and supervise claims discussed above, Plaintiff fails to allege how the County, Crutchfield and Struble breached the duty of reasonable care in hiring, training, retaining, and supervising of the individual Defendants. Plaintiff simply recites that they breached their duty to provide adequate supervision without any details whatsoever.  (Doc. 9, ¶¶ 181, 182.) Plaintiff provides no further detail, other than "as set forth above" (Id.¶ 182), which is nothing more than all of the Defendants should have known to place Mr. Chavez in suicide watch. These conclusory allegations, with no supporting factual detail, are insufficient to state a claim. *Iqbal,* 556 U.S. at 678; *see generally Ames*, 2021 WL 5578868 at *6. Baldly stating that there was inadequate training and supervision is not enough to state a claim and that is all Plaintiff essentially alleges here. The Count V training and supervision claims should therefore be dismissed.

### 3. The Estate's Count IV negligence claim is duplicative of the Count V survivorship claim.

Arizona's survival statute—A.R.S. §14-3110— preserves most causes of action

for the personal representative of a deceased person except, as relevant here, pain and suffering.

> Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

A.R.S. §14-3110. It is not a separate cause of action, but defines the parameters of the cause of action, negligence here, of a personal representative of a decedent's estate. That is, the survival statues preserves a negligence claim for the Estate here, but bars recovery of pain and suffering. As such it is duplicative of the Count IV Negligence and Gross Negligence claim also asserted by the Estate—one of the Counts should be dismissed.

The survivorship Count III is also improperly asserted on behalf of Plaintiffs Debra Morales Ruiz and Alex Feorge Chavez, the decedent's mother and father. (Doc. 7, ¶¶ 9, 10, 158.) The survival statute can only be "asserted by or against the personal representative [of the decedent]." A.R.S. §14-3110.  On the contrary, "[a] wrongful death action is an original and distinct claim for damages sustained by the statutory beneficiaries and is not derivative of or a continuation of a claim existing in the decedent." *Barragan v. Superior Court of Pima Cty.*, 12 Ariz. App. 402, 4 (App. 1970). Such an action "is for the wrong to the beneficiaries, confined to their loss because of the death." *Id.* at 725. Thus, statutory beneficiaries Ruiz and Alex Chavez's sole remedy lies in Arizona's wrongful death statute.

**4.   Maricopa County is not liable for the acts of Sheriff's Department employees**.

Counts II and III (and arguably IV as it is asserted against all Defendants) alleges

that Maricopa County is vicariously liable for the acts of its employees. (Doc 7, ¶ 153, 165, 171.) Under Arizona law, Maricopa County is not liable for the torts of employees of the Maricopa County Sheriff's Office. *Fridena v. Maricopa County,* 18 Ariz. App. 527, 530 (App. 1972); *Sanchez v. Maricopa County*, 541 P.3d 566, 570, ¶ 20 (App. 2023) (Applying *Fridena*; "we hold the County is not vicariously liable for the negligent conduct of the Sheriff's employees, including the Deputy Sheriff [.]") Any vicarious liability claims against Maricopa County based on the actions of Sheriff Department employees should therefore be dismissed.

> **5. Public entities and public employees are exempt from punitive damages under Arizona law.**

Plaintiffs seek punitive damages in Counts II, III, and possibly Count IV. (Doc 7, ¶¶ 157, 170, 176.) Public entities and public employees are exempt from punitive damages under Arizona law. A.R.S. § 820.04. All claims of punitive damages under state law should therefore be dismissed.

## III. Conclusion

For the above reasons, Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, and Marsland and former Maricopa County Sheriff Paul Penzone respectfully request that:

1. The First Amended Complaint (doc. 7) be dismissed in its entirety;

2. These Defendants be awarded their costs and attorneys' fees as allowed by law:

3. The Court award such other and further relief required by law.

**RESPECTFULLY SUBMITTED** this 20th day of February, 2024.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By /s/ *Michael E. Gottfried*
    Courtney R. Glynn
    Michael E. Gottfried
    Deputy County Attorneys
    *Attorneys for Maricopa County, Struble,*
    *Crutchfield, Dimas, Hawkins, Hertig, Martin,*
    *Montano, Moody, Park, Smith, Chester,*
    *Rainey, and Marsland, Maricopa County*
    *Sheriff Russell Skinner, and former Maricopa*
    *County Sheriff Paul Penzone*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 20, 2024 I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

/s/ S. R.

S:\CIVIL\CIV\Matters\CJ\2023\Ruiz v. MC, et al. 2023-0228\Pleadings\MTD  - 021524 - FINAL.docx