Robert T Mills (Arizona Bar #018853)
Sean A Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona, 85014
Telephone (480) 999-4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Maricopa County, et al.,<br><br>Defendants. | No. CV-23-02482-PHX-SRB (DMF)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>(Assigned to the Honorable Susan R. Bolton and referred to the Honorable Deborah M. Fine) |

Plaintiffs, by and through undersigned counsel, hereby submit their response to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (the "FAC"). This Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **ARGUMENT**

The purpose of a Motion to Dismiss is merely to test the sufficiency of a complaint and determine if it is pled with enough specificity to put the Defendants on notice of the claims filed against them. Fed R. Civ. P. 8 and Rule 12(b)(6). In fact, the Supreme Court has held that there is no heightened pleading requirement for civil rights cases. *Leatherman v. Tarrout County Narcotics Intelligence Unit* 507 U.S. 163, 113 S. CT. 1160 (1993).

Plaintiffs' FAC has set forth sufficient claims to satisfy the 12(b)(6) standard and pled facts far beyond a "speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555, 127 S.Ct. 1955 (2007). A pleading requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Twombly* requires more than assertions devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) *(citing Twombly* 550 U.S. at 555-7). Allegations of material fact should be viewed "in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The Court will only grant a 12(b)(6) Motion to Dismiss for failure to state a claim "where it appears, beyond a doubt, that the plaintiff can prove no set of fact that would entitle it to relief." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

Plaintiffs' FAC must be construed based on the assumption that "*all of its allegations are true*" even if doubtful, in other words, the complaint must be allowed to proceed even if it appears that "recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twomby* (2007) 550 U.S. 544, *see also Neitzke v. Williams* (1989) 490 U.S. 319; *Allison v. California Authority* 419 F.2d 822 (9th Cir. 1969). Plaintiffs have clearly set forth specific facts and a cognizable legal theory sufficient to surpass the threshold inquiry of a Motion to Dismiss under Rule 12(b)(6).

      **A.**     **<ins>STRUBLE AND CRUTCHFIELD SHOULD NOT BE DISMISSED.</ins>**

Struble is the CHS Director and Crutchfield is CHS Medical Director. FAC ₽ 27-28. They are both directly responsible for their employees. They both specifically directed Alexander Chavez' medical care. Upon information and belief, the CHS medical files show an entry for "CHS Medical Director MD" and that entry is actually Struble. FAC ₽ 67-68. It is possible that that entry was actually Crutchfield, but based on the ambiguous records that were received by Plaintiffs through a public records request, it is impossible to know exactly. Defendants are in the sole custody and control of these records and Plaintiffs have made every effort that they can at this point to properly assign allegations to unknown individuals. If Defendants are currently unwilling to provide this information, Plaintiffs are unable to amend further to clearly identify who these individuals are.

Plaintiffs plan on issuing discovery requests to ascertain this information and to immediately move this Court for permission to amend the FAC.

The FAC alleges that Struble placed Chavez under the opiate protocol and that multiple prescriptions were supposed to be administered – including Hydroxyzine, Loperamide, and Ondansetron. FAC ¶ 66. The FAC further alleges that only one dose of Hydroxyzine was administered and that no more medications were given to Chavez. FAC ¶ 69-70. As Struble (or Crutchfield) was the person who ordered these medications but no employees – including Struble or Crutchfield – followed up to provide these needed medications, Chavez was faced with dealing with withdrawal symptoms that caused extreme pain and distress, alone and not on suicide watch. FAC ¶ 71-72. The FAC continues with allegations of how dangerous this type of situation can be. FAC ¶ 73-75. Struble's (or Crutchfield's) deliberate failure to ensure that medications were given to Chavez created that very situation and amounts to a recognition that these medications were necessary and were objectively unreasonable failures to provide the same. Struble's or Crutchfield's subordinates' failure to ensure medications were given to Chavez also created that very situation and amounts to a recognition that these medications were necessary and were objectively unreasonable failures to provide the same.

Additionally,

> a defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' " *Starr*, 652 F.3d at 1207 (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

*Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 995 (E.D. Cal. 2017).

As discussed above, the "CHS Medical Director" was directly involved in Chavez' care by prescribing yet failing to ensure Chavez was given his medications. The FAC further alleges that the extreme pain and anguish Chavez experienced from the lack of medications led directly to his committing suicide. Assuming the facts pled in the FAC are true, Plaintiffs have pled enough to – at this stage – survive a motion to dismiss. At

the very least, Defendants should provide the names associated with the "CHS Medical Director" entries in Chavez' files, and this Court should allow Plaintiffs to amend the FAC to properly delineate the parties.

      **B.**     **MARICOPA COUNTY IS THE PROPER PARTY FOR CHS EMPLOYEE LIABILITY AND JANE AND JOHN DOES RELATED TO CODE NAMES OF CHS EMPLOYEES.**

Defendants make sweeping assertions that the FAC does not have enough specific facts for specific Defendants to establish liability for the failure to properly assign Chavez to the suicide watch. Plaintiffs have included John and Jane Does 1-40 for this very reason. Maricopa employees and is responsible for the actions of Correctional Healthcare Services ("CHS") employees. FAC ¶ 11, 30. In Plaintiffs' FAC, Plaintiffs specifically point to practitioners via their employee codes. *See* FAC ¶ 52 FN1, ¶ 52, ¶ 65, ¶ 67-68, ¶ 127. Those codes include "RN; 3002H", "NP;1489H", "NP; 2712H", "RN; CS995", "RN; 3038H", "RN, Nurse Mgr; 2231H", "RN;2942H", "RN; 1518H", "CHT: 2806H", "RN; 2967H", "PA-C Med; 1632H", "unknown Nurse Manager", "CHS Medical Director MD", and "Um Coord; CH050". Because this information is in the sole custody and control of Defendants and has yet to be provided, a further amendment to the FAC is necessary to properly assign them to the claims against them. Plaintiffs make the request that a further amendment to the FAC be granted and that Defendants provide the names of each of them so that this case may be properly litigated against CHS employees, and Maricopa.

Maricopa is responsible for the actions of CHS and its employees. Maricopa is therefore the proper party under *respondeat superior* for at least Plaintiffs' state claims. At this point, Plaintiffs have attempted to make it clear that certain unnamed CHS employees are responsible for the misclassification of Alexander Chavez – specifically failing to put him on suicide watch. *See Id.,* FAC ¶ 44, 48, 121. Plaintiffs need further information from Defendants regarding employee code names to properly update the allegations further.

4

## C. THE FEDERAL AND STATE CLAIMS AGAINST DEFENDANTS PENZONE, SMITH[1], MOODY, DIMAS, PARK, MAGAT, HAWKINS, MONTANO, DAILEY, MARTIN, HERTIG, AND ESPINOZA SHOULD NOT BE DISMISSED.

The FAC alleges that Defendant Sheriff Paul Penzone was tasked with oversight of the MCSO and was responsible for all policies and procedures promulgated by the MCSO. FAC ¶ 14. The FAC further alleges that Penzone is responsible for MCSO officials, employees and agents, including without limitation each of the Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa (the "Guards"). *Id.* The FAC further alleges that Defendant Captain Brandon Smith was at all times relevant to this complaint, a Captain of the MCSO's Detention division. FAC ¶ 13. The FAC further alleges that he is tasked with oversight of the MCSO Detention centers and employees under his command and is responsible for all policies and procedures promulgated by the MCSO. *Id.* The FAC alleges that each of the Guards were assigned to the Jail on the day of Chavez' death. FAC ¶ 88. The FAC alleges that the Guards had a responsibility to ensure the safety and well-being of Chavez. FAC ¶89. The FAC alleges that the failure to put Chavez on suicide watch was a responsibility of all Defendants. FAC ¶ 51, 89. The FAC alleges that at minimum Park, Magat, Hawkins, Espinosa, and Moody actually conducted patrols and headcounts in Chavez' unit. FAC ¶ 95. The FAC alleges that each of the Guards failed to conduct a headcount at 1800 hours – and in fact, that log entry was left blank despite headcounts occurring at other hourly intervals. FAC ¶¶ 87, 96-100. The FAC alleges that instead of trying to help Chavez, the Defendants instead disciplined him for possession of fentanyl. FAC ¶¶ 55-59.

In terms of supervisor liability, the FAC alleges that Penzone and Smith are charged with implementing and maintaining policies and procedures for the MCSO, its employees, and its jails – including the Lower Buckeye Jail. FAC ¶82. The FAC also alleges that they are also charged with oversight of their jail facilities. *Id.* Additionally,

---

[1] Plaintiffs' Counsel has been informed that Captain Brandon Smith is wrongly named and that the proper party should be Captain Calvin King. Plaintiffs therefore again respectfully request one further amendment to the FAC to properly address the substitution of the proper party.

the FAC alleges that they are required to review employee actions regularly to ensure MCSO policies and procedures are being followed. *Id.* The FAC alleges that the lack of oversight caused headcounts to not be performed at the required hourly intervals. FAC ¶¶ 84-86. The FAC alleges that Penzone and Smith are required to:

- Maintain physical control over all inmates to prevent harm to both staff and other inmates; and

- Implement, evaluate and maintain security procedures and protocols in accordance with industry standards to protect both staff and other inmates; and

- Act affirmatively to protect inmates when a potential threat or risk of harm to either staff or another inmate becomes known to them; and

- Hire, train, and supervise corrections officers and staff in a manner that thoroughly ensures the mission of the Arizona Department of Corrections is carried out regarding the physical protection of all staff and inmates; and

- Maintain strong presence of supervision, control, and oversight over corrections officers and all prison personnel; and

- Provide medical care and treatment for all inmates according to the standard of care recognized by the industry.

FAC ¶ 120.

Defendants admit that Captain Calvin King – and not Captain Brandon Smith – is the proper party and was the MCSO supervisor responsible for "overseeing shifts, walks, headcounts and other related tasks" Mot. p. 5. FN2. Thus, Captain Calvin King had a duty to ensure that Chavez was being properly monitored, and the failure of his staff to properly conduct headcounts – as alleged in the FAC – led directly to Chavez' death from suicide. *See* FAC ¶ 85-106. Again,

> a defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' " *Starr*, 652 F.3d at 1207 (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) ).

*Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 995 (E.D. Cal. 2017).

Plaintiffs allege that according to Defendants' own records, Chavez had been presumed to have been unattended for 25 minutes. FAC ¶ 78. Because of the failure to ensure his officers were properly conducting headcounts, Chavez was not observed at or around 1800 hours and was only found at 1825 hours. FAC ¶¶ 78, 95-96. The FAC alleges enough of a causal link between Captain Calvin King's failure to ensure his officers and employees were adhering to their prescribed duties and the fact that Chavez would have been discovered prior to his suicide in enough time to save Chavez' life. Furthermore because of the above, the FAC also alleges sufficient facts that the Guards not only failed in their duties, but were objectively unreasonable in their failure to ensure Chavez' safety. It is not an unreasonable inference that checking on Chavez at 1800 hours would have saved Chavez' life. The Defendants' own records demonstrate that Chavez had started his suicide attempt 25 minutes prior to Moody's cell check at 1825 hours. FAC ¶¶ 76-77, 96. Chavez did not spontaneously have a noose to commit suicide with. He had to fashion it in order to begin his suicide attempt. It is not unreasonable to infer that the Guards would have been able to see him ripping fabric and fashioning a noose – or to see him with the noose around his neck when Defendants' own records admit that he had been hanging for approximately 25 minutes.

In Arizona, "To be grossly negligent, the actor's conduct must create an unreasonable risk of physical harm to another, and such risk must be substantially greater than the risk involved in ordinary negligence." *Rourk v. State,* 821 P.2d 273, 280 (App.1991). Additionally, "[g]ross negligence is generally a question of fact that is determined by a jury." *Armenta v. City of Casa Grande,* 71 P.3d 359, 365 (App. 2003).

As explained herein, the FAC does specifically allege that each of Penzone's, King's, and the Guards' actions and conduct created an unreasonable risk of physical harm to Chavez. That risk of harm was so great that it could have and did result in Chavez' death.. They gave him a suicide prevention and awareness pamphlet. They specifically knew that he was a risk of suicide but did nothing else to protect him. All of the

Defendants had access to his records and knew that he was a suicide risk. In fact, on August 7 2022, jail staff threatened to put him in a monitored cell, but didn't.

At this stage, the Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the Plaintiffs. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). If the FAC is not clear enough regarding the individual actions for purposes of the state claims – which Plaintiffs believe it is – then Plaintiffs respectfully request one further opportunity to amend the FAC to further expand on the individual liability.

### D. THE FAC DOES ALLEGE THAT MARSLAND RAINEY AND CHESTER ACTED IMPROPERLY AND THEIR ACTIONS WERE OBJECTIVELY UNREASONABLE AND GROSSLY NEGLIGENT TO CHAVEZ' RIGHTS.

Defendants' argument that Plaintiffs did not allege that Marsland, Rainey, and Chester acted improperly is incorrect. Defendants focus on the allegations that Marsland and Rainey completed Chavez' intake documents. Mot. p. 5, *see also* FAC ¶ 37, 38. Defendants further focus on the fact that the FAC alleges that Rainey and Chester gave Chavez a suicide prevention form. *Id.,* FAC ¶ 46-47. Finally, Defendants also focus on the allegations that Chavez was an opiate addict who had just attempted suicide and had Chavez sign a waiver form refusing Administrative Restrictive Housing. *Id.,* FAC ¶¶ 53-54. However, Defendants do not include the further allegations that they were responsible for ensuring Chavez' safety and that they failed to do so by allowing a clear suicidal risk inmate to not be put on suicide watch.

In *Atayde v. Napa State Hosp.,* a case involving a prison-suicide and claims for § 1983 violations, the decedent also engaged in self-harming behaviors. *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 986 (E.D. Cal. 2017). The Defendants in *Atayde* filed a motion to dismiss Chavez could not receive medical care or direction from anyone but Defendants. In that case, in response to a suicide attempt, Defendants actually placed the decedent into a safety cell. *Id.* at 986. Moreover,

"'[i]ncapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment.' *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). When determining whether failure to provide timely restorative treatment constitutes a violation of the Fourteenth Amendment, courts must balance the detainee's liberty interests against the legitimate interests of the state. Id. (citing *Youngberg*, 457 U.S. at 321, 102 S.Ct. 2452 )."

*Id.* at 989.

The *Atayde* Court held that "when considering a motion to dismiss such a claim, a district court must consider whether the plaintiff has pled sufficient facts to permit the court to infer the plaintiff had a 'serious medical need' and a defendant was 'deliberately indifferent' to that need." *Id.* The Ninth Circuit has held that "we have previously recognized that a heightened suicide risk can present a serious medical need" *Simmons v. Navajo County*, 609 F.3d 1011, 1018 (9th Cir. 2010). Furthermore, in particular, "deliberate indifference may be shown where **prison officials or practitioners** 'deny, delay, or intentionally interfere with medical treatment.' *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Estelle v. Gamble*, 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (finding that delays in providing medical care may show deliberate indifference)." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 989 (E.D. Cal. 2017) (emphasis added).

Defendants have and had the sole responsibility for Chavez' care – including his placement in the Maricopa County Sheriff's Offices' ("MCSO") jails. FAC ¶¶ 121-123, 133-142. Because of their failure in delaying proper medical care – including administering prescriptions and properly classifying Chavez to put him on suicide watch – Defendants were objectively deliberately indifferent to Chavez' constitutional rights and the FAC's allegations – taken as true – are enough to survive a Motion to Dismiss.

### E. THE INDIVIDUAL DEFENDANTS ARE NOT PROTECTED BY QUALIFIED IMMUNITY.

Defendants argue that they have qualified immunity for failing to understand that Chavez was a risk of suicide. They argue that there are no allegations that the Defendants

9

could have known that he attempted suicide prior and that if there were allegations that there are no allegations that Defendants would have had knowledge of that fact. Defendants are wrong. The FAC properly alleges that Chavez attempted to commit suicide one day before he actually committed suicide FAC ¶¶ 45-51. The FAC alleges that Defendants' own records indicate that he had taken a large amount of pills the day prior.

In fact, Defendants' own records indicate that Chavez was given a "SUICIDE PREVENTION/AWARENESS FLYER PROVIDED TO INMATE". FAC ¶ 46. The FAC alleges that there were ample opportunities and reasons to assign Chavez to the proper classifications and put him on suicide watch and that none of the Defendants did so. FAC ¶¶ 54-60. Additionally, the FAC alleges that staff found him unresponsive in the fetal position in his cell on August 7, 2022, threatened to put him in a monitored room, and then left him because he began "breathing". FAC ¶ 62-64. Defendants had knowledge Chavez was in distress and coupled with his previous suicide attempt, that he was a risk for further suicide attempts. They even "threatened" to place him in a monitored room. That alone imputes knowledge that they appreciated the risk and knew how to handle the risk, but then left him on his own despite knowing so.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. *See Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) )." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 994-95 (E.D. Cal. 2017)

*Atayde* instructs that "[w]hen determining whether qualified immunity applies, the central questions for the court are: (i) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional right; and (ii) whether the right at issue was 'clearly established.'" *Id.* (internal citations omitted). "The inquiry must be undertaken in light of the specific context of the particular case. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151." *Id.*

Again, in a motion to dismiss "the court must accept as true allegations in the complaint, and construe these allegations in the light most favorable to plaintiff." *Id.* As in *Atayde,* Plaintiffs allege that Defendants delayed or failed in addressing Chavez' serious medical needs in violation of his Fourteenth Amendment rights. In fact, Defendants knew that they should put Chavez in a monitored room but failed to do so. FAC ¶¶ 62-64. The right to be free from this type of violation was well-established by 2002. *See Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (finding that "the general law regarding the medical treatment of prisoners was clearly established," and "it was also clearly established that [prison staff] could not intentionally deny or delay access to medical care").

Taking the facts pled as true at the motion to dismiss stage, Plaintiffs have alleged sufficient facts to survive a qualified immunity defense.

### F. THE NEGLIGENCE CLAIM IS DUPLICATIVE OF THE SURVIVORSHIP CLAIM.

Plaintiffs agree that their Count IV negligence claim is duplicative of their Count V survivorship claim. Therefore, Plaintiffs intend, and respectfully request the opportunity, to merge these two (2) claims into one (1) claim via amendment of the FAC.

### G. PUNITIVE DAMAGES

Plaintiffs intend, and respectfully request the opportunity to, dismiss their request for punitive damages as to their state law claims via amendment of the FAC.

## II. CONCLUSION

Based on the foregoing, Plaintiffs request this Court deny the Defendants' Motion to Motion to Dismiss. Alternatively, if this Court deems any of the allegations or counts insufficiently pled, Plaintiffs request an opportunity to amend its FAC an additional time. Plaintiffs attempted to resolve issues presented by Defendants previously by filing their FAC, and no prejudice would exist for Plaintiffs to amend an additional time.

///

///

**RESPECTFULLY SUBMITTED** this 19th day of March 2024.

**MILLS + WOODS LAW**

By */s/ Sean A. Woods*
    Sean A. Woods
    Robert T. Mills
    5055 North 12th Street, Ste 101
    Phoenix, Arizona 85014
    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2024 I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

Courtney R. Glynn
glynnc@mcao.maricopa.gov
Michael E. Gottfried
gottfrim@mcao.maricopa.gov
**RACHEL H. MITCHELL**
**MARICOPA COUNTY ATTORNEY**
CIVIL SERVICES DIVISION
225 W Madison St.
Phoenix, AZ 85003
*Attorneys for Maricopa County, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, and Marsland and the Maricopa County Sheriff*

*/s/ Ben Dangerfield*