RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Courtney R. Glynn (023155)
Michael E. Gottfried (010623)
Deputy County Attorneys
glynnc@mcao.maricopa.gov
gottfrim@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4316
MCAO Firm No. 00032000

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, et al., | NO. CV-23-02482-PHX-SRB (DMF) |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| Maricopa County, et al., | |
| Defendants. | |

Defendants reply in support of their motion to dismiss this lawsuit.

**A.   The Count I section 1983 claims should be dismissed.**

   **1. Struble and Crutchfield should be dismissed as there is no supervisory liability under § 1983**.

Defendant Struble is the CHS Director. (Doc. 7, ¶ 28.) Defendant Crutchfield is the CHS Medical Director. (*Id*. ¶ 27.) The FAC alleges that Mr. Chavez was placed in the CHS opiate protocol and prescribed medicines, but not all medications were given

(*Id*. ¶¶ 67-69.) The FAC also asserts that the prescriptions were "ordered by 'CHS Medical Director MD'" (*id*. ¶ 67) and that "[u]pon information and belief, the CHS Medical Director was Lisa Struble." (*Id*. ¶ 68). By their own pleading, Dr. Crutchfield, not Director Struble, is the CHS Medical Director. To the extent that there is any liability for placing Mr. Chaves in the opiate protocol and prescribing medications, such liability does not attach to Director Struble.

Nor is Medical Director Crutchfield liable under § 1983. Plaintiffs do not criticize anyone at CHS for placing Mr. Chaves in the opiate protocol and prescribing medications. They instead allege that there is liability for the "failure to ensure that medications were given to Chavez." (Doc. 12 at 3: 12-13; *see also* doc. 7 , ¶¶ 83, 84.) There are no allegations—nor could there be consistent with Rule 11—that Director Struble or Medical Director Crutchfield provide medications to jail inmates. Plaintiff also makes no arguments, and there are no facts alleged, to support a failure-to-train or failure-to-supervise claim. *See Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002).

This is the epitome of the type of supervisory liability barred under § 1983. *See Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)) (stating that vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983). In fact, leaving no doubt that this is a supervision-based claim, Plaintiffs argue that it was necessary to provide these medications based on "Struble or Crutchfield's subordinates failure to ensure medications were given to Chavez." (Doc. 12 at 3: 14-16.)

Nonetheless, Plaintiffs reach to base supervisory liability because of a "personal involvement in the constitution deprivation" under *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). (Id. at 3:18-28.) But the only personal involvement alleged is placing Mr. Chavez in the opiate protocol and prescribing medication, and there are no allegations or arguments that there was anything improper or unconstitutional about those actions.

Plaintiffs complain that the lack of documents have prevented them from being able to definitively point to Director Struble or Medical Director Crutchfield placing Mr. Chavez in the opiate protocol and prescribing medications. (Doc. 12 at 2: 18-27.) It is irrelevant—neither Director Struble nor Medical Director Crutchfield are liable for their subordinates alleged failure to supply prescribed medication. The Count I individual capacity § 1983 claim should therefore be dismissed against CHS Director Struble and CHS Medical Director Crutchfield.

### 2.  Supervisors Penzone and Smith should be dismissed.

Plaintiff makes the identical claims against former Maricopa County Sheriff Penzone and MSCO Captain Brandon Smith, alleging inadequate oversight, training, and supervision of the jail and sheriff's deputies. (Doc.7, ¶¶ 13,14, 82, 84.) There are no allegations that former Sheriff Penzone and Captain Smith had any interaction with Mr. Chavez, and they are not responsible for the actions of their employees. *Lemire*, 726 F.3d at 1074. And like the claims against Directors Struble and Crutchfield, Plaintiff makes no arguments, and there are no facts alleged, to support a failure-to-train or failure-to-supervise claim. *See Clement v. Gomez*, 298 F.3d at 905. Plaintiffs' Response does not address these arguments other to argue that Penzone and Smith are charged with the oversight of jail facilities (doc. 12 a5 5: 25) and that the "lack of oversight" caused headcounts not to be performed (id. at 6: 3).

Plaintiffs again attempt to rely on *Starr* to resurrect these supervisory-liability claims (doc. 12 at 6:25-27), but there are no allegations that Penzone or Smith had any actual personal involvement with Mr. Chavez.  Similarly, there is no "causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207. "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others,

which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury[.]" *Id*. at 1207-08 (internal citations, parentheticals, and quotes omitted). Nothing of the sort is alleged or argued here.

Plaintiffs' allegations of supervisory liability are barred under §1983. *See Lemire*, 726 F.3d at 1074. The Count I individual capacity § 1983 claim should therefore be dismissed against former Maricopa County Sheriff Penzone and Maricopa County Sheriff Office ("MCSO") Captain Brandon Smith.

### 3. There are no allegations that Defendants Marsland, Rainey, and Chester did anything improper.

Plaintiffs clarify that their claims against Defendants Marsland, Rainey, and Chester are not based upon giving Mr. Chavez a suicide prevention form or having Mr. Chavez sign a waiver form refusing Administrative Housing. (Doc. 12 at 8:12-21.) Rather, their claims are that "they were responsible for ensuring Chavez's safety and that they failed to do so by allowing a clear suicide risk inmate to not be put on suicide watch." (*Id*. at 8:19-22.)

There are also no factual allegations that Defendants Marsland, Rainey, and Chester had any knowledge that Mr. Chavez was suicidal. Similarly, there are no factual allegations that these deputies were medically-trained or had the ability to place an inmate on suicide watch or to treat him for withdrawal symptoms.

Plaintiffs cite no authority for this proposition that all jail employees who come in contact with an inmate have some type of responsibility to place the inmate on suicide watch, regardless of whether they know of a suicide risk or have the ability to place an inmate on suicide watch. They do argue that "deliberate indifference may be shown where prison officials or practitioners deny, delay, or intentionally interfere with medical treatment," citing *Atayde v. Napa State Hosp*., 255 F. Supp 3d. 978, 989 (E.D. Cal. 2017). While this is a correct statement of the general law, to survive a motion to dismiss a

complaint must at a minimum allege facts about how the specific prison official or practitioner defendant denied, delayed, or intentionally interfered with medical treatment. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976) (holding that, to state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (holding that a Fourteenth Amendment claim requires that a defendant made an intentional decision with respect to the conditions under which the plaintiff was confined putting the plaintiff at substantial risk of suffering serious harm and that defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved).

Here, there are no allegations about what these Defendants knew or could have done, and no allegations or facts showing that they made a conscious decision to put Mr. Chavez at risk that a reasonable officer would have appreciated. Defendants Marsland, Rainey and Chester should therefore be dismissed from the Count I federal claim.

### 4. There are no facts alleged to support a § 1983 against any of these Defendants.

As to each of these Defendants, Plaintiffs simply assert that "the Guards not only failed in their duties, but were objectively unreasonable in their failure to ensure Chavez's safety." (Doc. 12 at 7:8-9.) This blanket claim of liability does not support a § 1983 claim and Plaintiffs do not make any specific argument that it does.

In order to recover for injuries suffered by a pre-trial detainee while in custody, a plaintiff "must show that the prison official acted with 'deliberate indifference.' " *Castro*, 833 F.3d at 1067-68. The elements of a Fourteenth Amendment failure-to-protect claim are: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk

of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Id*., 833 F.3d at 1071.

Here, the FAC alleges that Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza "had a responsibility to ensure the safety and well-being of Chavez. Each of them could have-at any time-classified Chavez as needing to be under suicide watch." (Doc. 7, ¶¶ 88. 89.) There are no factual allegations that these non-medically-trained deputies had the ability to place an inmate on suicide watch or to treat him for withdrawal symptoms. There are also no factual allegations that any of these deputies had any knowledge that Mr. Chavez was suicidal.

To state a § 1983 claim the Plaintiff has to allege facts supporting each of Castro's requirements. *Iqbal*, 556 U.S. at 674; *Rizzo,* 423 U.S. at 373-75; *Castro*, 833 F.3d at 1071. All that is alleged here is that all of these Defendants worked at the jail on the day of Mr. Chavez's death and could have classified him as needing to be under suicide watch. (Doc. 7, ¶¶ 88, 89.) That is insufficient to state a valid § 1983 claim and therefore Count I should be dismissed against Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza.

### 5. Simply missing a cell inspection does not support a constitutional claim.

The FAC similarly broadly alleges that Park, Magat, Hawkins, Espinoza, and Moody "conducted patrols and headcounts on the day of Chavez' death." (Doc. 7, ¶ 95.) It further alleges that Mr. Chavez was found at 1825 hours and that there was no log entry showing an 1800-hour security check. (*Id*. ¶¶ 96-100.) The FAC then concludes that if any of Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig,

and Espinoza had properly performed their duties, Chavez would have been observed at 1800 hours and would have been stopped from attempting suicide." (*Id*. 102.) Plaintiffs argue that "it is not unreasonable to infer that the Guards would have been able to see him ripping fabric and fashioning a noose - or to see him with the noose around his neck when Defendants own records admit that he had been hanging for approximately 25 minutes." (Doc. 12 at 7:14-17.)

As set-out above, this broad general claim that *all* of the Defendant deputies are liable for not doing cell inspections does not support a § 1983 claim. Plaintiffs did not clarify the inconsistency in their allegations that Park, Magat, Hawkins, Espinoza, and Moody conducted patrols and headcounts on the day of Chavez' death while also alleging that all of the deputies on duty that day failed to perform a headcount. (*Compare* doc. 7, ¶ 95 *with* doc. 7, ¶ 102). Because there is no allegation that deputies Smith, Dimas, Montano, Dailey, Martin, Hertig conducted patrols and headcounts on the day of Chavez' death, they cannot be constitutionally liable for failing to conduct a patrol or headcount. Like the group claim that all of the deputies working on the day of Mr. Chavez's death are liable, the generalized group claim that all of the deputies that conducted patrols and headcounts on the day of Chavez' death is insufficient to state a valid § 1983 claim. It does not allege specific facts that a specific Defendant's actions caused a constitutional deprivation. *See Iqbal*, 556 U.S. at 674; *Rizzo,* 423 U.S. at 373-75; *Castro*, 833 F.3d at 1071. Any Count I claim that all of the Defendants are liable because someone missed the 1800-hour headcount should therefore be dismissed.

"To meet [§ 1983's] causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) "Without [such] caus[ation], there is no section 1983 liability." *Chaudhry v. Aragon*, 68 F.4th 1161, 1169–70 (9th Cir. 2023). The FAC's allegation that had a deputy properly performed their duty, "Chavez would have been observed at 1800 hours and would have been stopped from attempting suicide" (*id.* ¶ 102)

is an unreasonable inference, an improper conclusion, or an unwarranted deduction of fact Chavez could have just as easily committed suicide five minutes after an 1800-hour cell headcount. Simply declaring that it is a reasonable inference (doc. 12 at 7:14-17) does not make its so.

Plaintiff has not alleged the required causation-in-fact or proximate causation here. Any Count I claim that Park, Magat, Hawkins, Espinoza, and Moody are liable because one of them missed the 1800-hour headcount should therefore be dismissed for lack of causation/proximate cause.

### 6. Maricopa County should be dismissed as no *Monell*-based claims are alleged and it is not responsible for the actions of former Sheriff Penzone.

Plaintiffs did not respond to the claim that Maricopa County is not liable under § 1983 under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 463 U.S. 658, 690 (1978), for a failure to train or failure to supervise claim, or as Sheriff Penzone's supervisor. (Doc. 8 at 9-11.) As such, to the extent *Monel*, claims, failure to train/failure to supervise claims, or claims based on Sheriff Penzone's actions are asserted under Count 1, they should be dismissed.

Plaintiffs instead argue that Maricopa County should remain a Defendant because potential Doe Defendants are employees of Maricopa County, thereby making Maricopa County responsible for their actions in Plaintiff's state-law claims. (Doc. 12 at 4: 6-27.) Plaintiffs also seek leave to amend when the names of these CHS employees are discovered.

This argument ahs nothing to do with the federal claims against Maricopa County – Maricopa County should therefore be dismissed from the Count I § 1983 claim. As of now, there are no CHS employees named as Defendants and therefore no reason for Maricopa County to remain a Defendant under the state-law claims either.[1] If the situation

---

[1] Director Struble and Dr. Crutchfield are CHS employees, but as argued above, they should be dismissed from this lawsuit.

changes in the future, Maricopa County's dismissal can be revisited. There are no valid federal or state-law claims against Maricopa County and therefore it should be dismissed.

### 7.  The individual Defendants have qualified immunity from damages.

Should the Court conclude that the FAC states a § 1983 claim against these individual Defendants, it should still be dismissed because they have qualified immunity from damages. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they had no knowledge that the inmate was a suicide risk. There are also no factual allegations that these non-medically-trained deputies should have placed Mr. Chavez on suicide watch when he demonstrated no behavior to them warranting such an action. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they are not medically-trained and did not witness any behavior alerting them of a possible suicide risk. *See Gordon v. Cnty. of Orange,* F.4th 961, 967-68 (9th Cir. 2021) (holding that there is qualified immunity unless the right was clearly established at the time of the alleged misconduct).

Except in the rare case of an 'obvious' instance of constitutional misconduct ... [p]laintiffs must *identify a case* where an officer acting under similar circumstances as defendants was held to have violated" the constitution. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original) (internal brackets omitted). Plaintiffs have not identified any case where an officer acting under similar circumstances as defendants was held to have violated the constitution. While Plaintiffs cite Clement v298 F.3d at 906 for the general propositions that medical treatment of prisoners was clearly established, that is the type of high level of generality that the Supreme Court has held does not constitute clearly established law. *White v. Pauly*, 580 U.S. 73, 79 (2017). All of the individual Defendants therefore have qualified immunity from damages under Count I.

**B.   The State-law claims in Counts II, II, IV and V should be dismissed.**

    **1.   There are no facts alleged to support the Count II, III, and IV state-law claims.**

Plaintiffs do not contest that *Iqbal* and *Twombly*'s pleading standards are applicable to Plaintiff's supplemental—pendent—state-law claims in Counts II, III, IV, and V. Like the federal claims, Plaintiff's state-law claims allege liability—negligence as the basis in Counts II, III, and IV—as a group. (*See* doc. 7, ¶¶ 146-52, 159-64, 172-76; doc. 12 at 7:23-25.) There are no facts alleged how *each* Defendant breached a duty of care to Mr. Chavez—the claim is that all of the Defendants breached a duty of care because they were present on the day he died. The FAC fails to allege any facts to support the negligence claim against each Defendant. *See Iqbal*, 556 U.S. at 674 (requiring a plaintiff to plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged). The Count II, III, and IV state-law claims should therefore be dismissed.

    **2.   The Count V training and supervision claims should be dismissed.**

To state a claim for negligent supervision under Arizona law, a plaintiff must allege that the employer knew or should have known that the employee was not competent to undertake the task delegated, and the employer's failure to supervise the employee caused injury to the plaintiff. *See Humana Hosp. Desert Valley v. Superior Ct.*, 154 Ariz. 396, 400 (App. 1987). The employer's knowledge, "actual or constructive, is an essential factor in determining whether or not the [employer] exercised reasonable care or was guilty of negligence." *Tucson Med. Ctr. Inc. v. Misevch*, 113 Ariz 4, 6 (1976).

Plaintiffs fail to allege how the County, Crutchfield and Struble breached the duty of reasonable care in hiring, training, retaining, and supervising of the individual Defendants. Plaintiff simply recites that they breached their duty to provide adequate

supervision without any details whatsoever. (Doc. 9, ¶¶ 181, 182.) These conclusory allegations, with no supporting factual detail, are insufficient to state a claim. *Iqbal,* 556 U.S. at 678; *see generally Ames*, 2021 WL 5578868 at *6. Plaintiff's Response does not address any of these arguments (Doc. 8 at 14-15.) The Count V training and supervision claims should therefore be dismissed.

### 4. Maricopa County is not liable for the acts of Sheriff's Department employees.

Counts II and III (and arguably IV as it is asserted against all Defendants) alleges that Maricopa County is vicariously liable for the acts of its employees. (Doc 7, ¶ 153, 165, 171.) Under Arizona law, Maricopa County is not liable for the torts of employees of the Maricopa County Sheriff's Office. *Fridena v. Maricopa County,* 18 Ariz. App. 527, 530 (App. 1972); *Sanchez v. Maricopa County*, 541 P.3d 566, 570, ¶ 20 (App. 2023) Plaintiffs do not argue otherwise. Any vicarious liability claims against Maricopa County based on the actions of Sheriff Department employees under state law should therefore be dismissed.

Further, as discussed above, there is also no reason that Maricopa County should remain a Defendant because of future, potential state-law respondeat superior claims based on the conduct of unknown CHS defendants. Maricopa County should therefore be dismissed from Counts II, II and IV (if applicable).

### III. Conclusion

For the above reasons, Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, and Marsland and former Maricopa County Sheriff Paul Penzone respectfully request that: (1) The First Amended Complaint (doc. 7) be dismissed in its entirety; (2) These Defendants be awarded their costs and attorneys' fees as allowed by law: (3) The Court award such other and further relief required by law.

**RESPECTFULLY SUBMITTED** this 5th day of April, 2024.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: /s/ *Michael E. Gottfried*
    Courtney R. Glynn
    Michael E. Gottfried
    Deputy County Attorneys
    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024 I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

/s/ *J. Christianson*

S:\CIVIL\CIV\Matters\CJ\2023\Ruiz v. MC, et al. 2023-0228\Pleadings\Reply iso MTD.docx