JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, et al., | No. CV-23-02482-PHX-SRB (DMF) |
| Plaintiffs, | |
| v. | **ORDER** |
| Maricopa County, et al., | |
| Defendants. | |

On August 8, 2023, Plaintiff Debra Morales Ruiz, as an individual and as the personal representative of Alexander Chavez, and Plaintiff Alex George Chavez filed, through counsel, a complaint in Maricopa County Superior Court against Maricopa County; the Maricopa County Sheriff's Office (MCSO); Maricopa County Correctional Health Services (CHS); former Maricopa County Sheriff Paul Penzone; Captain Brandon Smith; Officers Kyle Moody, Arturo Dimas, Tyler Park, Gerardo Magat, Daniel Hawkins, Jr., James Dailey, Trevor Martin, Gregory Hertig, and Jorge Espinosa, Jr.; CHS Director Thomas Tegeler and employees John Chester, Morgan Rainey, and Stefanie Marsland; and the individual Defendants' respective spouses. (Doc. 1-1 at 15-41.) On November 29, 2023, Defendants Maricopa County Sheriff's Office, Penzone, Dimas, Hawkins, Hertig, Montano, Moody, Park, Smith, Chester, Rainey, and Marsland filed a Notice of Removal and removed the case to this Court. (Doc. 1.) In a January 19, 2024 Order, the Court determined removal was proper and referred the matter to the Magistrate Judge. (Doc. 3.)

On February 6, 2024, Plaintiffs filed their First Amended Complaint (FAC) naming

the same individual Defendants except Thomas Tegeler and adding CHS Medical Director David Crutchfield and CHS Director Lisa Struble. (Doc. 7.) Plaintiffs also omitted MCSO and CHS as Defendants. (*Id.*) On February 20, 2024, Defendants Maricopa County, Chester, Crutchfield, Dimas, Hawkins, Hertig, Marsland, Martin, Montano, Moody, Park, Penzone, Rainey, Skinner, Smith, and Struble filed a Motion to Dismiss, which Defendants Dailey and Magat joined, with leave of the Court, on May 31, 2024. (Docs. 8, 27.) The Motion is fully briefed. (Doc. 12, 16.) After Defendants filed their Motion to Dismiss, Plaintiffs voluntarily dismissed Count V. (Doc. 11.)

The Court will grant the Motion to Dismiss and dismiss the First Amended Complaint without prejudice.

**I.     First Amended Complaint**

On August 5, 2022, Alexander Chavez ("Chavez") was booked into the Lower Buckeye Jail. (FAC, Doc. 7 at 2 ¶ 6.) Defendants Marsland and Raine completed Chavez's intake and classified him "as a sub-classification of 'Psychiatric.'" (*Id.* ¶¶ 37-38.) Despite this initial sub-classification, on August 6, 2022, Chavez was sent to the general population. (*Id.* ¶ 39.)

Shortly after he was sent to the general population, Chavez attempted suicide by overdosing on seven fentanyl pills. (*Id.* ¶ 41.) Chavez was found with a baggy containing more than 250 Fentanyl pills. (*Id.*) He was transferred to the hospital, where he told the attending physicians he had snorted seven fentanyl pills. (*Id.* ¶ 42.)

When Chavez later returned to the jail on August 6, 2022, he was placed back in the general population. (*Id.* ¶ 51.) At some point, Defendants Chester and Rainey added a note to Chavez's file stating, ""SUICIDE PREVENTION/AWARENESS FLYER PROVIDED TO INMATE." (*Id.* ¶¶ 46.) Defendant Rainey "had Chavez sign a waiver form refusing Administrative Restrictive Housing." (*Id.* ¶ 53.) A note in Chavez's medical records states that he was found to have fentanyl on his person, was sent to the hospital, and was "found once again to have drugs on him this evening." (*Id.* ¶ 51.) Defendants "Maricopa" and Penzone disciplined Chavez for Promoting Prison Contraband and

Possession of an Unauthorized Substance, which Defendant Chester "added to Chavez'[s] file." (*Id.* ¶ 55.) Chavez was not placed on suicide watch. (*Id.* ¶¶ 56-57.)

Nearly immediately after Chavez was placed in the general population, he began to experience extreme symptoms of opiate withdrawal. (*Id.* ¶ 61.) Medical records show Chavez saw medical staff because he was opiate dependent, in severe withdrawal, and was classified as having an acute illness. (*Id.* ¶ 60.) Chavez also was supposed to be put on opiate protocol with medications and was required to be assigned to a lower bunk. (*Id.*)

On August 7, 2022, Chavez was found in the dayroom in the fetal position, holding his breath. (*Id.* ¶ 63.) Staff threatened Chavez with being placed in a monitored room, and Chavez "reacted by breathing." (*Id.*) Staff placed Chavez and his "mat" inside his cell. (*Id.* ¶ 64.)

On August 8, 2022, an unknown Nurse Manager updated Chavez's file to indicate he had a history of severe opiate withdrawal. (*Id.* ¶ 65.) The records show Chavez was supposed to be placed under opiate protocol and administered medications, including hydroxyzine, loperamide, and ondansetron, which were ordered by "CHS Medical Director MD," that is, Defendant Crutchfield. (*Id.* ¶¶ 66-68.) Chavez's records show only one dose of hydroxyzine was administered. (*Id.* ¶ 69.)

At 6:25 p.m. on August 8, 2022, Defendant Moody found Chavez sitting on the ground, at the back of his cell, in between the table and the bunks inside the cell. (*Id.* ¶ 96.) Chavez had an MCSO issued sheet, which appeared to be tied into the shape of a noose, around his neck, with the other end tied to the top bunk inside of the cell. (*Id.*) Chavez was unconscious and was not breathing. (*Id.* ¶¶ 77-78.) Defendant Moody performed CPR for ten minutes before Chavez was taken to the hospital. (*Id.* ¶¶ 77, 106.) Chavez ultimately died from his injuries on August 12, 2022. (*Id.* ¶ 79.)

According to shift logs, the last time officers "made rounds and 'put eyes on' Chavez" was at 5:00 p.m. on August 8, 2022. (*Id.* ¶ 87.) The shift log contains spaces to record entries for rounds every hour, but the 6:00 p.m. space for the August 8, 2022 shift log is blank. (*Id.* ¶¶ 98-99.)

In Count I, Plaintiffs assert a § 1983 Fourteenth Amendment claim against all Defendants. (*Id.* at 19.) In Count II, Plaintiffs assert a wrongful death action under Arizona law. (*Id.* at 21.) In Count III, Plaintiffs assert a survivorship action under Arizona law. (*Id.* at 22.) In Count IV, Plaintiff assert a negligence and gross negligence claim against all Defendants.

## II. Legal Standards

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Section 1983 Claims

To prevail on a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir.

2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### 1.      Maricopa County

Section 1983 imposes liability on any "person" who violates an individual's federal rights while acting under color of state law. Congress intended municipalities and other local government units to be included among those persons to whom § 1983 applies. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 689-90 (1978). However, "[a] municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of L.A.,* 442 F.3d 1178, 1185 (9th Cir. 2006). The actions of individuals may support municipal liability only if the employees were acting pursuant to an official policy or custom of the municipality. *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005). A § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

Plaintiffs have failed to allege facts to support that Defendant Maricopa County maintained a specific policy or custom that resulted in a violation of Chavez's federal constitutional rights and have failed to explain how his injuries were caused by any municipal policy or custom. In their Response to Defendants' Motion to Dismiss, Plaintiffs argue that Maricopa County "is the proper party under *respondeat superior* for at least Plaintiffs' state law claims." (Doc. 12 at 4.) Plaintiffs do not otherwise address their *Monell* claim against Maricopa County or point to any allegations that would support this claim. Plaintiffs fail to state a § 1983 claim against Maricopa County.

. . . .

### 2. Defendants Penzone and Smith - Official Capacity Claims

Plaintiffs name Defendants Penzone and Smith in their official and individual capacities. Since Defendant Penzone is no longer the Maricopa County Sheriff, and Defendant Skinner is now acting in this capacity, Defendant Skinner is automatically substituted for Penzone in his official capacity for this claim. Fed. R. Civ. P. 25(d). A suit against a defendant in his *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell*, 436 U.S. at 694.

Plaintiffs' official-capacity claims against Defendants Skinner and Smith are duplicative of their claim against Maricopa County. *See Kentucky*, 473 U.S. at 165. The Court will therefore dismiss the official-capacity claims against these Defendants.

### 3. Defendants Penzone and Smith – Individual Capacity Claims

A suit against a defendant in his *individual* capacity seeks to impose personal liability upon the official. *Id.* at 165-66. For a person to be liable in his individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated a plaintiff's constitutional rights does not impose liability. *Id.*; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiffs have not alleged that Defendants Penzone and Smith personally

participated in a deprivation of Chavez's constitutional rights or were aware of a deprivation and failed to act. Plaintiffs allege that Defendant Smith "is tasked with oversight of the MCSO Detention centers and employees under his command and is responsible for all policies and procedures promulgated by the MCSO." (FAC ¶ 13.) Plaintiffs assert that Defendant Penzone "was tasked with oversight of the MCSO and was responsible for all policies and procedures promulgated by the MCSO." (*Id.* ¶ 14.) Plaintiffs also contend that Defendant Penzone was "charged with implementing and maintaining policies and procedures for the MCSO, its employees, and its jails – including the Lower Buckeye Jail" and with "oversight of their jail facilities." (*Id.* ¶ 82.) Plaintiffs allege that Penzone was "required to review employee actions regularly to ensure MCSO policies and procedures are being followed." (*Id.*) Plaintiffs further assert that it was incumbent upon Defendant Penzone to "fulfill the duty assured to Alexander Chavez and all inmates under the United States Constitution." (*Id.* ¶ 120.)

Defendants argue that Plaintiffs fail to state a claim against Defendants Penzone and Smith because Plaintiffs do not allege that either Penzone or Smith had any interaction with Chavez, and they are not responsible for the actions of their employees. (Doc. 8 at 5.) Defendants state that they recently informed Plaintiffs' counsel that Captain Calvin King, not Defendant Smith, was the MCSO supervisor overseeing shifts, walks, headcounts, and other related tasks on August 8, 2022. (*Id.* at 5 n.2.)

In their Response, Plaintiffs argue that they sufficiently stated a policy claim and a supervisory liability claim against Defendant Penzone and Captain King. (Doc. 12 at 5-6.) Plaintiffs contend the FAC "alleges enough of a causal link" between Captain King's "failure to ensure his officers and employees were adhering to their prescribed duties and the fact that Chavez would have been discovered prior to his suicide in enough time to save Chavez['s] life." (*Id.* at 7.)

Plaintiffs have not named Captain King as a Defendant and therefore cannot state a claim against him. With respect to Defendants Penzone and Smith, "[a] supervisor may be liable in his individual capacity if he was "personally involved in the constitutional

deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) (quoting *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)); *see also Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) ("A plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinate.").

Supervisory liability is direct liability, which requires the plaintiff to allege that a supervisor breached a duty to the plaintiff and was the proximate cause of the injury. *Starr*, 652 F.3d at 1207. A causal connection can be "an affirmative link" between a constitutional deprivation and "the adoption of any plan or policy by [a supervisor,] express or otherwise showing [his or her] authorization or approval of such misconduct." *Rizzo*, 423 U.S. at 371. In other words, a supervisor can be liable for creating policies and procedures that violated a plaintiff's constitutional rights. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

A plaintiff can also show the requisite causal connection by showing "'1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) [their] conduct that showed a reckless or callous indifference to the rights of others.'" *Lemire*, 726 F.3d at 1085 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)). In addition, the causal connection can be established by showing a supervisor "'knowingly refus[ed] to terminate a series of acts by others, which the supervisor[s] knew or should have known would cause others to inflict a constitutional injury.'" *Rico v. Duarte*, 980 F.3d 1292, 1303 (9th Cir. 2020) (quoting *Lemire*, 726 F.3d at 1085)).

Plaintiffs have not alleged that either Defendant Penzone or Defendant Smith was in any way personally involved in any of the events described in the First Amended Complaint. Plaintiffs have not identified a specific policy that either Defendant Penzone

or Defendant Smith created that resulted in Chavez's death. Plaintiffs also do not allege facts to support that Defendants Penzone and Smith failed to adequately train or supervise their subordinates with respect to drug addicted or suicidal detainees. Plaintiffs likewise fail to allege facts to support that Defendants Penzone and Smith were *personally* aware that Chavez had been booked into the Lower Buckeye Jail, that he was an opiate addict, that he was experiencing opiate withdrawal, that he attempted suicide while at the Jail, that officers did not complete a security walk at 6:00 p.m. on August 8, 2022, or that Chavez hanged himself in his cell. Plaintiffs do not plausibly allege facts to support any causal connection between any conduct by Defendants Penzone and Smith and Chavez's death. Plaintiffs fail to state a supervisory liability claim against Defendants Penzone and Smith.

For the foregoing reasons, Plaintiffs fail to state a claim against Defendants Penzone and Smith. The Court will grant Defendants' Motion to Dismiss as to Defendants Penzone and Smith.

### 4. Remaining Defendants: Failure to Protect

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

1 *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

2     Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### a. Group Pleading

Plaintiffs allege that Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa were working at the Lower Buckeye Jail on the day Chavez hanged himself in his cell. (FAC ¶ 88.) Plaintiffs claim these Defendants could have classified Chavez as "needing to be under suicide watch" and could have done a "proper headcount at the proper intervals" but did not. (*Id.* ¶¶ 88-89.) Plaintiffs also allege that Defendants Park, Magat, Hawkins, Espinosa, and Moody "actually conducted patrols and headcounts" on the day of Chavez's death. (*Id.* ¶ 95.) Plaintiffs assert that if Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa had properly performed their duties, Chavez would have been observed at 6:00 p.m. and would have been stopped from attempting suicide. (*Id.* ¶ 102.)

A complaint "does not require 'detailed factual allegations,'" but it must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff must "allege overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice" of the allegations against them. *Ortez v. Washington County*, 88 F.3d 804, 810 (9th Cir.

1996); *see also Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2014) ("A plaintiff 'must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.'"); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (N.D. Cal. 2014) (complaint failed to satisfy Rule 8 where it lacked "facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend."). Courts consistently conclude that a complaint that "lump[s] together ... multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

Plaintiffs allege only that Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa were working at the Lower Buckeye Jail on August 8, 2022, that they skipped the 6:00 p.m. security walk, and that if any one of them had done the security walk, Chavez would not have been able to commit suicide. Plaintiffs allege no facts to support that any of these Defendants was aware of and disregarded a substantial risk of serious harm to Chavez by skipping the 6:00 p.m. security walk. Chavez was in the general population, and Plaintiffs do not allege any facts to support that Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa were personally aware of Chavez's opiate dependency or prior suicide attempts. Plaintiffs therefore fail to state a § 1983 claim against Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa.

### b. Defendants Marsland, Rainey, and Chester

Plaintiffs allege that Defendants Marsland and Rainey completed Chavez's intake form and classified him as a "sub-classification of 'Psychiatric.'" (FAC ¶¶ 37-38.) Plaintiffs claim that despite this sub-classification, Chavez was sent to the general population. (*Id.* ¶ 39.) Plaintiffs allege no facts to support that Defendants Marsland and Rainey were in any way involved in the decision to place Chavez in the general population.

Plaintiffs allege that Defendant Rainey provided Chavez with a Suicide

1  Prevention/Awareness pamphlet in the early morning hours of August 6, 2022 and "had
2  Chavez sign a waiver form refusing Administrative Restrictive Housing." (*Id.* ¶¶ 46-47,
3  53, 130.) Plaintiffs claim Defendants Rainey and Chester added a note to Chavez's file
4  stating, "SUICIDE PREVENTION/AWARENESS FLYER PROVIDED TO INMATE."
5  (*Id.* ¶¶ 53, 55.) Plaintiffs do not allege when the note was entered into Chavez's file, and
6  as Defendants observe, it is not reasonable to infer from the note that either Defendant
7  Rainey or Defendant Chester was aware of Plaintiff's fentanyl overdose when the note was
8  entered into Plaintiff's file. (Doc. 8 at 6.) The FAC does not state specifically when
9  Plaintiff ingested the seven fentanyl pills.

Plaintiffs also assert that Defendant Chester added a disciplinary report for Promoting Prison Contraband and Possession of an Unauthorized Substance to Chavez's file. (*Id.* ¶ 55.) Plaintiffs do not allege facts to support that Chester was aware of Chavez's opiate dependence or suicide attempt, nor do they plausibly allege that the disciplinary report resulted in Chavez's suicide attempt.

Plaintiffs' allegations, without other facts, do not support a conclusion that Defendants Marsland, Rainey, and Chester were aware of and disregarded a substantial risk of serious harm to Chavez. Plaintiffs fail to state a Fourteenth Amendment claim against Defendants Marsland, Rainey, and Chester.

### c.   **Defendants Crutchfield and Struble**

In their Motion, Defendants argue that Plaintiffs fail to allege that Defendant Struble was responsible for Chavez's missed medications, Defendants Crutchfield and Struble are not liable for CHS employees' actions, and Plaintiffs failed to allege facts to support that Crutchfield and Struble failed to adequately train or supervise their subordinates. (Doc. 8 at 3-4.)

In their Response, Plaintiffs assert that Defendants Crutchfield and Struble are directly responsible for their employees, and they "specifically directed" Chavez's medical care. (Doc. 12 at 2.) Plaintiffs contend no employees followed up to provide the medications ordered according to the opiate protocol, and because of Defendants

1  Crutchfield and Struble's "deliberate failure to ensure that medications were given to
2  Chavez," Chavez "was faced with dealing with withdrawal symptoms that caused extreme
3  pain and distress, alone and not on suicide watch." (*Id.* at 3.) Plaintiffs argue they have
4  pled enough to survive Defendants' Motion to Dismiss. (*Id.*)

5  In the FAC, Plaintiffs allege that Defendants Crutchfield and Struble "are charged
6  with implementing and maintaining policies and procedures for the CHS and its facilities
7  – including the Lower Buckeye Jail medical facilities" and are "charged with oversight of
8  CHS'[s] facilities." (FAC ¶ 83.) Plaintiffs contend Defendants Crutchfield and Struble's
9  "lack of proper oversight at the Jail led directly to lax behavior by Maricopa, MCSO, and
10 CHS staff." (*Id.* ¶ 84.) Specifically, Plaintiffs claim that because of Defendants
11 Crutchfield and Struble's lack of proper oversight, "headcounts were clearly not regularly
12 performed at the required intervals," and it is apparent that no proper oversight has occurred
13 with inmate evaluations - both security based and medical based." (*Id.* ¶¶ 85-86.)

14 Plaintiffs allege no facts to support that Defendants Crutchfield and Struble—as
15 CHS Medical Director and CHS Director, respectively—were in any way responsible for
16 inmate headcounts or security-evaluations. Plaintiffs also do not allege facts to support
17 that because of any lack of oversight by Defendants Crutchfield and Struble, Chavez was
18 not appropriately medically evaluated.

19 Plaintiffs allege that Chavez's medical records show he was supposed to be placed
20 under opiate protocol and administered medications including hydroxyzine, loperamide,
21 and ondansetron, which were ordered by Defendant Crutchfield, but only one dose of
22 hydroxyzine was administered. Plaintiffs do not allege facts to support that either
23 Defendant Crutchfield or Defendant Struble was personally responsible for administering
24 Chavez's medication or for ensuring the medications were administered. Plaintiffs also do
25 not allege when or how frequently Plaintiff was supposed to have received any of the
26 medications. Plaintiffs' allegations are insufficient to state a § 1983 claim against
27 Defendants Crutchfield and Struble.

28 For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to

Plaintiffs' § 1983 claims.

### B. State Law Claims

As noted, Plaintiffs assert negligence and gross negligence claims against all Defendants and seek recovery of damages pursuant to Arizona's wrongful death and survivorship statutes. A wrongful death claim is not itself a theory of liability; it is merely the mechanism by which the survivors or personal representative the decedent may advance the claims that the decedent could have advanced had he lived. *See* A.R.S. §§ 12-611-612(A); *Quinonez v. Anderson*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984).

To state an ordinary negligence claim, Plaintiffs must allege: (1) a legal duty of Defendants to conform to a standard of conduct recognized by Arizona law for the protection of others against unreasonable risk; (2) the failure of Defendants to conform to the required standard; (3) a reasonably close causal connection between Defendants' conduct and the resulting injury to Plaintiffs (proximate cause); and (4) actual loss by or damage to Plaintiffs. *Ontiveros v. Borak*, 667 P.2d 200 (Ariz. 1983) (quoting W. Prosser, Handbook of the Law of Torts § 30 at 143 (4th ed. 1971)); *Boyle v. City of Phoenix*, 563 P.2d 905 (Ariz. 1977).

To state a claim for gross negligence, Plaintiffs must allege that Defendants acted or failed to act when they knew or had reason to know facts that would lead a reasonable person to realize that their conduct not only created an unreasonable risk of bodily harm to others but also involved a high probability that substantial harm would result. *Nichols v. Baker*, 416 P.2d 584 (Ariz. 1966); *Walls v. Arizona Dept. of Public Safety*, 170 Ariz. 591, 595, 826 P.2d 1217 (Ariz. Ct. App. 1991). Gross negligence is different from ordinary negligence "in quality and not degree." *See Kemp v. Pinal County*, 474 P.2d 840 (Ariz. Ct. App. 1970) ("A person can be very negligent and still not be guilty of gross negligence.")

#### 1. Individual Defendants

Defendants argue that Plaintiffs' negligence and gross negligence claims should be dismissed because Plaintiffs fail to allege how each named Defendant was negligent. The Court agrees. Plaintiffs fail to specifically allege facts to support that *each* named

Defendant owed a duty to Chavez, breached that duty, and that the breach of that duty was the proximate cause of Chavez's death. Plaintiffs fail to state a negligence or gross negligence claim.

### 2. Vicarious Liability

Because Plaintiffs fail to state negligence or gross negligence claims against the individual Defendants, they necessarily fail to state a vicarious liability claim against Maricopa County.

## IV. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure "advises the [C]ourt that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* The Court should grant leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Defendants do not argue that Plaintiffs should not be given leave to amend. The Court finds that allowing Plaintiffs to amend would not prejudice Defendants, would not unduly delay this case, and would not be futile. Accordingly, within 30 days of the filing date of this Order, Plaintiffs may file a second amended complaint in accordance with this Order.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 8).

(2) Defendants' Motion to Dismiss (Doc. 8) is **granted**.

(3) The First Amended Complaint (Doc. 7) is **dismissed without prejudice**.

. . . .

. . . .

. . . .

(4)  Within **30 days** of the filing date of this Order, Plaintiffs may file a second amended complaint in compliance with this Order.

Dated this 1st day of August, 2024.

_____
Susan R. Bolton
United States District Judge