Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, an individual, for herself and on behalf of and as Personal Representative of The Estate of Alexander Chavez; Alex George Chavez, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> County of Maricopa, a governmental entity; Brandon Smith and Jane Doe Smith; Paul Penzone and Jane Doe Penzone; David Crutchfield, an individual; Lisa Struble, an individual; Kyle Moody and Jane Doe Moody; Arturo Dimas and Jane Doe Dimas; Tyler Park and Jane Doe Park; Gerardo Magat and Jane Doe Magat; Daniel Hawkins Jr. and Jane Doe Hawkins; Javier Montano and Jane Doe Montano; James Dailey and Jane Doe Dailey; Trevor Martin and Jane Doe Martin; Greggory Hertig and Jane Doe Hertig; John Chester and Jane Doe Chester; Jorge. Espinos. Jr. and Jane Doe Espinosa; Morgan Rainey and John Doe Rainey; Stefanie Marsland and John Doe Marsland; and, John and Jane Does 1-40, <br><br> Defendants. | No: CV-23-02482-PHX-SRB (DMF) <br><br> **PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> (JURY TRIAL DEMANDED) <br><br> (Assigned to the Honorable Susan R. Bolton and referred to the Honorable Deborah M. Fine) |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiffs Debra Morales Ruiz ("Debra"), the Estate of Alexander Robert Chavez ("Alexander"), and Alex George Chavez ("George"), by and through their attorneys, Mills + Woods Law PLLC, for their Complaint against Defendants Maricopa County ("Maricopa"), Brandon Smith ("Smith"), Paul Penzone ("Penzone"), David Crutchfield ("David"), Lisa Struble ("Lisa"), Kyle Moody ("Moody"), Arturo Dimas ("Dimas"), Tyler Park ("Park"), Gerardo Magat ("Magat"), Daniel Hawkins Jr. ("Hawkins"), Javier Montano ("Montano"), James Dailey ("Dailey"), Trevor Martin ("Martin"), Gregory Hertig ("Hertig"), John Chester ("Chester"), Jorge Espinosa Jr. ("Espinosa"), Morgan Rainey ("Rainey"), and Stefanie Marsland ("Marsland") (collectively "Defendants") allege and state as follows:

## INTRODUCTION

1.      Alexander Chavez was a young and vibrant 32-year-old.

2.      He made mistakes, was arrested, and was booked into the Lower Buckeye Jail.

3.      He was a loving son, brother, and uncle and doted on his family, providing emotional and financial support to them.

4.      He had his whole life ahead of him and was trying his best to get back on his feet.

5.      Mr. Chavez's booking number was T796431 and his date of birth was 08/31/1989.

6.      Mr. Chavez arrived at the Lower Buckeye Jail (the "Jail") on August 5, 2022 and was transported to the hospital on or about August 8, 2022 due to injuries he suffered under Defendants' lack of care in MCSO's facilities.

7.      He died from these injuries on August 12, 2022.

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## THE PARTIES

8.      Plaintiff Debra is an adult individual who resides in Maricopa County, Arizona.

9.      Debra is next of kin, mother to Alexander Chavez ("Chavez"), and the Personal Representative for Plaintiff the Estate of Alexander Robert Chavez ("Estate").

10.     Plaintiff George is an adult individual who resides in Maricopa County, Arizona and is the father of Chavez.

11.     Defendant Maricopa is a governmental entity that acts by and through its officials, employees and agents, including without limitation CHS, and each of the Defendants Crutchfield, Struble,  Chester, Espinosa, Rainey, and Marsland.

12.     Defendant CHS is a governmental entity that acts by and through its officials, employees and agents, including without limitation each of the Defendants Crutchfield and Struble and the unknown Defendants who only appear on the records with code numbers and letters.

13.     Defendant Captain Brandon Smith was at all times relevant to this complaint, a Captain of the MCSO's Detention division and is sued in his official and individual capacity. He is tasked with oversight of the MCSO Detention centers and employees under his command and is responsible for all policies and procedures promulgated by the MCSO. He is an agent of Maricopa and the MCSO, operating in his official and individual capacity in Maricopa County, Arizona.

14.     Defendant Sheriff Paul Penzone is sued in his official and individual capacity. He was tasked with oversight of the MCSO and was responsible for all policies and procedures promulgated by the MCSO. Penzone is responsible for MCSO officials, employees and agents, including without limitation each of the Defendants Smith,  Moody,

Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Chester, Rainey, Marsland, and Espinosa.

15.      He is an agent of Maricopa and the MCSO, operating in his official and individual capacity in Maricopa County, Arizona.

16.      Defendant Officer Kyle Moody is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

17.      Defendant Officer Arturo Dimas is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

18.      Defendant Officer Tyler Park is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona

19.      Defendant Officer Gerardo Magat is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

20.      Defendant Officer Daniel Hawkins, Jr. is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

21.      Defendant Officer James Dailey is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

22.      Defendant Officer Trevor Martin is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

4

23. Defendant Officer Gregory Hertig is employed by, and serving as an agent of, Maricopa, and the MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

24. Defendant John Chester is upon information and belief employed by, and serving as an agent of, Maricopa, and MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

25. Defendant Morgan Rainey is upon information and belief employed by, and serving as an agent of, Maricopa, and MCSO. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

26. Defendant Stefanie Marsland is upon information and belief employed by, and serving as an agent of, Maricopa, and MCSO. At all relevant times she was operating in his official and individual capacity in Maricopa County, Arizona.

27. Defendant David Crutchfield was at all relevant times in this complaint upon information and belief the Medical Director of CHS, employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

28. Defendant Lisa Struble was at all relevant times in this complaint upon information and belief the Director of CHS, employed by, and serving as an agent of, Maricopa, and CHS. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

29. Defendants Smith, Penzone, Moody, Dimas, Park, Magat, Hawkins, Dailey, Martin, Tegeler, Chester, Rainey, Marsland, and Hertig were acting for the benefit of their respective marital communities, if any, and therefore their respective marital communities are liable for their actions as set forth herein. Accordingly, Defendants Jane Doe Smith, Jane Doe Penzone, Jane Doe Moody, Jane Doe Dimas, Jane Doe Park, Jane Doe Magat,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Jane Doe Hawkins, Jane Doe Dailey, Jane Doe Martin, Jane Doe Tegeler, Jane Doe Chester, John Doe Rainey, John Doe Marsland, and Jane Doe Hertig are named as Defendants herein.

30.     Defendant Maricopa is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of, CHS, and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiffs as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with CHS, or entities privately contracted with  CHS.

31.     For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

## JURISDICTION AND VENUE

32.     Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, Eighth, and Fourteenth Amendments and Arizona common and statutory laws.

33.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

34.     To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

35.     Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

36.     Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

**FACTUAL ALLEGATIONS**

37.     On August 5, 2022, in Chavez' intake documents, the Jail classified him properly as a sub-classification of "Psychiatric."

38.     Stefanie Marsland and Morgan Rainey were responsible for the intake and are listed on the documents as having completed the same.

39.     Despite this initial sub-classification, Chavez was sent to General Population on August 6, 2022.

40.     Chavez attempted suicide shortly after being booked.

**FIRST SUICIDE ATTEMPT**

41.     On August 5, 2022, upon information and belief, Chavez attempted to take his life by overdosing on seven pills of fentanyl. He was found with a baggy of over 250 Fentanyl pills.

42.     On August 5, 2022, at 8:42:33 P.M., "NP; 1489H" entered into Chavez' record: "Pt extremely drowsy, O2 sats decreasing. Narcan given. Many Fentanyl pills found on patient."

43.     Chavez was transferred to the hospital and told the attending physicians that he had snorted seven (7) fentanyl pills.

44.     Valleywise Health records state: "Patient presents to the ED from jail for an overdose. The patient was arrested today around 1038, booked at 1452. The patient reports

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

7

that sometime this evening he snorted 7 fentanyl pills. The patient was not searched upon arrival to the ITR. A man down was called in ITR around 2000. Officers were able to assist him to the ground. While at the jail the patient was found to have "multiple blue pills on him."

45.     Records further state: "He admits that he typically smokes 8-10 fentanyl pills daily. While at the jail he took approximately 7 in one sitting."According to records completed by "PA-C Med; 1632H" after Chavez had been sent to Valleywise and returned, on August 6, 2022 at 10:55:24 PM, "Pt was found to have fentanyl on his person today and then sent to VW He was found once again to have drugs on him this evening."

46.     "VW" stands for Valleywise.

47.     Despite being searched, sent to the emergency room, sent back to intake, all while in custody of MCSO, somehow, Chavez was able to get his hands on more fentanyl.

48.     The records provide a final diagnosis of "Opioid overdose (HCC) [T40.2X1A]".

49.     MCSO, CHS, and their employees, agents, medical professionals, and officers are there to prevent unauthorized drugs, weapons, and other restricted materials from being introduced into the Jail. Chavez was only there for one day before he was able to get his hands on enough fentanyl to attempt suicide.

50.     Chavez still somehow got his hands on the pills and attempted suicide.

51.     Chavez was returned to MCSO facilities in the early morning on August 6, 2022.

52.     Records show that Chavez was moved to the "ITRF – General Population at 03:34 AM on August 6, 2022 with movement notes stating "discharged from the hos…".

53.     A note was added to Chavez' file on August 6, 2022, at 06:25 AM  stating "SUICIDE PREVENTION/AWARENESS FLYER PROVIDED TO INMATE."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

54.     This was added to the file by both Morgan Rainey and John Chester as part of Chavez' re-entry following his hospital visit at Valleywise for Opioid overdose – a fact known to both Rainey and Chester

55.     This was part of his "T796431" Inmate Booking Record maintained by MCSO.

56.     All MCSO deputies, officers, employees, agents, or otherwise are charged with having knowledge of an inmate's Booking Records under their care.

57.     They are required to read their inmates records and any updates to their inmates' records.

58.     At 13:00 PM on August 6, 2022, Stefanie Marsland also performed assessments of Chavez – again with the knowledge that he had overdosed on purpose the day before.

59.     At that very moment Chavez should have and was required to have been kept in the psychiatric unit and placed on suicide watch according to Maricopa, MCSO and CHS policies and procedures.

60.     Maricopa, Penzone, their employees, agents, and officers failed in the most basic of tasks.

61.     To be clear, had Chavez been put on suicide watch, he would still be alive today.

62.     By failing to meet even the least stringent requirements, and by placing Chavez back into general population – rather than on suicide watch – Maricopa,  Penzone, their employees, agents, and officers implicitly signed Chavez' proverbial death warrant.

63.     It is unknown at this point who many of the medical providers are.[1]

---

[1] Additionally, the CHS Medical Records refer to practitioners via code and names were never provided prior to institution of this litigation. These include: "RN; 3002H", "NP; 1489H", "NP; 2712H", "RN; CS995", "RN; 3038H", "RN, Nurse Mgr; 2231H", "RN; 2942H", "RN; 1518H", "CHT: 2806H", "RN; 2967H", and "Um Coord; CH050". Because

64.     To attempt to cover their actions, Rainey had Chavez sign a waiver form refusing Administrative Restrictive Housing.

65.     They put an opiate addict who they knew had just attempted to end his life in general population.

66.     Adding further insult to injury, Maricopa, Penzone, their employees, agents, and officers disciplined Chavez for Promoting Prison Contraband and Possession of an Unauthorized Substance – added to Chavez' file by John Chester on August 7, 2022 at 02:00 AM.

67.     Again, at this time, it was known to Chester that Chavez had been taken offsite due to his purposeful opioid overdose.

68.     There were ample opportunities and reasons to assign Chavez to the proper classifications and put him on suicide watch.

69.     By charging Chavez with a serious crime on top of his litany of medical issues and attempted suicide, contributed to Chavez' rapidly deteriorating mental state.

70.     In fact, coupled with his initial classification of "Psychiatric" and with knowledge of his ingestion of seven (7) fentanyl pills, even if an inmate wants to refuse restricted housing, it is incumbent for MCSO and CHS employees to override the inmate's wishes.

71.     None of the Defendants did so.

72.     It is clear that Maricopa, Penzone,  their employees, agents, and officers only concern was to punish Chavez – not to properly classify him and put him on suicide watch to prevent his death.

73.     Maricopa, Penzone, their employees, agents, health professionals, and officers knew that Chavez was going to be facing severe opiate withdrawals.

_____

this information is in the sole custody and control of Defendants, Plaintiff reserves the right to add parties once the information is discovered.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

74.     In fact, medical records show that Chavez was seen by staff because he was opiate dependent, was in severe withdrawal, was classified as "Red Dot" due to an acute illness, was supposed to be put on opiate protocol with medications and was required to be put in a lower bunk.

75.     Chavez – nearly immediately after being placed in general population began experiencing extreme symptoms of opiate withdrawal.

76.     On August 7, 2022, he was found in the fetal position in the day room holding his breath.

77.     When staff threatened him with being placed in a monitored room, he reacted by breathing.

78.     They placed him and his "mat" back into his jail cell and left him there.

79.     CHS records entered at 7:32:41 PM on August 7, 2022 state "Patient lying in fetal position on his mat in the day room brought out by corrections, he is holding his breath when patient was told mental health would be called and he could be place in a monitored room patient stopped holding breath and began breathing normally. but still not providing arm for vitals."

80.     The same records state that Chavez was assessed with "ineffective coping" and that the "Plan" was to "report to oncoming shift. will reassess for detox. on next rounds for detox".

81.     On August 8, 2022 at 5:58:20 AM, an unknown RN Nurse Manager updated Chavez' CHS file to indicate he had a history of severe opiate withdrawal and history of hospitalization (R/T opiates)

82.     The records show that he was supposed to be placed under opiate protocol and administered multiple prescriptions including Hydroxyzine, Loperamide, and Ondansetron.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

83. These were ordered by "CHS Medical Director MD",

84. Upon information and belief, the CHS Medical Director MD was Lisa Struble.

85. Despite this, records show that only one dose of Hydroxyzine was administered.

86. Defendants left him alone in his cell without administering further medications to help Chavez survive his withdrawal symptoms.

87. Chavez was in extreme pain and distress having to deal with his withdrawal symptoms without assistance.

### SECOND SUICIDE ATTEMPT AND SUBSEQUENT DEATH

88. Had Defendants actually followed the opiate protocol and performed any of their basic duties and procedures, Chavez would not have dealt with the awful side effects of opiate withdrawal.

89. According to a study from the National Library of Medicine on Opiate Withdrawal: Opioid withdrawal syndrome is a life-threatening condition resulting from opioid dependence.

90. Had Defendants actually cared about the life and safety of Chavez, his withdrawal symptoms would have been manageable.

91. Had he been on suicide watch in the psychiatric unit, he would not have had the opportunity to attempt suicide again and certainly would have been found much sooner following his suicide attempt.

92. This critical time – at least 25 minutes unattended – caused Chavez to suffer severe brain injuries that ultimately led to his death.

93. According to records:

Alexander Chavez is a 31-year-old male seen by stroke neurology on 8/8/2022 for a right vertebral artery thrombus, V2 segment. He is seen

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

12

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

following transfer from jail where he was found following hanging by the neck, having been unattended for an estimated 25 minutes.

When he was initially found by the officer in his charge no pulses were palpable. CPR was performed for 10 minutes.

Upon arrival of EMS he was intubated. He was subsequently transferred to BUMCP. Unclear when ROSC was achieved.

He received 5 mg midazolam and 250 mg phenobarbital in the trauma bay due to movements that were interpreted as potential seizure activity.

CT head without contrast was, per my independent review, uninterpretable due to motion artifact, although the radiology report does indicate that there is concern for anoxic brain injury.

 CT angiogram of the head and neck, per my review, does show a thrombus in the right vertebral artery, V2 segment, at the level of C3–4 vertebrae.
#Intravascular thrombus, V2 segment of right vertebral artery at the level of C3-4 vertebrae
#Concern for anoxic brain injury
#Found following presumptive suicide attempt, hanging in jail, pulseless when found
#UDS positive for methamphetamine

94. Furthermore, according to records, Chavez presented as a trauma red for evaluation after being found hanging. Records note that:

Patient was found hanging in his cell at a local jail. He was noted to still be touching the ground and presumed to have been unattended for approximately 25 minutes at the time he was found. When he was cut down, he was noted to be unresponsive without any spontaneously respiratory effort. He did have a pulse when found, which he maintained through transport. An oral airway was placed and he was brought to the trauma bay with active bagging taking place. He is unable to provide any history. Per EMS, he has no known medical history.

95. Chavez eventually died from his injuries on August 12, 2022.

## FAILURE TO ASSESS, CLASSIFY, AND MONITOR

96. Defendants failed to perform proper assessments as to Chavez' mental state, conditions, and illnesses.

97.      Chavez was pushed through the assessment process quickly so that Defendants could put him in a cell and ignore him.

98.      Penzone and Smith are charged with implementing and maintaining policies and procedures for the MCSO, its employees, and its jails – including the Lower Buckeye Jail. They are also charged with oversight of their jail facilities. As such, they are required to review employee actions regularly to ensure MCSO policies and procedures are being followed.

99.      Crutchfield and Struble are charged with implementing and maintaining policies and procedures for the CHS and its facilities – including the Lower Buckeye Jail medical facilities. They are also charged with oversight of CHS' facilities. As such, he is required to review employee actions regularly to ensure CHS policies and procedures are being followed.

100.      Their lack of proper oversight at the Jail led directly to lax behavior by Maricopa, MCSO, and CHS staff.

101.      To wit, headcounts were clearly not regularly performed at the required intervals.

102.      Furthermore, as discussed herein, CHS and its employees did not properly assess Chavez and did not administer any medical care to address his severe opiate withdrawals.

103.      Both Struble and Crutchfield were responsible for ensuring CHS staff followed through with administration of needed medical care.

104.      It did not happen due to a lack of management and oversight by both Struble and Crutchfield.

105.      Chavez' medications that were ordered were supposed to be administered twice a day.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

14

106.     This did not happen.

107.     Furthermore, it is apparent that no proper oversight has occurred with inmate evaluations - both security based and medical based.

108.     According to shift logs obtained via public records request, the last time officers or guards made rounds and "put eyes on" Chavez prior to his suicide attempt was at 1700 hours August 8, 2022.

109.     Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa upon information and belief were working at the Jail on the day of Chavez' death.

110.     Each of Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa participate in daily briefings before they begin their shifts.

111.     As part of those briefings, inmates are discussed as well as any out of the ordinary events – such as Chavez' overdose attempt – occurred with any of the inmates prior to their shift.

112.     As discussed herein, deputies and/or officers are charged with the knowledge of their inmates' files and are required to review their inmates' booking records and updates to the same.

113.     This includes the Booking file for Chavez.

114.     They each knew that Chavez was initially classified as psychiatric, had attempted to overdose, was taken to the hospital, returned, and was transferred to his general population cell.

115.     Each of them knew that Chavez had fallen out of his bunk and was unresponsive on August 7, 2022 and that a "mandown" call was made for that event.

116.     They each knew that medical was called to speak with Chavez.

117.     They each knew that Chavez was suffering from severe opiate withdrawals.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

118.     Since the records show that no medication had been given to Chavez for his opiate withdrawals and that COWS protocols were in place, they each knew that Chavez was at risk for ending his excruciating symptoms by potentially taking his own life through suicide.

119.     They each know that Chavez was "holding his breath" in an attempt to call out for help.

120.     Accordingly, each of them were acutely aware that Chavez was having difficulty with his symptoms and was a high risk of suicide.

121.     Despite this, each of them failed to conduct watches at the appropriate intervals – leaving Chavez to deal with extreme opiate withdrawals by himself and with access to materials he could use to commit suicide.

122.     They knew that ignorance would lead to a substantial risk of serious harm to Chavez.

123.     Yet, they did just that – they ignored Chavez for a substantial period of time, fully appreciating that Chavez had had multiple "mandown" events, one for each day he had been in their custody, and that by doing so would expose Chavez to a substantial risk of serious harm.

124.     Each had a responsibility to ensure the safety and well-being of Chavez.

125.     Each of them could have – at any time – classified Chavez as needing to be under suicide watch.

126.     They did not.

127.     Each of them could have – at any time – performed the proper headcounts at the proper intervals.

128.     They did not.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

129.     Chavez was assigned bunk Cell-A 03 on the day of his death. The location of his bunk was Floor 3 HOUSE 34 POD A (LBJF:34:A:10:01) at the Jail in Phoenix, Arizona.

130.     This bunk is also known – based on records received from MCSO – as "T34A.03"

131.     The Correctional Officers (hereinafter "CO" or "COs") who actually conducted patrols and headcounts on the day of Chavez' death and up to his death were Officers Park, Magat, Hawkins, Espinosa, and Moody.

132.     According to Officer Moody's (B4996) Incident Report:

> On 08/08/2022 at the Lower Buckeye Jail located at 250 W Lower Buckeye Rd, Phoenix, AZ 85009, at approximately 1825 hours, I conducted a security walk in T34 A pod. During the security walk, as I approached cell T34A.03, I observed an inmate, later identified as Inmate Chavez, Alexander T796431 sitting on the ground, at the back of the cell, in between the table and the bunks inside the cell. Inmate Chavez had an MCSO issued sheet, in what appeared to be tied into the shape of a noose, around his neck, with the other end tied to the top bunk inside of the cell. Immediately upon observing this, I made a radio call requesting for additional officers to respond and bring a 911 tool.

133.     From 1700 – 1825 hours, Chavez was left on his own.

134.     There are entries on the shift logs requiring rounds every hour on the hour.

135.     The 1800 entry is blank.

136.     Nobody performed their security checks or rounds at 1800 hours.

137.     As discussed above, Chavez' estimated time of his suicide attempt was about 25 minutes prior to being found.

138.     Again, if any of Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa had properly performed their duties, Chavez would have been observed at 1800 hours and would have been stopped from attempting suicide.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

17

139.     The MCSO shift logs have entries for a patrol and review of headcount for every hour of the day.

140.     Officers skipped their patrol and headcount for the 1800 hour – Instead waiting nearly half an hour past 1800 to conduct the 1800 headcount despite knowing that Chavez was reeling with opiate symptoms and that he had not only been initially classified as psychiatric, but also that he had been given a suicide prevention flyer.

141.     This 25-minute gap was critical and a direct cause of Chavez' subsequent death.

142.     According to I ELIZARRARAS' (S2178) Incident Report, IR22020649,

- The jail surveillance video was reviewed briefly, and this is a general summary of the events that occurred. For full details of the event, reference the jail surveillance video submitted. The times frames provided are the ones observed on the video. The following is what I observed:
- 1824 hours: Detention Officer Moody (B4996) enters T34 A Pod and begins to make a radio call while in front of cell 3 (T34A.03).
- 1825 hours: Detention Officer Moody enters the cell. Medical staff also enters the cell. Inmate Chavez is removed from the cell.
- 1826 hours: Detention Officer Moody begins providing inmate Chavez chest compressions. Medical staff arrives with a gurney. AED was on site.
- 1833 hours: Inmate Chavez is placed on the gurney and moved out of T34 A Pod housing unit. Detention Officer Moody continues with chest compressions.
- 1832 hours: Phoenix Fire Engine & Engine #21 arrive at LBJ.
- 1834 hours: Phoenix Fire Engine arrive at LBJ main clinic.
- 1836 hours: Inmate Chavez arrives at the LBJ main clinic.
- 1841 hours: Inmate Chavez is moved out of LBJ main clinic by Phoenix Fire.
- 1843 hours: Phoenix Fire Ambulance #21 departs with inmate Chavez

143.     At approximately 1837 hours, after arriving to the LBJ main clinic, Phoenix Fire personnel took over for CPR and rescue attempts by tapping Officer Moody's arm and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

telling him, "You can stop." Phoenix Fire personnel also stated they could feel a carotid pulse at that time.

144.　　It took another seven minutes to get Chavez on the road to the Emergency Room.

145.　　It took another 12 minutes to arrive to Banner Good Samaritan Hospital.

146.　　It took nearly a full hour following Chavez' suicide attempts to provide trauma care for his injuries.

147.　　There lies a concept in medical care that a patient must be seen and provided definitive care within one hour of the injuries. This concept is called the "Golden Hour." While some patients can recover fully with proper immediate care, a lack of oxygen to the brain is deadly to a human being within minutes.

148.　　According to the National Library of Medicine, "Attempted suicidal hanging: an uncomplicated recovery" written by Sarathchandra Kodikara, Dec 2012 found and retrieved January 25, 2023 at https://pubmed.ncbi.nlm.nih.gov/22333907/:

> Although hanging is common across the world, survival after attempted hanging is very rare with death usually ***occurring within minutes*** or over the first 24 hours. If the person survives the initial event, later he/she may die because of the severity of the initial hypoxic and ischemic brain damage. Survival from hanging is often associated with various complications including a large variety of neurological consequences. This case report highlights a rare case of survival in attempted hanging of a 35-year-old man, with previous suicide ideation. Within 15 minutes of the incident, he was brought to a tertiary care hospital. On admission, he was unconscious and the Glasgow Coma Scale was 4 with tachycardia, weak pulse, bradypnea, and shallow breathing. With vigorous and prompt resuscitation methods, he gradually recovered without any residual neurological outcome. Prognostically good results could be achieved, if such victims are vigorously and promptly resuscitated, irrespective of their initial presentation. (emphasis added).

149.　　In that report, a man attempted to hang himself, but was found and brought to a hospital within 15 minutes of the injury. That man survived.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

150.     In Chavez' case, he wasn't found for at least 25 minutes – probably longer – and was effectively brain dead. There is no coming back from brain death.

151.     Not only was Chavez not treated properly until at a bare minimum of 56 minutes, but he had also been left without oxygen to the brain for over 25 minutes prior to discovery of his attempted suicide.

152.     If not for the egregious and grossly negligent actions of Defendants and potentially unknown at this time employees, agents, and officers, Alexander Chavez would have benefited from life-saving prompt treatment of his traumatic injuries.

153.     Myriad clinical research studies illustrate significantly improved patient outcomes for patients discovered within minutes of a hanging.

154.     The officers here ignored their duties and did not perform a headcount at 1800 hours as required.

155.     This – coupled with Alexander not being on suicide watch – created an inability to have discovered Chavez to prevent him from hanging for over 25 minutes.

156.     It is incumbent upon Paul Penzone and the wardens, captains, directors, supervisors, corrections officers, Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Espinosa and the MCSO to fulfill the duty assured to Alexander Chavez and all inmates under the United States Constitution, including without limitation:

- Maintain physical control over all inmates to prevent harm to both staff and other inmates; and
- Implement, evaluate and maintain security procedures and protocols in accordance with industry standards to protect both staff and other inmates; and
- Act affirmatively to protect inmates when a potential threat or risk of harm to either staff or another inmate becomes known to them; and
- Hire, train, and supervise corrections officers and staff in a manner that thoroughly ensures the mission of the Arizona Department of Corrections is carried out regarding the physical protection of all staff and inmates; and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

- Maintain strong presence of supervision, control, and oversight over corrections officers and all prison personnel; and
- Provide medical care and treatment for all inmates according to the standard of care recognized by the industry.

157.    Based upon the objective unreasonableness and deliberate indifference to the security of Alexander Chavez' physical person relative to the events leading up to the suicide attempt, coupled with the egregiously negligent, objectively unreasonable, and deliberately indifferent actions of Defendants in failing to properly assess Alexander Chavez' mental state and condition, it is evident that Maricopa, MCSO, CHS, its wardens, associate wardens, directors, captains, commanders, supervisors, corrections officers, health professionals, and staff have breached each of these duties proscribed by law.

158.    As a direct and proximate result of these myriad breaches, Alexander Chavez died.

159.    Each of the Defendants were negligent, and in fact grossly negligent, in that they had a nondelegable duty to care for and protect Chavez and failed to act despite realizing that their acts, omissions to act and other conduct created a high probability that substantial harm would be visited upon Alexander Chavez.

160.    Further, the acts and omissions detailed herein constitute additional actionable torts under statutes of the State of Arizona and common law.

161.    The actions of the Defendants have violated the rights of Alexander Chavez under the United States and Arizona Constitutions, including without limit his Fourteenth Amendment rights.

162.    Following Chavez' second suicide attempt, Chavez was classified with the following flags:

- 841 Red Dot 8/5/2022 8/5/2022

- 96 COWS 8/7/2022 8/7/2022 8/21/2022

- 834 Opioid Use 8/7/2022 8/7/2022

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

- 167 Bottom Bunk (BB) 8/7/2022 8/7/2022

- 168 Bottom Tier (BT) 8/7/2022 8/7/2022

- 193 No Work No Tents (NWNT) 8/7/2022 8/7/2022

- 828 Proxy Medium 8/7/2022 8/7/2022

- 161 Suicide Attempt History While Incarcerated 8/9/2022 8/9/2022

- 52 Suicide Watch - Potential 8/9/2022 8/9/2022

- He was also classified with "Problems" by CHS:

- Red Dot 8/5/2022

- COWS 8/6/2022

- Opioid Use 8/6/2022

- Bottom Bunk (BB) 8/6/2022

- Bottom Tier (BT) 8/6/2022

- No WorkNo Tents (NWNT) 8/6/2022

- Suicide Attempt History While Incarcerated 8/8/2022

- Suicide Watch - Potential 8/8/2022

163.    On August 8, 2022 at 6:59PM, after he had already hung himself, Chavez was added to the Suicide Watch list and a group note was posted by "RN; 2967H" to his records.

164.    Had the Defendants done a proper assessment of Chavez' mental state, it would have been easily discerned that Chavez was in fact a suicide risk.

165.    In fact, Defendants knew that Chavez was a suicide risk after his first suicide attempt.

166.    Rainey provided Chavez with a Suicide Prevention/Awareness pamphlet in the early hours of August 6, 2022 and then Chavez was re-classified from psychiatric to general population and thrown out to deal with his withdrawal symptoms with no help.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

167.     Defendants could have properly assessed his condition and placed him on suicide watch at intake – instead of after the fact. The actions and inactions of Defendants – including those individuals known or unknown – violated the Fourteenth Amendment to the United States Constitution, which is mirrored by Art. 2 § 15 of the Arizona Constitution. Such violations of civil rights are actionable pursuant to 42 U.S.C. § 1983 et seq.

**MARICOPA AND MCSO HAVE AN ASTONISHINGLY HIGH DEATH RATE**

168.     Deaths in Maricopa County's jail systems have skyrocketed at a rate that is far more than jail systems around the country – even those with more inmates.

169.     From an article posted on August 5, 2024[2], "A review by The Arizona Republic of Maricopa County's in-custody jail deaths from 2019 through 2023, the most recent year available, found that the death rate was among the highest of major jail systems in the country."

170.     The article continues "Scholars who study in-custody deaths in U.S. jails and prisons said those numbers are incredibly high when compared with similarly sized jail systems and even jails with much larger populations. 'Astronomical,' in the words of one researcher."

171.     The leading causes of death in MCSO and Maricopa jails are drug overdoses, drug withdrawals, and suicides.

172.     Furthermore, Maricopa County's jails remain understaffed, according to the current and former Sheriff's Office administrations, which has hindered operations and challenged efforts to maintain safe conditions.

173.     According to the article:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

---

[2] Retrieved from:
https://www.azcentral.com/story/news/local/phoenix/2024/08/05/investigation/

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Sheriff Russ Skinner said his office is taking proactive steps to address deaths in the jail. "MCSO, in partnership with Correctional Health Services, work closely to monitor our jail facilities as well as review each incident involving attempted overdoses and attempted suicides, including those that result in the death of an inmate," Skinner said in a statement. "In addition to the recent projects implemented involving training, scanners, prevention services through our tablet program, and narcotic K9s in our jail facilities, we are working to enhance additional services through the use of medical monitoring technology," the sheriff said. "We will remain vigilant and proactive in the effort to connect inmates to needed services and prevention programs.

174.    The article continues:

Deaths have skyrocketed in Maricopa County jails in recent years, even while the average daily population has decreased. The number of deaths in the Maricopa County jails nearly quadrupled in three years. In 2019, there were 11 deaths in the jails. In 2022 and 2023, there were 43 deaths each year. The average daily population was 6,829 in 2019. Like most jail systems, Maricopa County's jails saw their population decrease during the pandemic to an average daily population of 5,433 in 2020. The numbers have steadily risen since then but have still not reached pre-pandemic levels. The average daily population in 2023 was 6,569.

175.    The article continues:

In 2019, the most recent year the bureau calculated jail mortality, there was an average of 167 deaths per 100,000 inmates in county jails in America. The death rate in Maricopa County jails in 2019 was 161 per 100,000, slightly lower than the national average. ***But that rate quadrupled in just three years to 678 in 2022.***

(emphasis added).

176.    Chavez' death coincided with the astronomical uptick in jail deaths with MCSO and CHS.

177.    The article quotes a number of scholars including Andrea Armstrong, professor at Loyola University New Orleans College of Law:

"I feel confident in saying the mortality rate in Maricopa County jails is astronomical," Armstrong said. She said the sustained increase in Maricopa County jail deaths from 2019- 23 was concerning. "In some cases, in some jails, we do sometimes see a spike in deaths, but then it comes back down,"

she said. "In Maricopa County, the deaths have been exponentially increasing each year."

178. Jay Aronson, a professor at Carnegie Mellon University who co-authored a book published September 5, 2023, and titled "Death in Custody, How America Ignores the Truth and What We Can Do about It" said:

> the steep increase in deaths in the Maricopa County jails seemed almost impossible to believe. "I can't tell you exactly what's going on, but there are a hell of a lot of people dying," Aronson said. Based on the causes of death provided by the jails and medical examiner, Aronson said *he would advise the county to review its policies for drug withdrawal treatment and suicide prevention*. "The raw number of deaths and the *suicides are really, really high*," Aronson said. "And the mortality rate is significantly higher than the national average."

(emphasis added).

179. Furthermore, suicides accounted for one-quarter of deaths in MCSO and CHS Jails in 2022.

180. MCSO's and CHS' patterns, customs, and practices have led to this "astronomical" rise in deaths.

181. MCSO and CHS knew and continue to know they have a problem with their patterns, customs, practices, and policies.

182. They hid multiple deaths from their reported numbers. For example, they did not include in reported inmate death numbers inmates who died in a hospital or who received a compassionate release because death was imminent.

183. Chavez was one of the deaths that was hidden from the public – until the Arizona Republic reported on it.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

25

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT I

## Violation of Civil Rights Under the Fourteenth Amendment

## and 42 U.S.C. § 1983.

(*Against Crutchfield, Struble, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Chester, Espinosa, Rainey, and Marsland*)

184.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

185.     The Fourteenth Amendment to the United States Constitution, forbids one who acts under color of state law from failing to protect from harm a pre-trial detainee in their care, custody and control.

186.     At all relevant times, Defendants were acting under color of law.

187.     At all relevant times, Alexander Chavez was in the care, custody and control of Defendants.

188.     Among other things, Defendants, through their education and training, knew or should have known the procedures for an accurate and careful assessment of an inmate who had already attempted suicide, but deliberately ignored that fact and failed to keep Alexander Chavez under suicide watch that would have kept Alexander Chavez alive.

189.     Among other things, Defendant are aware or should be aware of their responsibilities and duties toward an inmate who had already attempted suicide – namely keeping him under suicide watch.

190.     Among other things, Defendants were aware of Chavez' severe opiate withdrawals and medical needs, but failed to administer necessary medical care knowing full well that Chavez would be subjected to a substantial risk of serious harm by failing to do so.

191.     Among other things, Defendants are aware or should be aware of security issues that can arise based on their experience and their various responsibilities and duties required to provide a safe and secure environment for inmates of the Jail.

192.     The conduct of Defendants in this regard was objectively unreasonable and was undertaken with a willful, reckless and malicious indifference to the constitutional

rights and liberty interests of Alexander Chavez and the Plaintiffs, and with no regard to the likelihood that harm would and did result, and that Alexander Chavez would and did suffer needlessly while in their care.

193.     The deliberate indifference and objectively unreasonable care given to the serious needs of Alexander Chavez constitutes unnecessary and wanton infliction of pain proscribed by the Fourteenth Amendment and is in violation of 42 U.S.C. §1983, whether the objective unreasonableness and indifference is manifested by Defendants in response to Alexander Chavez' suicidal actions, failing to provide proper medical care for Chavez, or intentionally or delaying classifying Alexander Chavez as a suicide risk.

194.     As a direct and proximate result of the objective unreasonableness and deliberate indifference of Defendants, Alexander Chavez suffered extraordinary pain and premature death, and Plaintiffs have suffered damages.

195.     As a direct and proximate result of the objective unreasonableness and deliberate indifference of Defendants, Plaintiffs have forever lost the liberty interest guaranteed to them by the Fourteenth Amendment to enjoy the companionship, society and support of Alexander Chavez.

196.     The acts and omissions of Defendants were of such a nature to entitle Plaintiffs each to an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

197.     Pursuant to 42 U.S.C. §1988 and other applicable law, Plaintiffs are also entitled to an award of incurred attorneys' fees and costs.

## COUNT II

## Negligence and Gross Negligence

198.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

199.     At all relevant times, each and every Defendant had an individual and collective duty to exercise ordinary care for the safety of Alexander Chavez.

200.     This includes taking certain actions and refraining from other actions such that the Jail was operated in a manner that maintained effective custody and control over

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

inmates in a safe, secure and humane environment.

201.    Defendants had a duty to assure the safety and well-being of Alexander Chavez while in their care, custody and control, a duty that included, without limitation, providing proper, appropriate and timely medical care to Alexander Chavez.

202.    Defendants breached their duties to Alexander Chavez, as identified in the allegations set forth in the paragraphs above.

203.    Despite being the sole caretakers of Alexander Chavez, Defendants were negligent and grossly negligent by failing to properly provide medical care, classify, place, and watch Alexander Chavez, that would have saved Alexander Chavez' life.

204.    Defendants breached that duty systematically and repeatedly, including their acts and omissions set forth above, resulting in the Jail being operated in a manner such that presented a grave and imminent danger to Alexander Chavez.

205.    As a direct and proximate result of Defendants' breach, Alexander Chavez sustained severe and permanent injuries, endured extreme pain and suffering, lost the ability to have and maintain meaningful familial relationships, and eventually lost his life.

206.    Defendants' acts and omissions to act set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Neil and a high probability that substantial harm would result.

207.    Despite being assigned to monitor the security and welfare of the inmates housed in the Jail, Defendants were negligent and grossly negligent in their failure to perform their required duties in conducting inmate checks during the verified time of Alexander Chavez' second suicide attempt.

208.    Defendants undertook a duty to provide adequate supervision and classification to the inmates of the Jail. This includes (1) the duty to supervise all of its employees and agents, and (2) the duty to ensure that its employees and agents satisfy all federal, state, and applicable industry standards.

209.    Defendants breached their duties, as identified by the allegations set forth in the paragraphs above, by among things and without limitation willfully participating in a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

practice or custom that denied Alexander Chavez adequate monitoring and placement, and by ratifying improper conditions, customs, policies, procedures and/or practices that jeopardized the safety of Alexander Chavez.

210.     Additionally, Defendant Maricopa is vicariously liable for the acts and omissions of their employees, including without limitation those employees listed herein as defendants,

211.     As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Alexander Chavez suffered an untimely and preventable death.

212.     As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Chavez endured extreme pain and suffering from August 6, 2022 until August 12, 2022, lost his ability to earn income following his death, and lost the ability to provide support to his family.

213.     As a result, Chavez suffered both economic and non-economic damages in an amount to be proven at trial.

214.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Alexander Chavez and a high probability that substantial harm would result.

215.     Additionally, the Sheriff – not the County – is responsible for the actions of MCSO employees. Accordingly, Penzone (now Skinner) is vicariously liable for the acts and omissions of MCSO employees, including without limitation those employees listed herein as defendants.

216.     As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Alexander Chavez suffered an untimely and preventable death.

217.     As a direct and proximate result of the negligent actions of Defendants and their employees and agents, Plaintiffs have been deprived of the continued companionship and society of their son and father, and have suffered and continue to suffer the loss of a loved one, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, mental suffering, and have suffered both economic and non-

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

economic damages in an amount to be proven at trial.

## COUNT III

### Negligent Hiring, Training, Supervision and Retention

218.    Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

219.    Defendants Maricopa, MCSO, CHS, Penzone, Crutchfield, Struble, and Smith owed a duty to Alexander Chavez to ensure that their employees, officers and agents were qualified to serve in their respective roles before hiring and assigning employees to provide medical care for inmates.

220.    Defendants Maricopa, MCSO, CHS, Penzone, Crutchfield, Struble, and Smith owed a duty to Alexander Chavez to ensure that they had adequate staffing to ensure the safety of inmates and that proper medical care could be provided.

221.    Defendants Maricopa, MCSO, CHS, Penzone, Crutchfield, Struble, and Smith also owed Alexander Chavez a duty to ensure that their employees, officers, and agents were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

222.    Despite being assigned to monitor the security and welfare of the inmates housed in the Jail, Defendants were negligent and grossly negligent in their failure to perform their required duties in conducting inmate checks during the verified time of Alexander Chavez' second suicide attempt.

223.    Defendants undertook a duty to provide adequate supervision and classification to the inmates of the Jail. This includes (1) the duty to supervise all of its employees and agents, and (2) the duty to ensure that its employees and agents satisfy all federal, state, and applicable industry standards.

224.    Defendants had a duty to ensure that a sufficient number of employees were hired to handle the number of inmates in the jails.

225.    As set forth above, Defendants Maricopa, MCSO, CHS, Penzone (now Skinner), Crutchfield, Struble and Smith failed to ensure staffing levels were appropriate

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

and failed to hire employees to ensure the same.

226.    As set forth above, Defendants Maricopa, MCSO, CHS, Penzone, Crutchfield, Struble, and Smith breached these duties.

227.    As a direct and proximate result of Defendants' breaches of these duties, Alexander Chavez was damaged in that he, among other things, suffered extreme pain and suffering, lost the ability to have and maintain meaningful familial relationships, lost his life and sustained other damages that will be demonstrated at trial.

## COUNT IV
## CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* – POLICY, CUSTOM AND PRACTICE
*(Maricopa, Penzone, Skinner)*

228.    Plaintiffs incorporate by reference all previous allegations as fully set forth herein.

229.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

230.    Defendant Maricopa and Defendant Penzone's – now Skinner's – acts or failure to act deprived Chavez of his constitutional rights.

231.    As described herein, MCSO and Maricopa's jails have an astronomical number of deaths compared to other jail systems in the country – including larger systems such as Los Angeles County and Cook County Illinois.

232.    The patterns, customs, and practices employed in Maricopa and MCSO jail and jail health environments are such that present a substantial risk of serious harm to all inmates who are battling drug overdoses, withdrawals, and suicidal actions.

233.    The sheer number of deaths have caused scholars to opine that they would advise the county to review its policies for drug withdrawal treatment and suicide prevention, because "[t]he raw number of deaths and the suicides are really, really high, . .

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

. And the mortality rate is significantly higher than the national average."

234.     Chavez' death occurred during this scrutinized period. He was but one of many who died by suicide while reeling from severe opioid withdrawals.

235.     It is unquestionable that there is a systemic failure by Maricopa and Penzone (now Skinner) by ratifying customs, practices, patterns and policies that deliberately go against the standards of care medically, and also deprive individuals of their Constitutional Rights.

236.     These failures have allowed, supported, and established the commonplace lack of medical treatment and monitoring that leads to the "astronomical" death rate and creates a substantial risk of serious harm to individuals such as Chavez.

237.     Therefore, the established customs and practices led directly to the death of Chavez.

238.     Maricopa and Penzone (now Skinner) are liable for Chavez' death due to its established policy, customs, patterns, and practices.

## JURY TRIAL DEMAND

239.     Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a)  For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)  For all other non-pecuniary damages as to be proven at trial;

c)  For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)  For pre-and post judgment interest to the extent provided by law;

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

e)  For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)  For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 3rd day of September 2024.

MILLS + WOODS LAW, PLLC

By  */s/ Sean A. Woods*
Sean A. Woods
Robert T. Mills
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Courtney R. Glynn
glynnc@mcao.maricopa.gov
Michael E. Gottfried
gottfrim@mcao.maricopa.gov
RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY
CIVIL SERVICES DIVISION
225 W Madison St.
Phoenix, AZ 85003
*Attorneys for Maricopa County, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, and Marsland and the Maricopa County Sheriff*

*/s/ Ben Dangerfield*