RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Courtney R. Glynn (023155)
Michael E. Gottfried (010623)
Deputy County Attorneys
glynnc@mcao.maricopa.gov
gottfrim@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4316
MCAO Firm No. 00032000
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Magat, Dailey, Espinoza, Jr., Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, et al., | NO. CV-23-02482-PHX-SRB (DMF) |
| Plaintiff, | **MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | |
| Maricopa County, et al., | |
| Defendants. | |

Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Magat, Dailey, Espinoza, Jr., Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone move under Federal Rule of Civil Procedure 12(b)(6) and District of Arizona Local Civil Rule 12.1 to dismiss the Second Amended Complaint ("SAC"). (Doc. 32.) The SAC fixes none of the flaws detailed in the Court's Order dismissing the

First Amended Complaint ("FAC"). (Doc. 30.) Alexander Chavez committed suicide in the Maricopa County Jail. The Second Amended Complaint makes the legal allegation that all MCSO personnel involved with an inmate are "charged" with all of the information in an inmate's jail and medical file and thus all Defendants should have known that Mr. Chavez was an opioid user and suicide risk. There is no support for this allegation. For this reason, and the other reasons discussed herein, this SAC should be dismissed.

## I.    Alleged Facts

Alexander Chavez was arrested and housed at Maricopa County's Lower Buckeye Jail on August 5, 2022. (Doc. 32, ¶¶ 2,6.) It appears that Mr. Chavez was placed into the jail's opiate withdrawal protocol. (*Id*. ¶¶ 70, 81, 82.) On August 5, 2002, in what Plaintiffs characterize as a suicide attempt rather than an overdose, Mr. Chavez was found with over 250 fentanyl pills. (*Id*. ¶ 41.) He was taken to the hospital, where he told the attending physician that he had snorted 7 fentanyl pills. (*Id*. ¶ 42.) It appears that the hospital records "provided a final diagnosis of 'Opioid overdose'" (*id*. ¶ 48), not a suicide attempt. After release from the hospital he was placed back in the general population and not placed on suicide watch. (*Id*. ¶¶ 51, 52, 62.) On August 8, 2022 at approximately 1825 hours Mr. Chavez was found hanged in his cell by a deputy sheriff during a security walk. (*Id*. ¶ 132.) Plaintiffs allege that the 1800-hour security walk was not done. (*Id*. ¶ 136.) Phoenix Fire personnel arrived at approximately 18:37, and he was brought to the hospital and died from his injuries on April 12, 2022. (*Id*. ¶¶ 7, 143, 145.)

## II.   Argument

### A.    Legal standard

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a Rule 12(b)(6) motion, a trial court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal*, 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B.      The Count I section 1983 claims should be dismissed.**

**1.   Supervisors CHS Director Struble and CHS Medical Director Crutchfield should be dismissed**.

The allegations against Defendants Struble and Crutchfield are substantively identical to those in the FAC and they should again be dismissed. Defendant Struble is the CHS Director. (Doc. 32, ¶ 28.) Defendant Crutchfield is the CHS Medical Director. (*Id*. ¶ 27.) The allegations against Director Struble, who is misidentified as the medical director, and perhaps against the unnamed actual medical director Crutchfield, are identical to those in the FAC. Plaintiffs allege that  the medical director placed Mr. Chavez in the CHS opiate protocol and prescribed medicines, but not all medications were given (Doc. 32, ¶¶ 82-86.) There are no allegations that either Director Struble or Medical Director Crutchfield are somehow personally responsible for administering Chavez's medication or for ensuring the medications were administered. There is no affirmative link between the alleged injuries and Director Struble and Medical Director Crutchfield's conduct and therefore they should be dismissed. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 77 (1976).

The SAC also again alleges that both Director Struble and Medical Director Crutchfield are responsible for the conduct of their employees. They are "charged with implementing and maintaining policies and procedures at CHS and its facilities. They are also charged with oversight of CHS facilities." (*Id*. ¶ 99.) It further alleges that they are "required to review employee actions regularly to ensure CHS policies and procedures

are being followed." (*Id.*) Further, the SAC alleges that they were responsible for ensuring CHS staff "followed through with the administration of needed medical care" (*id.*, ¶ 103) and the medication was not given "due to a lack of management and oversight "by both Struble and Crutchfield (*id.*, ¶ 104). And that their "lack of proper oversight at the Jail led directly to lax behavior by Maricopa [County], MSCO, and CHS staff." (*Id.* ¶ 100.) Specifically, it alleges that because of Struble and Crutchfield's lack of proper oversight "headcounts were clearly not regularly performed at the required intervals," and "it is apparent that no proper oversight has occurred with inmate evaluations—both security based and medical based." (*Id.*, ¶¶ 101, 107.) These allegations do not support a constitutional claim.

There is nothing improper about placing Mr. Chavez, an opioid user (*id.*, ¶ 81), in the opiate protocol. That Director Struble and Medical Director Crutchfield are responsible for implementing and maintaining CHS policies and procedures does not impose liability for CHS employees' actions. *See Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)) (stating that vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983). And there are no allegations that CHS Director Struble or CHS Medical Director Crutchfield have any oversight responsibilities over MCSO personnel or any way responsible for inmate headcounts or security evaluations.

To the extent that this can be construed as failure to train or failure to supervise claim, there are no allegations that Director Struble or Medical Director Crutchfield trained or supervised any of the CHS employees involved with Mr. Chavez. Additionally, a "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that " 'in light of the

duties assigned to specific officers or employees, the need for more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers...can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390). Plaintiff has alleged no facts to support any claim that the need for more or different training or supervision was obvious, and the inadequacy so likely to result in violations of constitutional right. No facts are alleged to support that Chavez was not appropriately medically evaluated because of a lack of oversight by Defendants Struble and Crutchfield. The Count I individual capacity § 1983 claim should therefore be dismissed against CHS Director Struble and CHS Medical Director Crutchfield.

### 2. There are no facts alleged to support a § 1983 against the MCSO Defendants as a group.

In order to recover for injuries suffered by a pre-trial detainee while in custody, a plaintiff "must show that the prison official acted with 'deliberate indifference.' " *Castro*, 833 F.3d at 1067-68. The elements of a Fourteenth Amendment failure-to-protect claim are: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Id*., 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case.' " *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)). The third element is "more than negligence but less than subjective intent -- something akin to reckless disregard." *Id.*

To state a § 1983 claim the Plaintiff has to allege facts that each of these Defendants made an intentional decision with respect to the conditions under which Mr. Chavez was confined; (2) that those conditions put Mr. Chavez at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) that by not taking such measures, the defendant caused Mr. Chavez's death. *Iqbal*, 556 U.S. at 674; *Rizzo,* 423 U.S. at 373-75; *Castro*, 833 F.3d at 1071. In essence, all that is alleged here is that all of these Defendants worked at the jail on the day of Mr. Chavez's death and could have classified him as needing to be under suicide watch. (Doc. 32, ¶¶ 124,125.) That is insufficient to state a valid § 1983 claim.

Identical to the FAC, the SAC does not specifically allege that a specific Defendant did a specific act that deprived Mr. Chavez of his constitutional rights. Instead the SAC alleges that collectively Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza could have classified Chavez as "needing to be under suicide watch" and could have done "a proper headcount at proper intervals," but did not. (Doc. 32 , ¶¶ 125-28.) Plaintiffs also allege that Defendants Park, Magat, Hawkins, Espinoza, and Moody "actually conducted patrols and headcounts" on the day of Chavez's death. (*Id*. ¶ 132.) Plaintiffs assert that if Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza had properly performed their duties, Chavez would have been observed at 6:00 p.m. and would have been stopped from attempting suicide. (*Id*., ¶ 138.) These identical claims were made in the FAC. (Doc. 30 at 10: 12-22.)

The Court dismissed the § 1983 claims against these Defendants in the FAC because courts have consistently concluded that a "complaint that "lumps together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirements of

Rule 8(a)(2)." *Gen-Probe, Inc. v. Amoco Corp., Inc.,* 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067. 1071 (N.D. Cal. 1988)). (Doc. 30 at 10-11.) The SAC does nothing to remedy this problem—the Defendants remained grouped together and their actions undifferentiated. The Count I § 1983 claims should therefore be dismissed against these Defendants.

The Court also dismissed the FAC's § 1983 claims against these Defendants because the "Plaintiffs allege no facts to support that any of these Defendants was aware of and disregarded a substantial risk of serious harm to Chavez by skipping the 6:00 p.m. security walk" (Doc. 30 at 11: 14-16.) "Chavez was in the general population and Plaintiffs do not allege any facts to support that [these Defendants] were personally aware of Chavez's opiate dependency or prior suicide attempts." (*Id*. at 16-21.)

The SAC still does not allege any facts that these Defendants were personally aware of Chavez's opiate dependency or prior suicide attempts. Instead, they allege what is, at best, an unsupported legal conclusion that "deputies and/or officers are charged with the knowledge of their inmates' files and are required to review their inmate's booking records and updates of the same." (Doc. 32, ¶ 112.) They further speculate that "[e]ach of Smith Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza participated in daily briefings before they begin their shifts" and as "part of those briefings, inmates are discussed as well as any out of the ordinary events—such as Chaves' overdose attempt—occurred with any of the inmates prior to their shift." (*Id*. ¶¶ 110, 111.)

Consequently, Plaintiffs claim that *each Defendant* knew Chavez was initially classified as psychiatric, had attempted to overdose, was taken to the hospital, returned, and was transferred to his general population cell." (*Id*. ¶ 114.) They also claim that *each Defendant* knew that he had fallen out of his bunk, was unresponsive, that a "man down" was called, that medical was called to speak with Chavez, that he was suffering from severe opiate withdrawals, that he was "at risk for ending his excruciating symptoms by

potentially taking his own life through suicide," and that "each of them was acutely aware that Chavez was having difficulty with his symptoms and was a high risk of suicide." (*Id.* at 114-20.) With all due respect, these claims are nothing more than speculative nonsense invented to compensate for the lack of facts indicating that these non-medically trained detention officers knew *anything* about Chavez's medical situation.

While deputies may attend daily briefings, Plaintiffs' claims are that they might have, or should have, discussed Chavez's overdose attempt as one of the "out-of-ordinary events", but speculation that might have been discussed. These are not factual allegations, but speculation. Similarly, no facts are alleged about which of these Defendants attended the supposed meeting that may have discussed Chavez or what was discussed. Again, this is all nothing more than unsupported speculation.

There is likewise no support for Plaintiff's legal conclusion that every MCSO deputy sheriff is "charged with the knowledge of their inmates' files and are required to review their inmate's booking records and updates of the same." (Doc. 32, ¶ 112.) No statute, regulation, policy, or court ruling requires such knowledge. This entire case is about the Defendants, who are each MSCO detention officers, supposed knowledge of Chavez's medical condition. HIPAA applies to prisons and restricts dissemination of medical information.[1] There is simply no basis for Plaintiffs' fanciful claim every MCSO deputy sheriff is charged with the knowledge of their inmates' files and are required to review their inmate's booking records and updates of the same. There are therefore no *facts* alleged that any of these individual Defendants were personally aware of Chavez's opiate dependency or prior suicide attempts. Similarly, there are no factual allegations

---

[1] Generally, a healthcare provider cannot use or disclose a patient's health care information without the patient's authorization. *See* 45 C.F.R. § 164.508(a)(1)("Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section."). HIPAA applies to all health care providers—including the components of prisons that provide medical care, *see* 45 C.F.R. § 160.102(a)(3); *id.* § 164.504(a); *id.* § 164.512(k)(5)(ii).

that these non-medically-trained deputies had the ability to place an inmate on suicide watch or to treat him for withdrawal symptoms. This is insufficient to state a valid § 1983 claim and therefore Count I should be dismissed against Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza.

### 3.  Defendants Marsland, Rainey and Chester acted properly.

The allegations against Defendants Marsland and Rainey are that they completed Mr. Chavez's intake documents (doc. 32, ¶ 38), and that the intake documents properly classified him as "Psychiatric" (*id*. ¶ 37.) The FAC also alleges that Rainey and Chester noted "in his file" that they gave Mr. Chavez a suicide prevention form and that they knew at the time that Chavez had been hospitalized for an overdose. (*Id*. ¶¶ 53, 54.) Apparently, Plaintiffs speculate that Rainey and Chester knew that Chavez had been previously hospitalized for an overdose because it was in his "Valleywise Health records." (*Id*. ¶¶ 44, 45.)

There is nothing improper about these actions. There are no facts alleged that Marsland, Rainey and Chester had access to the Valleywise Health record, read the Valleywise Health record, or had access to any of Chavez's medical information. Similarly, it is not alleged that his "booking record" had any information about his hospitalization or the reason for his hospitalization. (*See id*. ¶¶ 54-57.) And as discussed above, there is no basis to claim that these detention officers were required to know and constantly review each inmates' files, especially their medical files.

There are no facts alleged that these non-medically trained deputies had the ability to place an inmate on suicide watch, and no allegation that supplying a flyer somehow led to a constitutional deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976) (holding that, to state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff).

The SAC further alleges that Rainey had Chavez sign a waiver form refusing Administrative Housing, asserting that that they put an opiate addict who had just attempted to end his life in general population. (Doc 32, ¶¶ 64, 65.) Regardless of what the form said, there is no allegation that Rainey made the decision to transfer him and therefore no facts alleged that his conduct caused a constitutional deprivation. *See Rizzo*, 423 U.S. at 373-75.

Finally, Plaintiffs assert that Chester added a disciplinary report for Promoting Prison Contraband and Possession of an Unauthorized Substance to Chavez's file. (Doc. 32, ¶ 66.) Agan, there are no facts that Chester was aware of Chavez's opiate dependence or suicide attempt or a plausible allegation that the disciplinary report caused Chavez's suicide. *See Rizzo*, 423 U.S. at 373-75.

Plaintiffs' allegations do not support a conclusion that Defendants Marsland, Rainey and Chester were aware of and disregarded a substantial risk of serious harm to Chavez. They should therefore be dismissed from the Count I federal claim.

**4.  Maricopa County, Penzone, and Skinner should be dismissed from the Count IV *Monell* claim as a newspaper article published two years after the incident cannot support a *Monell* claim.**

The only substantive factual additions to the SAC involve an Arizona Republic article dated August 5, 2024, positing that Maricopa County's jail death rate was higher than similarly sized and larger jail systems. (Doc. 32 at ¶¶ 168-83.) Plaintiffs allege that this article, published almost two years after the death here, supports a *Monell* claim. (Count IV, doc. 32, ¶¶ 228-38.) It does not.

Municipalities, such as the County, are only liable under § 1983 based on deficient policies, or pervasive practices or customs, which were the moving force behind the constitutional violation. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 463 U.S. 658, 690 (1978). "To establish municipal liability under *Monell* [a plaintiff] must prove that (1) [she was] deprived of a constitutional right; (2) the municipality had a policy; (3) the

policy amounted to deliberate indifference to [her] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (internal citation omitted). There are no allegations that any specific County/MCSO policy was deficient, or that there was an improper custom or practice. Further, even if policies or practices were deficient, there is no § 1983 liability unless it is established that there is some pattern of problems to put the County on notice of any constitutional deficiency. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.")

It is axiomatic that the pattern of problems necessary to put the County on notice of any constitutional deficiency must occur *before* the incident occurs. By definition, prior means "before." Even where the policy or custom is adequately specified in the complaint, a plaintiff also "must ordinarily point to a pattern of *prior*, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice. *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020) (emphasis added). This incident occurred in August 2022. (Doc. 32, ¶ 7.) The newspaper article was published in August 2004 (*id*. ¶ 169) and therefore could not have put the County on notice of anything. The Count IV *Monell* claim against the County should be dismissed.[2]

---

[2] Nothing in the Motion should be construed as conceding that a single newspaper investigation, even if published before the incident, supports a *Monell* claim. *See Graves v. California Dep't of Corr. & Rehab,*2020 WL 13401582, at *4 (C.D. Cal. June 3, 2020) ("The discrepancy between the allegations of repeated notice to the supervisor in *Starr* [*v. Baca*], and the single newspaper article providing notice to Hughes in this case is too great. 652 F.3d [1202, 1207 (9th Cir. 2011)]. *Starr* does not necessarily set a floor for notice, but if it is a benchmark of the notice required at the pleading stage, it suggests Plaintiff's reliance on a single newspaper article is inadequate.")

The Plaintiffs also apparently seek relief against current Sheriff Skinner and former Sheriff Penzone in their individual capacities under *Monell*. (Doc. 32, ¶ 230.) *Monell* established that local governments can be sued under § 1983 for having unconstitutional policies or practices. *Monell*, 436 U.S. at 694-95. It is not a framework for claims against individuals. Further, Skinner cannot be liable in his individual capacity because he was not Sheriff at the time of the incident and there is no allegation that he had any interaction with Chavez. Skinner and Penzone should therefore be dismissed from the Count IV Monell claim to the extent that they are being sued in their individual capacities.[3]

To the extent that Plaintiffs seek to hold Penzone individually liable for a failure to train or supervise under a § 1983 theory other than *Monell*, the claim still fails. As with a *Monell*, a failure to supervise or train claim requires prior notice of a consistent problem. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.") And there is no respondeat superior/supervisory liability under § 1983. *See Lemire,* 833 F.3d at 1076 (stating that vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983).

### 5.  The individual Defendants have qualified immunity from damages.

Should the Court conclude that the FAC states a claim against these individual Defendants, it should still be dismissed because they have qualified immunity from damages.

When evaluating an assertion of qualified immunity, "a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange,* 6 F.4th

---

[3] They should also be dismissed if sued in their official capacities as duplicative of claims against the County. (Doc. 30 at 6: 1-14).

961, 967-68 (9th Cir. 2021). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Id.* at 968. "In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (quotation marks and citation omitted, alteration in the original). "There need not be a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022) (quotation marks and citation omitted, alteration in original). "The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation." *Id.* at 934-35.

The Supreme Court has repeatedly "reiterate[d] the longstanding principal that 'clearly established law' should not be defined at a high level of generality." *See White v. Pauly*, 580 U.S. 73, 79 (2017) (internal citations and quotations omitted "Except in the rare case of an 'obvious' instance of constitutional misconduct ... [p]laintiffs must *identify a case* where an officer acting under similar circumstances as defendants was held to have violated" the constitution. *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original) (internal brackets omitted).

Here, there are no allegations that any of these Defendants knew, or even should have known, that Mr. Chavez was a suicide risk. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they had no knowledge that the inmate was a suicide risk. There are also no factual allegations that these non-medically-trained deputies should have placed Mr. Chavez on suicide watch when he demonstrated no behavior to them warranting such an action. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they are not medically-trained and did not witness any behavior alerting them of a possible

suicide risk. For example in *Regal v. County of Santa Clara*, 2023 WL 7194879, at \*4 (N.D. Cal. Oct. 31, 2023), the court denied an assertion of qualified immunity ruling that:

> This Court agrees with Plaintiffs that *Conn, Castro*, and *Gordon I* in combination clearly established prior to 2020 that pretrial detainees have a Fourteenth Amendment right to be housed with reasonable measures in place to abate *a known risk of suicide*. In 2020, the Ninth Circuit expressly recognized that *Conn* and its other precedents clearly established an inmate's constitutional right to have jail officials respond to "a clear warning that [the inmate] presented an imminent suicide risk." *See NeSmith v. Olsen*, 808 F. App'x 442, 445 (9th Cir. 2020).

*Id.* (emphasis added). While Plaintiff characterizes Mr. Chavez's taking of fentanyl as a suicide attempt, rather than an accidental overdose (doc. 7, ¶¶ 41,42), there are no plausible factual allegations that any of these Defendants knew of this incident or witnessed any behavior which would have alerted Mr. Chavez as a suicide risk. All of the individual Defendants therefore have qualified immunity from damages.

### C.   The state-law claims in Counts II and III should be dismissed.

#### 1.   There are no facts alleged to support the Count II state-law negligence and gross negligence claims.

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Accordingly *Iqbal* and *Twombl*y's pleading standards are applicable to Plaintiff's supplemental—pendent—state-law claims in Counts II and III.

Like the federal claims, Plaintiff's state-law claims allege negligence and gross negligence as a group. (*See* doc. 32, ¶¶ 206-14.) Identical to the § 1983 claim, there are no facts alleged how *each* Defendant breached a duty of care to Mr. Chavez. Like the §

1983 individual claims, the Count II negligence claims should be dismissed. (*See* Doc. 30 at 14-15.)

Plaintiff also alleges that Maricopa County is vicariously liable for the acts of its employees. (*Id.*, ¶ 210.) Under Arizona law, Maricopa County is not liable for the torts of employees of the Maricopa County Sheriff's Office. ("[w]e hold the County is not vicariously liable for the negligent conduct of the Sheriff's employees, including the Deputy Sheriff [.]") And there can be no vicarious liability if the individual Defendants are not negligent or grossly negligent. (Doc. 30 at 15: 5-7.)

> ### 2.   The Count III training and supervision claims should be dismissed.

In Count III, Plaintiffs allege a claim for negligent hiring, training, supervision and retention against Maricopa County, Penzone, Crutchfield, Struble, and Smith.[4] Although not specified, it is assumed this is a state-law negligence claim as negligence plays no role in a federal § 1983 claim. *Castro*, 833 F.3d at 1071 (holding that a § 1983 requires more than proof of negligence). At the outset, there are no allegations of who is responsible for training and supervising whom. All of the individual Defendants seem to be Maricopa County deputy sheriffs or civilian employees. (Doc. 7, ¶¶ 16-26.) There are no allegations, and no reason to believe, that Maricopa County Correctional Health Services ("CHS") Director Struble and CHS Medical Director Crutchfield have any involvement in the training and supervision of deputy sheriffs or sheriff department employees. CHS Director Struble and CHS Medical Director Crutchfield should therefore be dismissed from the Count III negligent training and supervision claims.

"The claims of negligent hiring, training, supervision, and retention are theories of direct liability premised on the employer's independent negligence and are distinct

---

[4] The SAC also makes claims against non-parties MSCO and CHS in Count III (Doc. 32, ¶¶ 219, 225.) Again, it is assumed this is an inadvertent holdover from the original Complaint.

from vicarious liability claims. *See Kopp. v. Physician Group of Ariz., Inc.,* 244 Ariz. 439, 442, ¶¶ 11-12 (2018). To state a claim for negligent hiring, training, supervision, and retention under Arizona law, a plaintiff must allege that the employer knew or should have known that the employee was not competent to undertake the task delegated, and the employer's failure to supervise the employee caused injury to the plaintiff. *See Humana Hosp. Desert Valley v. Superior Ct.*, 154 Ariz. 396, 400 (App. 1987). The employer's knowledge, "actual or constructive, is an essential factor in determining whether or not the [employer] exercised reasonable care or was guilty of negligence." *Tucson Med. Ctr. Inc. v. Misevch*, 113 Ariz 4, 6 (1976).

The SAC makes no allegations that *any* Defendant knew or should have known that an employee was not competent to undertake the task delegated. The employer's knowledge is an essential element of a failure-to-train-and-supervise claim. *Id*. Baldly stating that there was inadequate hiring, training, supervision, and retention, or that these Defendants had a duty to ensure that their employees were properly trained (doc. 32, ¶ 221), is not enough to state a claim. The Count III state-law negligent hiring, training, supervision, and retention claims should therefore be dismissed.

Additionally, like the § 1983 failure to train and supervise claims discussed above, Plaintiff fails to allege how the County, Crutchfield and Struble breached the duty of reasonable care in hiring, training, retaining, and supervising of the individual Defendants. Plaintiff simply recites that they breached their duty to provide adequate supervision without any details whatsoever. (Doc. 9, ¶¶ 181, 182.) Plaintiff provides no further detail, other than "as set forth above" (Id.¶ 182), which is nothing more than all of the Defendants should have known to place Mr. Chavez in suicide watch. These conclusory allegations, with no supporting factual detail, are insufficient to state a claim. *Iqbal,* 556 U.S. at 678; *see generally Ames*, 2021 WL 5578868 at *6. Baldly stating that

there was inadequate training and supervision is not enough to state a claim and that is all Plaintiff essentially alleges here. The Count V training and supervision claims should therefore be dismissed.

## III.    Conclusion

For the above reasons, Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Magat, Dailey, Espinoza, Jr., Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone respectfully request that:

1.  The Second Amended Complaint (doc. 32) be dismissed in its entirety;

2.  Defendants be awarded their costs and attorneys' fees as allowed by law:

3.  The Court award such other and further relief as required by law.

**RESPECTFULLY SUBMITTED** this 22nd day of October, 2024.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: /s/ *Michael E. Gottfried*
Courtney R. Glynn
Michael E. Gottfried
Deputy County Attorneys
*Attorneys for Maricopa County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

/s/ J.C.

s:\CIV\Matters\CJ\2023\Ruiz v. MC, et al. 2023-0228\Pleadings\MTD  2d Amended Complaint 102224.docx