RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Courtney R. Glynn (023155)
Michael E. Gottfried (010623)
Deputy County Attorneys
glynnc@mcao.maricopa.gov
gottfrim@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4316
MCAO Firm No. 00032000

*Attorneys for Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Magat, Dailey, Espinoza, Jr., Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Morales Ruiz, et al., <br><br> Plaintiff, <br><br> vs. <br><br> Maricopa County, et al., <br><br> Defendants. | NO. CV-23-02482-PHX-SRB (DMF) <br><br> **REPLY IS SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Magat, Dailey, Espinoza, Jr., Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone reply in support of their motion to dismiss the Second Amended Complaint ("SAC"). (Doc. 32.) The SAC fixes none of the flaws detailed in the Court's Order dismissing the First Amended Complaint ("FAC"). (Doc. 30.) The SAC alleges that

Alexander Chavez committed suicide in the Maricopa County Jail. The SAC makes the legal allegation that all MCSO personnel involved with an inmate are "charged" with all of the information in an inmate's jail and medical file and thus all Defendants should have known that Mr. Chavez was an opioid user and suicide risk. There is no support for this allegation. For this reason, and the other reasons discussed herein, this SAC should be dismissed.

      **A.**    **The Count I Section 1983 claims should be dismissed.**

           **1. Supervisors CHS Director Struble and CHS Medical Director Crutchfield should be dismissed**.

The SAC's claims against CHS Director Struble and CHS Medical Director Crutchfield are virtually identical to those in the FAC. No additional facts have been alleged. Similarly, the arguments in Plaintiffs' response concerning Struble and Crutchfield are almost word-for-word the arguments the Court rejected in its dismissal Order. *Compare* doc 12 at 2-4 *with* doc. 44 at 3-5. Plaintiffs still claim that the "'CHS Medical Director" (either Struble or Crutchfield) was directly involved in Alexandr's care by prescribing, yet failing , to ensure he was given his needed medications." (Doc. 44 at 4.) Yet, Plaintiffs still "do not allege facts to support that either Defendant Crutchfield or Defendant Struble was personally responsible for administering [Alexander] Chavez's medication or for ensuring that medications were administered." (Doc. 30 at 13.) And any such allegation would be legally suspect and factually unsupportable—the CHS Director and Medical Director do not administer medicine to individual patients, CHS employees do. That Director Struble and Medical Director Crutchfield are responsible for implementing and maintaining CHS policies and procedures does not impose liability for CHS employees' actions. *See Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)) (stating that vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under §

1983). The facts alleged, and arguments made, against Director Struble and Medical Director Crutchfield are no different than they were in the FAC. They should again be dismissed.

**2. There are no facts alleged to support a § 1983 against the MCSO Defendants as a group.**

Identical to the FAC, the SAC does not specifically allege that a specific Defendant did a specific act that deprived Mr. Chavez of his constitutional rights. Instead the SAC alleges that collectively Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza could have classified Chavez as "needing to be under suicide watch" and could have done "a proper headcount at proper intervals," but did not. (Doc. 32, ¶¶ 125-28.) Plaintiffs also allege that Defendants Park, Magat, Hawkins, Espinoza, and Moody "actually conducted patrols and headcounts" on the day of Chavez's death. (*Id.* ¶ 132.) Plaintiffs assert that if Defendants Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza had properly performed their duties, Chavez would have been observed at 6:00 p.m. and would have been stopped from attempting suicide. (*Id.*, ¶ 138.) These identical claims were made in the FAC. (Doc. 30 at 10: 12-22.)

The Court dismissed the § 1983 claims against these Defendants in the FAC because courts have consistently concluded that a "complaint that "lumps together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirements of Rule 8(a)(2)." *Gen-Probe, Inc. v. Amoco Corp., Inc.,* 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067. 1071 (N.D. Cal. 1988)). (Doc. 30 at 10-11.) The SAC does nothing to remedy this problem—the Defendants remained grouped together and their actions undifferentiated. The Count I § 1983 claims should therefore be dismissed against these Defendants.

The Court also dismissed the FAC's § 1983 claims against these Defendants because the "Plaintiffs allege no facts to support that any of these Defendants was aware

of and disregarded a substantial risk of serious harm to Chavez by skipping the 6:00 p.m. security walk" (Doc. 30 at 11: 14-16.) "Chavez was in the general population and Plaintiffs do not allege any facts to support that [these Defendants] were personally aware of Chavez's opiate dependency or prior suicide attempts." (*Id*. at 16-21.)

The SAC still does not allege any facts that these Defendants were personally aware of Chavez's opiate dependency or prior suicide attempts. Instead, they allege what is, at best, an unsupported legal conclusion that "deputies and/or officers are charged with the knowledge of their inmates' files and are required to review their inmate's booking records and updates of the same." (Doc. 32, ¶ 112.) They further speculate that "[e]ach of Smith Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza participated in daily briefings before they begin their shifts" and as "part of those briefings, inmates are discussed as well as any out of the ordinary events—such as Chaves' overdose attempt—occurred with any of the inmates prior to their shift." (*Id*. ¶¶ 110, 111.)

Consequently, Plaintiffs claim that *each Defendant* knew, or presumably should have known, everything about Chavez's medical condition. (*Id*. at 114-20; doc. 44 at 6-7.) These claims are nothing more than fiction invented to compensate for the lack of facts indicating that these non-medically trained detention officers knew *anything* about Chavez's medical situation. No statute, regulation, policy, or court ruling provides that sheriff's detention officers are somehow "charged with the knowledge of their inmates' files and are required to review their inmate's booking records and updates of the same." (Doc. 32, ¶ 112.) Unsurprisingly, Plaintiffs' Response supplies no such authority.

Similarly, allegations that Chavez's overdose attempt was discussed at a daily meeting is nothing but conjecture and no facts are alleged about which of these Defendants attended the supposed meeting that may have discussed Chavez or what was discussed. Again, this is all nothing more than unsupported speculation.

There are therefore no *facts* alleged that any of these individual Defendants were personally aware of Chavez's opiate dependency or prior suicide attempts. Similarly, there

are no factual allegations that these non-medically-trained deputies had the ability to place an inmate on suicide watch or to treat him for withdrawal symptoms. This is insufficient to state a valid § 1983 claim and therefore Count I should be dismissed against Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza.

### 3. Defendants Marsland, Rainey and Chester acted properly.

Plaintiffs continue to argue, without any factual basis, that Defendants Marsland, Rainey and Chester knew that Chavez was suicidal. (Doc. 32, ¶¶ 56-58.) As discussed earlier, n statute, regulation, policy, or court ruling provides that sheriff's detention officers are somehow "charged with the knowledge of their inmates' files and are required to review their inmate's booking records and updates of the same." (Doc. 32, ¶ 112.) Even if these Defendants knew of Chavez's previous suicide attempt, there are no allegations that any of the observed anything that would lead them to believe he was again at risk and no facts are alleged that these non-medically trained deputies had the ability to place an inmate on suicide watch or reclassify his housing. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976) (holding that, to state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff). Plaintiffs seem to illogically argue that Chavez should have been placed on suicide watch simply because he had previously attempted suicide. (Doc. 44 at 11: 17-24.) Again, nothing is alleged to indicate Chaves remained a suicide risk and liability under the Fourteenth Amendment requires a defendant to fail to take reasonably available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved. *Castro*, 833 F.3d at 1071.

Plaintiffs' allegations do not support a conclusion that Defendants Marsland, Rainey and Chester were aware of and disregarded a substantial risk of serious harm to Chavez. They should therefore be dismissed from the Count I federal claim.

### 4. Maricopa County, Penzone, and Skinner should be dismissed from the Count IV *Monell* claim as a newspaper article published two years after the incident cannot support a *Monell* claim.

Plaintiffs' *Monell* claim is entirely based on a 2024 Arizona Republic article published two years or so after this incident claiming that the jail's death rate was "astronomical" compared to other more populated jail systems and that suicides accounted for one-quarter of deaths in Maricopa County's jails in 2022. (Doc. 44 at 12.)

This newspaper article is, at best, analogous to a complaint. Allegations, perhaps sensationalized, telling only one side of a story. Importantly, there are no allegations in the SAC and nothing in this article claiming that any of these suicides or overdoses were caused by a constitutional violation. A death in a jail or prison because of a suicide or overdose does not automatically equate to a constitutional violation. To establish *Monell* liability a plaintiff also "must ordinarily point to a pattern of *prior, similar violations of federally protected rights,* of which the relevant policymakers had actual or constructive notice. *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020) (emphasis added). *See also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of *similar constitutional violations* by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.") (Emphasis added.). Even a lawsuit's settlement cannot constitute notice to support a *Monell* claim." *See Walker v. Arpaio*, 2017 WL 10222126, at *3–4 (D. Ariz. July 24, 2017) (Since no court made any findings, there cannot be municipal liability because "[n]o reasonable jury could find that [the Sheriff] had been put on notice of a policy that posed a substantial risk to [the inmate's] safety and then failed to act in light of that risk."). Simply alleging that there have been numerous deaths by suicide or drug overdoses in Maricopa County jails do not satisfy *Monell*'s requirement that the County have notice of similar constitutional violations. The Count IV *Monell* claim against the County should be dismissed.

Further, that policies may have been changed after Chavez's death (doc. 44 at 13) do not show that there were prior constitutional violations. All such changes show is that the jail is working to solve these problems—not that these problems were constitutional violations. *See also* Fed. R. Evid. 407 (subsequent remedial measures not admissible to prove negligence or culpable conduct). And Plaintiffs argument that this article two years after the incident is actually prior notice because it involves deaths that happened before the incident fails for the same reason—there is still no showing of constitutional violations. A number of deaths over the years do not give prior notice of constitutional violations just because of the number of deaths. Finally, alleging that *Monell* liability can be obtained through suing Sheriffs Penzone and Skinner in their official capacities (doc. 44 at 14: 15-25) is redundant. Claims brought in a defendant's official capacity are equivalent to claims against the entity they are associated with, the County here. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). But the County is already a Defendant, so including Sheriffs Penzone and Skinner in their official capacity is useless and redundant. The Count IV *Monell* claim against the County and Sheriffs Penzone and Skinner should be dismissed.

### 5. The individual Defendants have qualified immunity from damages.

Should the Court conclude that the FAC states a claim against these individual Defendants, it should still be dismissed because they have qualified immunity from damages. When evaluating an assertion of qualified immunity, "a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange,* 6 F.4th 961, 967-68 (9th Cir. 2021). "There need not be a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022) (quotation marks and citation omitted, alteration in original). "The plaintiff bears

the burden of proving that the right allegedly violated was clearly established at the time of the violation." *Id.* at 934-35.

There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they had no knowledge that the inmate was a suicide risk. There are also no factual allegations that these non-medically-trained deputies should have placed Mr. Chavez on suicide watch when he demonstrated no behavior to them warranting such an action. There is no Supreme Court or Ninth Circuit authority clearly establishing that jail staff can be constitutionally liable for an inmate's suicide when they are not medically-trained and did not witness any behavior alerting them of a possible suicide risk. For example in *Regal v. County of Santa Clara*, 2023 WL 7194879, at *4 (N.D. Cal. Oct. 31, 2023), the court denied an assertion of qualified immunity ruling that " prior to 2020 that pretrial detainees have a Fourteenth Amendment right to be housed with reasonable measures in place to abate *a known risk of suicide*." *Id.* (emphasis added).

Plaintiffs do not dispute that there is no clearly established law finding liability for a suicide (or overdose) when the decedent demonstrated no behavior indicating a risk. Instead, Plaintiffs continue to assert, without any authority, that all detention officers are required to know everything about every inmate, including their HIPAA-protected medical information.

While Plaintiff characterizes Mr. Chavez's taking of fentanyl as a suicide attempt, rather than an accidental overdose), there are no plausible factual allegations that any of these Defendants knew of this incident or witnessed any behavior which would have alerted Mr. Chavez as a suicide risk. All of the individual Defendants therefore have qualified immunity from damages.

**B.   The state-law claims in Counts II and III should be dismissed.**

**1.   There are no facts alleged to support the Count II state-law negligence and gross negligence claims.**

Plaintiffs largely make the same arguments in support of the SAC as they did with FAC. *Compare* doc 12 at 7-8 *with* doc. 44 at 9-10. They do try to at least imply that detention staff knew of and ignored Chavez's suicidal tendencies they day before he die, but Plaintiffs instead prove that detention staff properly alerted medical providers of the issue. Plaintiffs allege that the day before his death, Chavez was found by staff in a fetal position holding his breath. (Doc. 32. ¶ 76.) When staff "threatened" him with being placed in a monitored room, he reacted by breathing. (*Id*., ¶ 77.) They placed him and his "mat" back into his jail cell and left him there. (Id. , ¶ 78.)

The CHS medical records alleged next tell a different story:

> Patient lying in fetal position on his mat in the day room brought out by corrections, he is holding his breath when patient was told mental health would be called and he could be place in a monitored room stopped holding breath and began breathing normally, but still not providing arm for vitals.

(Doc. 32, ¶ 79; doc. 44 at 7.) The same CHS medical record states that Chavez was assessed with "ineffective coping" and that the "Plan" was to "report to oncoming shift. Will reassess for detox. On next rounds for detox." (Doc. 32 , ¶ 80; doc. 44 at 7.)

These unnamed , non-medically trained detention officers did precisely what they should have done—they made medical aware of the problem and medical planned to report the situation to the next shift and to assess for detoxification. These detention officers were not negligent or deliberately indifferent.

Like the federal claims, Plaintiffs' state-law claims allege negligence and gross negligence as a group. (*See* doc. 32, ¶¶ 206-14.) Identical to the § 1983 claim, there are no facts alleged how *each* Defendant breached a duty of care—was negligent—as to Mr. Chavez**.** Like the § 1983 individual claims, he Count II negligence and gross negligence claims should be dismissed. (*See* Doc. 30 at 14-15.)

Plaintiffs also allege that Maricopa County is vicariously liable for the acts of its employees. (*Id*., ¶ 210.) Under Arizona law, Maricopa County is not liable for the torts of

employees of the Maricopa County Sheriff's Office. *Sanchez v. Maricopa County*, 541 P.3d 566, 570, ¶ 20 (App. 2023) ("We hold the County is not vicariously liable for the negligent conduct of the Sheriff's employees, including the Deputy Sheriff [.]") And there can be no vicarious liability if the individual Defendants are not negligent or grossly negligent. (Doc. 30 at 15: 5-7.)

**2.   The Count III training and supervision claims should be dismissed.**

In Count III, Plaintiffs allege a claim for negligent hiring, training, supervision and retention against Maricopa County, Penzone, Crutchfield, Struble, and Smith. Plaintiffs do not address any of Defendants' arguments concerning these Count III claims in their Response. The Count III training and supervision claims should therefore be dismissed.

**C.   Conclusion.**

For the above reasons, and those in their Motion to Dismiss, Defendants Maricopa County, Struble, Crutchfield, Dimas, Hawkins, Hertig, Martin, Montano, Moody, Park, Smith, Chester, Rainey, Marsland, Magat, Dailey, Espinoza, Jr., Maricopa County Sheriff Russell Skinner, and former Maricopa County Sheriff Paul Penzone respectfully request that:

1. The Second Amended Complaint (doc. 32) be dismissed in its entirety;
2. Defendants be awarded their costs and attorneys' fees as allowed by law:
3. The Court award such other and further relief as required by law.

**RESPECTFULLY SUBMITTED** this 20th day of December, 2024.

> RACHEL H. MITCHELL
> MARICOPA COUNTY ATTORNEY
>
> By: s/ *Michael E. Gottfried*
>   COURTNEY R. GLYNN
>   MICHAEL E. GOTTFRIED
>   Deputy County Attorneys
>   *Attorneys for Maricopa County Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

/s/ *J.C.*

S:\CIVIL\CIV\Matters\CJ\2023\Ruiz v. MC, et al. 2023-0228\Pleadings\Reply iso MTD 2d Amended Complaint 122024.docx