KAB

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Debra Morales Ruiz, for herself and on behalf of and as personal representative for Alexander Chavez, et al.,

Plaintiffs,

v.

Maricopa County, et al.,

Defendants.

No. CV-23-02482-PHX-SRB (DMF)

**ORDER**

Plaintiffs Debra Morales Ruiz, for herself and on behalf of and as personal representative for Alexander Chavez, and Alex George Chavez, who are represented by counsel, brought this action pursuant to 42 U.S.C. § 1983 and Arizona state law. Pending before the Court is Defendants' Motion to Dismiss (Doc. 39), which Plaintiffs oppose (Doc. 44).

## I. Background

In their Second Amended Complaint, Plaintiffs allege as follows. On August 5, 2022, 32-year-old, Alexander Chavez (Alexander) was arrested and booked into the Lower Buckeye Jail. (Doc. 32 at 2.) At intake, Alexander was "properly" sub-classified as "psychiatric" by Defendants Marsland and Rainey. (*Id.*)

On August 5, 2022 while in jail, Alexander allegedly attempted suicide by ingesting seven pills of fentanyl and was found with a baggy of over 250 fentanyl pills. (*Id.* at 7.) At 8:42 p.m., a notation was made in Alexander's medical record: "Pt extremely drowsy, O2 sats decreasing. Narcan given. Many Fentanyl pills found on patient." (*Id.*) Alexander

was transferred to the hospital, and told the attending physicians there that he had snorted seven fentanyl pills.  (*Id.*)

Alexander was sent to General Population on August 6, 2022 at 3:34 a.m. after his return from the hospital.  (*Id.* at 7-8.)  Pursuant to Maricopa County Sheriff's Office (MCSO) and Correctional Health Services (CHS) policies, Alexander allegedly should have been kept in a psychiatric unit and placed on suicide watch on his return from the hospital.  (*Id.* at 9.)  Defendant Rainey had Alexander sign a form refusing Administrative Restrictive Housing.  (*Id.* at 10.)  At 6:25 a.m., a note was made by Defendants Rainey and Chester indicating that Alexander was given a suicide prevention/awareness flyer.  (*Id.* at 8.)  At 1:00 p.m. on August 6, 2022, Defendant Marsland[1] "performed assessments" of Alexander.  (*Id.* at 9.)  At 10:55 p.m., a notation was made indicating that Alexander was again found with fentanyl "this evening."  (*Id.* at 8.)

On August 7, 2022, Defendant Chester noted that Alexander was given a disciplinary for "Promoting Prison Contraband and Possession of an Unauthorized Substance."  (*Id.* at 10.)  On August 7, 2022, Alexander was seen by medical staff for his opiate dependency and severe withdrawal and medical staff classified him as "red dot" due to an acute illness.  (*Id.* at 11.)  He was supposed to be put on opiate protocol with medications and was required to be put in a lower bunk.  (*Id.*)  This same day at 7:32 p.m., Alexander was found in a fetal position in the day room holding his breath.  (*Id.*)  When staff told him he would be placed in a monitored room, he began breathing again.  (*Id.*)  He was then returned to his cell and left alone.  (*Id.*)  It was noted that the plan was to "report to oncoming shift . . . reassess for detox on next rounds."  (*Id.*)

On August 8, 2022 at 5:58 a.m., Alexander's file was updated to indicate a history of severe opiate withdrawal and hospitalization.  (*Id.*)  The note indicated he was supposed to be under opiate protocol and administered multiple prescriptions, including

---

[1] Although it is unclear from Plaintiffs' allegations, it appears that Plaintiff alleges Defendants Rainey, Chester, and Marsland were working as medical providers at the jail. *See generally* Doc. 32.

Hydroxyzine, Loperamide, and Ondansetron pursuant to Defendant Struble, the CHS Medical Director.  (*Id.* at 12.)  Alexander was allegedly only given one dose of Hydroxyzine. (*Id.*)  Alexander was in extreme pain and distress going through withdrawal in his cell without assistance or proper medications.  (*Id.*)

On August 8, 2022, officers or guards made rounds at 5:00 p.m. and observed Alexander. (*Id.* at 15.)  Although rounds were required to be completed every hour, no one completed rounds at 6:00 p.m.  (*Id.* at 17.)

At 6:25 p.m., Defendant Correctional Officer Moody found Alexander in his cell with a sheet tied into a noose around his neck.  (*Id.* at 12-13, 17.)  When Alexander was found, he was unresponsive without any spontaneous respiratory effort, but he still had a pulse.  (*Id.* at 13.)  Moody requested additional officers, requested a 9-1-1 tool, and conducted chest compressions until Phoenix Fire personnel arrived.  (*Id.* at 17.)  Phoenix Fire personnel arrived at 6:37 p.m. and could feel a carotid pulse.  (*Id.* at 19.)

Plaintiffs allege Alexander would have been saved if he had been found earlier.  (*Id.* at 19.)  They claim Maricopa County Sheriff Penzone, Captain Smith, CHS Medical Director Crutchfield and CHS Medical Director Struble did not provide proper oversight to Jail and CHS employees, which led to "lax behavior" by employees, including headcounts not being performed at required intervals, medication not being delivered as ordered, and improper security and medical based evaluations. They also claim CHS and its employees did not properly assess Alexander and did not administer appropriate medical care to address his severe opiate withdrawals.  (*Id.* at 14-15.)

Captain Smith and Correctional Officers Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa were working at the Jail on the day of Alexander's death, and by virtue of daily briefings allegedly knew that Alexander was initially classified as psychiatric, had attempted to overdose, fell out of his bunk, was taken to the hospital, returned, and was placed in a general population cell, was suffering from severe opiate withdrawals, had not been given his medications, was previously holding his breath, and was a high risk of suicide.  (*Id.* at 15.)  Despite this, they "failed to conduct

watches at appropriate intervals." (*Id.* at 16.)  Each of them could have classified Alexander as needing to be under suicide watch and could have performed proper headcounts at proper intervals, but they did not.  (*Id.*)

The Officers who conducted other headcounts on August 8 were Park, Magat, Hawkins, Espinosa, and Moody. (*Id.* at 17.)  Smith, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa are alleged to have failed to conduct rounds at 6:00 p.m. (*Id.* at 17.)

Plaintiffs allege the following claims: (1) Count One: Fourteenth Amendment failure to protect against Crutchfield, Struble, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Chester, Espinosa, Rainey, and Marsland;[2] (2) Count Two: negligence and gross negligence against all Defendants; (3) Count Three: Negligent Hiring, Training, Supervision, and Retention against Maricopa County, Penzone, Crutchfield, Struble, and Smith;[3] and (4) Count Four: *Monell* claim against Maricopa County, Penzone, and Skinner.

Defendant Skinner, who was named solely in his official capacity, was subsequently substituted by MCSO Sheriff Sheridan.  (Doc. 48.)

Defendants move to dismiss.  Defendants assert that Plaintiffs fail to state a claim upon which relief may be granted against Defendants Struble and Crutchfield; Plaintiffs engage in "group pleading" in Count One and do not identify the factual basis for their claims against Defendants Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinoza in Count One; based on Plaintiffs' allegations, Defendants

---

[2] Although Plaintiffs allege this as a Fourteenth Amendment claim, Plaintiffs cite the Eighth Amendment standard in response to the Motion to Dismiss.  Because Alexander was a pretrial detainee, this claim is properly assessed under the Fourteenth Amendment.

[3] Plaintiffs also list MCSO and CHS as Defendants to this claim, but Plaintiffs did not name MCSO and CHS as Defendants in the caption of their Second Amended Complaint and these Defendants are therefore not listed on the Court's docket.  Although Defendants pointed out this error in their Motion to Dismiss (Doc. 39 at 15 n.4), Plaintiffs did not address it in their Response to the Motion to Dismiss or seek to correct the docket.  Accordingly, MCSO and CHS are not Defendants in this action.

Marsland, Rainey, and Chester acted properly; Plaintiffs fail to plead adequate facts to allege a *Monell* claim; a *Monell* claim is not properly brought against the Defendants in their individual capacities; Plaintiffs otherwise fail to state a claim upon which relief may be granted against the individual Defendants; the individual Defendants have qualified immunity from damages; and there are no facts alleged to support Plaintiffs' state-law claims.

## II.    Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary

1  judgment. *Id.*

2  **III.     Discussion**

3        **A.        Fourteenth Amendment**

4        Defendants assert that Plaintiffs fail to state a Fourteenth Amendment claim upon

5  which relief may be granted.

6        A pretrial detainee has a right under the Due Process Clause of the Fourteenth

7  Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*,

8  441 U.S. 520, 535 (1979).  Pretrial detainees are "entitled to 'adequate food, clothing,

9  shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*,

10  107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.

11  1982)).   To state a claim of unconstitutional conditions of confinement against an

12  individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to
> the conditions under which the plaintiff was confined;
> (ii) those conditions put the plaintiff at substantial risk of
> suffering serious harm; (iii) the defendant did not take
> reasonable available measures to abate that risk, even though a
> reasonable official in the circumstances would have
> appreciated the high degree of risk involved—making the
> consequences of the defendant's conduct obvious; and (iv) by
> not taking such measures, the defendant caused the plaintiff's
> injuries.

20  *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

21        Whether the conditions and conduct rise to the level of a constitutional violation is

22  an objective assessment that turns on the facts and circumstances of each particular case.

23  *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  However, "a de minimis

24  level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21.  In addition, the "'mere lack

25  of due care by a state official' does not deprive an individual of life, liberty, or property

26  under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071

27  (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  Thus, a

28  plaintiff must "prove more than negligence but less than subjective intent—something akin

1    to reckless disregard." *Id.*

2    **1.    Crutchfield**

3    Plaintiffs' allegations against Crutchfield all concern Crutchfield's position as a

4    supervisor and policymaker.  Plaintiffs make no allegations that Crutchfield was personally

5    involved in or knew of Plaintiffs' medical care or risk of suicide.  To state a valid claim

6    under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific

7    conduct of a defendant and show an affirmative link between the injury and the conduct of

8    that defendant.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  There is no

9    respondeat superior liability under § 1983, and therefore, a defendant's position as the

10   supervisor of persons who allegedly violated Plaintiff's constitutional rights does not

11   impose liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*,

12   981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

13   "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must

14   plead that each Government-official defendant, through the official's own individual

15   actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

16   Plaintiffs have not alleged that Defendant Crutchfield personally participated in a

17   deprivation of Alexander's constitutional rights or was aware of a deprivation and failed to

18   act.  Crutchfield's position as a supervisor is not sufficient to establish that he was

19   personally involved in a deprivation of Alexander's constitutional rights.  In their Response

20   to the Motion to Dismiss, Plaintiffs assert that actions attributed to Struble in the Second

21   Amended Complaint may have actually been actions taken by Crutchfield.  These are not

22   allegations contained in the Second Amended Complaint.  Moreover, Plaintiffs'

23   speculation is not sufficient to state a claim.  If Plaintiffs are unaware of the identity of

24   specific individuals, they should request discovery to uncover the names of those

25   individuals who allegedly violated Alexander's rights and should not speculate as to who

26   may be responsible for constitutional violations.  *See Wakefield v. Thompson*, 177 F.3d

27   1160, 1163 (9th Cir. 1999) (where identity is unknown prior to the filing of a complaint,

28   the plaintiff should be given an opportunity through discovery to identify the unknown

defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Because there are no facts alleged against Crutchfield in the Second Amended Complaint indicating that he was personally involved in a deprivation of Plaintiffs' Fourteenth Amendment rights, the Fourteenth Amendment claim will be dismissed as to Crutchfield without prejudice.

### 2.     Struble

Defendants assert that Struble should be dismissed because he was not personally responsible for administering Alexander's medications. Plaintiffs allege that Struble prescribed Hydroxyzine, Loperamide, and Ondansetron, but that Alexander was only given one dose of Hydroxyzine, which caused him extreme pain and distress. (*Id.*) Plaintiffs further allege that Alexander was in extreme pain and distress going through withdrawal in his cell without assistance or the proper medications. (*Id.*) Although Defendants assert that Struble was not personally involved in Alexander's medical care, this contention is contradicted by the allegations in the Second Amended Complaint. Construing the facts in Plaintiffs' favor, Plaintiffs allegations sufficiently allege that Struble prescribed Alexander medications and then failed to follow up to ensure to Alexander was given the prescribed medications. Accordingly, the Motion to Dismiss will be denied as to the Fourteenth Amendment claim against Struble.

### 3.     Chester, Marsland, and Rainey

Defendants assert that Plaintiffs fail to state a claim upon which relief may be granted against Chester, Marsland, and Rainey because based on Plaintiffs' allegations, these Defendants acted properly. Plaintiffs alleged that at various times, Chester, Marsland, and Rainey were made aware of Alexander's psychiatric problems, that he was a suicide risk, and repeatedly gained access to fentanyl while in jail, but these Defendants did not comply with policies requiring Alexander to be placed on suicide watch. Plaintiffs state a Fourteenth Amendment claim against Defendant Chester, Marsland, and Rainey

based on these allegations, and the Motion to Dismiss will be denied as to the Fourteenth Amendment claims against Chester, Marsland, and Rainey.

### 4.    Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Espinosa

Defendants assert that Plaintiffs fail to state a Fourteenth Amendment claim against Defendants Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, and Espinosa because Plaintiffs impermissibly use group pleading against these Defendants. Plaintiffs allege that each of these Defendants was responsible for conducting security walks and headcounts, that it was jail policy to conduct these headcounts every hour, and that the failure to do so allowed Alexander the time and opportunity to attempt suicide and the failure to find him either before or immediately after the attempt resulted in his death. That Plaintiffs allege each of these Defendants was responsible for the security walks and headcounts does not mean that Plaintiffs have engaged in impermissible group pleading. On these facts, Plaintiffs have sufficiently stated a Fourteenth Amendment claim against Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Espinosa, and the Motion to Dismiss will be denied as to those claims.

### 5.    Qualified Immunity

Defendants assert that there are no allegations that any of the Defendants knew or should have known that Alexander was a suicide risk or that it was clearly established that non-medical Defendants had any responsibility to abate a risk of harm to Alexander based on a risk of suicide.

#### a.    Legal Standard

Government officials are entitled to qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the

1    circumstances in the particular case).

2    Whether a right was clearly established must be determined "in light of the specific

3    context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201

4    (2001). The plaintiff has the burden to show that the right was clearly established at the

5    time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero

6    v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). Thus, "the contours of the right must

7    be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable

8    official would understand that what he is doing violates that right;" and "in the light of pre-

9    existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361

10   (9th Cir. 1994) (quotations omitted). Regardless of whether the constitutional violation

11   occurred, the official should prevail if the right asserted by the plaintiff was not "clearly

12   established" or the official could have reasonably believed that his particular conduct was

13   lawful. *Romero*, 931 F.2d at 627.

14   When a motion to dismiss raises qualified immunity as a defense, the court assesses

15   whether the operative complaint alleges sufficient facts, taken as true, to withstand

16   qualified immunity. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Further, "[i]f

17   the operative complaint 'contains even one allegation of a harmful act that would constitute

18   a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go

19   forward' with their claims." *Id.* (quoting *Pelletier v. Fed. Home Loan Bank of San

20   Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)).

21                          **b.    Analysis**

22   As an initial matter, Defendants mischaracterize Plaintiffs' allegations. Plaintiffs

23   allege that each of the Defendants knew that Alexander was a suicide risk. Defendants

24   appear to assert that the Defendants did not know that Alexander was a suicide risk, but

25   the Court must assume the allegations alleged in the Second Amended Complaint are true.

26   Regardless, in 2021, the Ninth Circuit recognized that "pre-trial detainees do have a right

27   to direct-view safety checks sufficient to determine whether their presentation indicates the

28   need for medical treatment" and that the failure of non-medical officers to conduct such

1    safety checks violates the Fourteenth Amendment.  *Gordon*, 6 F.4th at 973.

2          On this record, Defendants are not entitled to qualified immunity at this stage of the

3    proceedings.  Defendants did not direct their qualified immunity argument to any specific

4    Defendants or any specific actions taken by Defendants.  To the extent Defendants intended

5    to argue that they were otherwise entitled to qualified immunity, that request for qualified

6    immunity is likewise denied because the Court cannot determine from the face of the

7    complaint that qualified immunity applies.  *See Groten v. California*, 251 F.3d 844, 851

8    (9th Cir. 2001); *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d

9    382, 396 (N.D. Cal. 2021) ("While defendants may ultimately prevail on many of the

10   arguments [they] make[] now with respect to qualified immunity, because the qualified

11   immunity analysis often turns on the specific facts of each alleged violation, . . . [those]

12   arguments are better suited to summary judgment"); *Morley v. Walker*, 175 F.3d 756, 761

13   (9th Cir. 1999).

14          **B.      Negligence and Gross Negligence**

15          Defendants argue that Plaintiffs fail to plead negligence or gross negligence claims

16   because the allegations address Defendants as a group and Maricopa County cannot be

17   vicariously liable for actions of Maricopa County Sheriff's Office employees.

18          To establish negligence under Arizona law, a plaintiff must show four elements:

19   "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach

20   by the defendant of that standard; (3) a causal connection between the defendant's conduct

21   and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 150 P.3d 228, 230

22   (Ariz. 2007) (internal citations omitted).  "To be grossly negligent, the actor's conduct must

23   create an unreasonable risk of physical harm to another, and such risk must be substantially

24   greater than the risk involved in ordinary negligence."  *Rourk v. State*, 821 P.2d 273, 280

25   (Ariz. Ct. App. 1991) (citing *Kemp v. Pinal Cnty.*, 474 P.2d 840, 843 (1970) (quoting

26   *Restatement (Second) of Torts* § 500)).

27          The Arizona Supreme Court has recognized that, in cases where deputies take

28   custody of someone, the deputies have a duty to protect that person against unreasonable

risk of physical harm. *Fleming v. State Dep't of Public Safety*, 352 P.3d 446, 448 (Ariz. 2015). And "[t]he duty to protect the other against unreasonable risk of harm extends to . . . risks arising from pure accident, or from the negligence of the plaintiff [her]self." *Id.* (quoting Restatement (Second) of Torts § 314A cmt. D); *see DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 695 P.2d 255, 260 (Ariz. 1985)).

As noted above, Defendants' group pleading argument is unpersuasive and the Motion to Dismiss will be denied as to that argument.

Defendants are correct that under Arizona law, the County is not vicariously liable for the negligent conduct of the Sheriff's employees in carrying out law enforcement duties. *See Sanchez v. Maricopa Cnty.*, __ P.3d __, No. CV-24-0013-PR, 2025 WL 2025888, at *1 (Ariz. July 21, 2025). The negligence and gross negligence claims in Count Two will be dismissed as to Defendant Maricopa County.[4]

## C.    Negligent Hiring, Training, Supervision, and Retention

Defendants assert that Plaintiffs fails to state a claim upon which relief can be granted because they make no allegations as to who is responsible for training and supervising, there are no allegations that Struble or Crutchfield have any involvement in training or supervision of deputy sheriffs or sheriff's department employees, and there are no allegations that Defendants knew that any employees were not competent to perform their delegated tasks. Although Plaintiffs do not directly address this argument, Plaintiffs assert that they alleged that "Penzone and Smith are charged with oversight of their jail facilities [and] are required to review employee actions regularly to ensure MCSO policies and procedures are being followed[, but due to] lack of oversight" headcounts were not "performed at the required hourly intervals." (Doc. 44 at 8.)

Arizona law holds employers accountable for the tortious conduct of their employees "if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee." *Hernandez v. Singh*, No. CV-17-08091-PCT-DWL; 2019 WL

---

[4]Defendants did not make any other arguments for the dismissal of Count Two.

367994, at *6 (D. Ariz. Jan. 30, 2019).  For negligent hiring, supervision, and training claims, "Arizona follows the Restatement (Second) of Agency § 213."  *Id.* (internal quotation marks and citation omitted).  According to Section 213:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
>> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[;]
>> (c) in the supervision of the activity; or
>> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).

"For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort."  *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004).  If the threshold tort finding is satisfied, the employer may be liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment."  *Quinonez for & on Behalf of Quinonez v. Andersen*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984).

To succeed on a negligent supervision claim, "the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue."  *Hernandez*, 2019 WL 367994 at *7.  To prove negligent training, "a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries."  *Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014), *vacated on other grounds in Guerra v. State*, 348 P.3d 423 (Ariz. 2015). Importantly, "[a] showing of an employee's incompetence is not necessarily enough; the plaintiff must also present evidence showing what training should have been provided, and

1  that its omission proximately caused the plaintiff's injuries." *Id.* at 772–73.

2        Plaintiffs have not alleged sufficient facts to support a negligent hiring, training,

3  supervision, or retention claim.  Plaintiffs' allegations assert that the individual Defendants

4  ignored the policies in place regarding conducting headcounts at regular intervals and

5  putting Alexander on suicide watch.  But Plaintiffs do not allege any facts establishing that

6  Defendants knew that these specific policies were not being followed or that additional

7  training on the policies was needed.  Although Plaintiffs assert that Defendants should have

8  instituted more policies regarding drug treatment withdrawal or suicide prevention,

9  Plaintiffs do not allege any facts regarding why the policies in place would not have

10  prevented Alexander's death in this action or that any further policies were necessary to

11  prevent Alexander's death. Count Three will be dismissed without prejudice.

12        **D.**    ***Monell* Claim**

13        Defendants assert that Plaintiffs' factual allegations are insufficient to support a

14  *Monell* claim.  Defendants assert that Plaintiffs rely on a news article positing that

15  Maricopa County's jail death rate was higher than similar sized and larger jail systems, but

16  Plaintiffs have alleged no facts that Maricopa County was aware of the necessity for any

17  changes to its policies prior to Alexander's death.  In Response, Plaintiffs assert that they

18  alleged that Maricopa County jails had an unusually high death rate due to suicides and

19  that understaffing has hindered operations and challenged efforts to maintain safe

20  conditions in the jails and that policies instituted after Alexander died indicate that better

21  policies could have been in place before he died.  Plaintiffs further argue that they alleged

22  that Maricopa County hid multiple deaths from their reported numbers, including

23  Alexander's death, and that an expert opined that Maricopa County should review its

24  policies for drug withdrawal treatment and suicide preventions.

25        To state a *Monell* claim based on a policy, practice or custom of Defendants,

26  Plaintiffs must allege facts showing (1) that Alexander's constitutional rights were violated

27  by an employee or employees of the Defendant; (2) that the Defendant has customs or

28  policies that amount to deliberate indifference; and (3) that the policies or customs were

the moving force behind the violation of Plaintiff's constitutional rights in the sense that the Defendant could have prevented the violation with an appropriate policy. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002). "Policies of omission regarding the supervision of employees . . . can be policies or customs that create . . . liability . . . , but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." *Id.* at 1194 (quotations omitted).

A "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To support a *Monell* claim for failure to train under § 1983, a plaintiff must allege facts demonstrating that the local government's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Deliberate indifference may be shown if there are facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (citing *Canton*, 489 U.S. at 390). While, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" *Connick*, 563 U.S. at 62, a plaintiff may still prove a failure-to-train claim without showing a pattern of constitutional violations where a violation "may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (internal citation omitted). In such instances, "failing to train could be so patently obvious that [an entity] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 F.3d at 64.

A plaintiff may prove the existence of a custom or informal policy with evidence of

1   repeated constitutional violations for which the errant municipal officials were not
2   discharged or reprimanded.  *See Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992);
3   *Gomez*, 255 F.3d at 1127.

4        Accepting Plaintiffs' allegations as true, Plaintiffs do not include any allegations in
5   their Second Amended Complaint establishing that it was the lack of any policies that led
6   to Alexander's death.  Rather, the current allegations assert that the individual Defendants
7   did not follow the policies that were in place and it was the failure to follow those policies
8   that resulted in Alexander's death.  Other than the general allegation that Defendants
9   should have known the death rate was unusual and the jails were unsafe, Plaintiffs have
10  not made any allegations regarding the deficiencies in any specific training relating to any
11  specific policies that led to Alexander's death.  For the foregoing reasons, Plaintiffs fails
12  to state a claim upon which relief may be granted in Count Four and Count Four will be
13  dismissed without prejudice.

14  **IT IS ORDERED:**

15        (1)    The reference to the Magistrate Judge is **withdrawn** as to Defendants'
16  Motion to Dismiss (Doc. 39).

17        (2)    Defendants' Motion to Dismiss (Doc. 39) is **granted in part and denied** in
18  part as follows:

19                    (a)    The Motion is granted as to the Fourteenth Amendment claim in
20                           Count One against Defendant Crutchfield, the negligence and gross
21                           negligence claims in Count Two against Defendant Maricopa County,
22                           and Counts Three and Four of the Second Amended Complaint.

23                    (b)    The Motion is otherwise denied.

24        (3)    The Fourteenth Amendment claim in Count One against Defendant
25  Crutchfield, the negligence and gross negligence claims in Count Two against Defendant
26  Maricopa County, and Counts Three and Four of the Second Amended Complaint are
27  dismissed from this action without prejudice.  Defendant Maricopa County is dismissed
28  from this action without prejudice.

(4)    The remaining claims in this action are: Count One: Fourteenth Amendment failure to protect against Struble, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Chester, Espinosa, Rainey, and Marsland and (2) Count Two: negligence and gross negligence against Smith, Penzone, Moody, Dimas, Park, Magat, Hawkins, Montano, Dailey, Martin, Hertig, Chester, Espinoza, Rainey, Marsland, Crutchfield, Struble, and Sheridan.

Dated this 14th day of August, 2025.


_____
Susan R. Bolton
United States District Judge